Case No. 4:17-cv-03567

In the United States District Court for the Southern
District of Texas, Houston Division

---

In re Garrison Municipal Partners, L.P., *Debtor*.

Don & Kay Green, *Appellants*.

---

On appeal from the United States Bankruptcy Court for
the Southern District of Texas, Houston Division

Case No. 14-32867

---

## Appendix

---

Reese Baker
Baker & Associates
Texas State Bar No. 01587700
950 Echo Lane, Suite 200
Houston, Texas 77024
(713) 979-2279
Fax: (713) 869-9100
Email: courtdocs@bakerassociates.net

COUNSEL FOR APPELLANTS DON & KAY GREEN

# Table of Contents

*Relevant Docket Entries*
ROA(I).001-002, ROA(I).017-022 .................................................................... A-1

*Green Proof of Claim*
ROA(II).0001-0009 ............................................................................................ A-9

*Trustee's Omnibus Objection and Supplement*
ROA(I).052-085 ................................................................................................ A-18

*Green Response to Trustee's Omnibus Objection*
ROA(I).137-140 ................................................................................................ A-52

*Green Brief Regarding Mandatory Subordination*
ROA(I).147-171 ................................................................................................ A-56

*Trustee's Reply to the Greens' Response*
ROA(I).194-220 ................................................................................................ A-81

*Green Reply to the Trustee's Reply*
ROA(I).290-301 .............................................................................................. A-108

*Memorandum Order and Opinion of October 31, 2017*
ROA(I).302-306 .............................................................................................. A-120

*Notice of Appeal*
ROA(I).312 ...................................................................................................... A-125

*Transcript of Hearing on September 7, 2017*
ROA(I).172-193 .............................................................................................. A-126

*Garrison Limited Partnership Agreement*
ROA(I).221-273 .............................................................................................. A-148

*Text of 11 U.S.C. § 510(b)* ........................................................................... A-201

APPEAL, APPEAL_NAT

**U.S. Bankruptcy Court**
**Southern District of Texas (Houston)**
**Bankruptcy Petition #: 14-32867**
**Internal Use Only**

*Date filed:* 05/22/2014
*341 meeting:* 07/07/2014
*Deadline for filing claims:* 09/08/2014

*Assigned to:* Eduardo V Rodriguez
Chapter 7
Voluntary
Asset

| | |
|---|---|
| **Debtor** | represented by **Christopher Adams** |
| **Garrison Municipal Partners, LP** | Okin & Adams LLP |
| 1800 Augusta | 1113 Vine Street |
| Suite 135 | Suite 201 |
| Houston, TX 77057 | Houston, TX 77002 |
| HARRIS-TX | 713-228-4100 |
| Tax ID / EIN: 26-1995900 | Fax : 888-865-2118 |
| | Email: cadams@oakllp.com |

**Julie Mitchell Koenig**
Cooper & Scully, PC
815 Walker, Suite 1040
Houston, TX 77002
713-236-6800
Fax : 713-236-6880
Email: julie.koenig@cooperscully.com

| | |
|---|---|
| **Trustee** | represented by **Timothy Micah Dortch** |
| **Rodney D Tow** | Potts Law Firm |
| Rodney Tow, PLLC | 2911 Turtle Creek Blvd. |
| 1122 Highborne Cay Court | Suite 1000 |
| Texas City, TX 77590-1403 | Dallas, TX 75219 |
| 281-429-8300 | 214-396-9427 |
| | Email: mdortch@potts-law.com |

**William James Hotze**
Pillsbury Winthrop Shaw Pittman LLP
909 Fannin Street, Suite 2000
Houston, TX 77010
713-276-7664
Fax : 713-276-7673
Email: William.hotze@pillsburylaw.com

**Julie Mitchell Koenig**
(See above for address)

**Kyung Shik Lee**
Diamond McCarthy LLP
909 Fannin
Ste 1500
Houston, TX 77010
713-333-5125
Fax : 713-333-5195
Email: klee@diamondmccarthy.com

**Charles M. Rubio**
Diamond McCarthy, LLP
909 Fannin Street, Suite 1500
Houston, TX 77010
713-333-5127
Fax : 713-333-5195
Email: crubio@diamondmccarthy.com

A-1

**Rodney D Tow**
Tow and Koenig PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380
281-681-9100
Fax : 832-482-3979
Email: rtow@towkoenig.com

**U.S. Trustee**
**US Trustee**
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002
713-718-4650

represented by **Nancy Lynne Holley**
U S Trustee
515 Rusk St
Ste 3516
Houston, TX 77002
713-718-4650
Email: nancy.holley@usdoj.gov

**Christine A March**
Office of the US Trustee
515 Rusk St
Ste 3516
Houston, TX 77002
713-718-4650 Ext. 239
Fax : 713-718-4580
Email: christine.a.march@usdoj.gov

| Filing Date | # | Docket Text |
|---|---|---|
| 05/22/2014 | 1 (3 pgs) | Chapter 7 Voluntary Petition. Fee Amount $306. Filed by Garrison Municipal Partners, LP. (Adams, Christopher) (Entered: 05/22/2014) |
| 05/22/2014 | | Receipt of Voluntary Petition (Chapter 7)(14-32867) [misc,volp7a] ( 306.00) Filing Fee. Receipt number 15815722. Fee amount $ 306.00. (U.S. Treasury) (Entered: 05/22/2014) |
| 05/22/2014 | 2 (12 pgs) | Notice *of Filing of Schedules.* Filed by Garrison Municipal Partners, LP (Adams, Christopher) (Entered: 05/22/2014) |
| 05/22/2014 | 3 (1 pg) | Notice *of filing Supplement to Schedule B.* Filed by Garrison Municipal Partners, LP (Adams, Christopher) (Entered: 05/22/2014) |
| 05/22/2014 | 4 (11 pgs; 2 docs) | Statement of Financial Affairs (Filed By Garrison Municipal Partners, LP ). (Attachments: # 1 Schedule 23) (Adams, Christopher) (Entered: 05/22/2014) |
| 05/22/2014 | 5 (1 pg) | Disclosure of Compensation of Attorney for Debtor (Filed By Garrison Municipal Partners, LP ). (Adams, Christopher) (Entered: 05/22/2014) |
| 05/29/2014 | 6 (11 pgs; 2 docs) | Motion for Relief from Stay *to conduct discovery and prosecute the causes of action pending in a state court case.* Fee Amount $176. Filed by Creditors Margaret Vonder Hoya, JP Bryan Hearing scheduled for 6/25/2014 at 09:00 AM at Houston, Courtroom 403 (KKB). (Attachments: # 1 Proposed Order) (Durrschmidt, Michael) (Entered: 05/29/2014) |
| 05/29/2014 | | Receipt of Motion for Relief From Stay(14-32867) [motion,mrlfsty] ( 176.00) Filing Fee. Receipt number 15836230. Fee amount $ 176.00. (U.S. Treasury) (Entered: 05/29/2014) |
| 06/03/2014 | 7 (1 pg) | Trustee's Notice of Assets & Request for Notice to Creditors Proofs of Claims due by 9/8/2014. (Tow, Rodney) (Entered: 06/03/2014) |
| 06/03/2014 | | Certificate of Telephone Notice. Contacted Barbara Howell w/M.Durrschmidt. Movant to notice all interested parties and file a certificate of service with the court (Related document (s):6 Motion for Relief From Stay) Emergency Hearing scheduled for 6/11/2014 at 10:30 AM at Houston, Courtroom 403 (KKB). (rcas) (Entered: 06/03/2014) |
| 06/03/2014 | 8 (4 pgs) | Notice *of Hearing.* (Related document(s):6 Motion for Relief From Stay) Filed by JP Bryan, Margaret Vonder Hoya (Durrschmidt, Michael) (Entered: 06/03/2014) |
| | 9 | Notice of Appearance and Request for Notice Filed by Kyung Shik Lee Filed by on behalf of |

| | | |
|---|---|---|
| 02/27/2017 | ●239<br>(21 pgs; 2 docs) | Application to Compromise Controversy *with Andrews Kurth Kenyon LLP*. Objections/Request for Hearing Due in 21 days. Filed by Trustee Rodney D Tow (Attachments: # 1 Proposed Order) (Rubio, Charles) (Entered: 02/27/2017) |
| 03/09/2017 | ● | Adversary Case 4:15-ap-3317 Closed. (kpico) (Entered: 03/09/2017) |
| 03/09/2017 | ●240<br>(5 pgs) | Certificate *Amended Certificate of Service* (Filed By Rodney D Tow ).(Related document(s):239 Application to Compromise Controversy) (Rubio, Charles) (Entered: 03/09/2017) |
| 03/29/2017 | ●241<br>(6 pgs) | Notice *of Withdrawal by Lauren Tow*. Filed by Rodney D Tow (Tow, Lauren) (Entered: 03/29/2017) |
| 04/04/2017 | ●242<br>(22 pgs; 2 docs) | Motion to Approve Compromise under Rule 9019 Filed by Trustee Rodney D Tow (Attachments: # 1 Proposed Order) (Rubio, Charles) (Entered: 04/04/2017) |
| 04/04/2017 | ●243<br>(5 pgs) | Motion to Seal *Settlement Agreement* Filed by Trustee Rodney D Tow (Rubio, Charles) (Entered: 04/04/2017) |
| 04/12/2017 | ●244<br>(1 pg) | Order Granting Motion To Seal (Related Doc # 243) Signed on 4/12/2017. (kpico) (Entered: 04/12/2017) |
| 04/13/2017 | ●245<br>(1 pg) | Order Resetting Objections to Claims Hearing Signed on 4/13/2017 (Related document(s):237 Hearing Reset to 4/27/2017 at 02:00 PM at Houston, Courtroom 403 (KKB). (hcar) (Entered: 04/14/2017) |
| 04/14/2017 | ●246<br>(3 pgs) | BNC Certificate of Mailing. (Related document(s):244 Order on Motion to Seal) No. of Notices: 1. Notice Date 04/14/2017. (Admin.) (Entered: 04/14/2017) |
| 04/16/2017 | ●247<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):245 Order Setting Hearing) No. of Notices: 9. Notice Date 04/16/2017. (Admin.) (Entered: 04/16/2017) |
| 04/26/2017 | ●248<br>(6 pgs) | Order Granting Stipulation and Order Approving Chapter 7 Trustee's Motion Under Bankruptcy Rule 9019 for Approval of Settlement (Related Doc # 239) Signed on 4/26/2017. (rcas) (Entered: 04/27/2017) |
| 04/27/2017 | ● | Courtroom Minutes. Time Hearing Held: 2:00 PM. Appearances: Charles Rubio for Trustee Rodney Tow and Joseph Rovira for GCM. (Related document(s): 190 Objection to Claim, 191 Objection to Claim, 192 Objection to Claim). Mr. Rubio provides status report. Order Granting Stipulation and Order Approving Chapter 7 Trustee's Motion Under Bankruptcy Rule 9019 for Approval of Settlement. (kpico) (Entered: 04/28/2017) |
| 04/29/2017 | ●249<br>(10 pgs) | BNC Certificate of Mailing. (Related document(s):248 Order on Application to Compromise Controversy) No. of Notices: 61. Notice Date 04/29/2017. (Admin.) (Entered: 04/30/2017) |
| 05/03/2017 | ●250<br>(7 pgs) | Order Granting Motion to Approve Compromise under Rule 9019 (Related Doc # 242) Signed on 5/3/2017. (kpico) (Entered: 05/04/2017) |
| 05/06/2017 | ●251<br>(10 pgs) | BNC Certificate of Mailing. (Related document(s):250 Order on Motion to Approve Compromise under Rule 9019) No. of Notices: 9. Notice Date 05/06/2017. (Admin.) (Entered: 05/06/2017) |
| 06/12/2017 | ●252<br>(18 pgs) | ==Objection to Claim Number 2,3,4,5,10,11,12,13,14,15,16,17,18,19,20,21,22,23,24,25,26,27,28,29,30,31,32,33,34,35,36,37,38,39,40== by Claimant Hearing scheduled for 7/20/2017 at 02:00 PM at Houston, Courtroom 403 (KKB). (Rubio, Charles) (Entered: 06/12/2017) |
| 06/12/2017 | ●253<br>(18 pgs) | Objection to Claim Number 41,42,43,44,45 by Claimant Hearing scheduled for 7/20/2017 at 02:00 PM at Houston, Courtroom 403 (KKB). (Rubio, Charles) (Entered: 06/12/2017) |
| 06/16/2017 | ●254<br>(10 pgs) | Objection to Claim Number 46 by Claimant Southwest Securities, Inc.. Hearing scheduled for 7/20/2017 at 02:00 PM at Houston, Courtroom 403 (KKB). (Rubio, Charles) (Entered: 06/16/2017) |
| 06/16/2017 | ●255<br>(16 pgs) | Additional Attachments Re: *Trustee's Supplement to Omnibus Objection to Proofs of Claim Filed by Limited Partners of Garrison Municipal Partners, L.P.* (related document(s):252 Objection to Claim, 253 Objection to Claim) (Filed By Rodney D Tow ).(Related document(s):252 Objection to Claim, 253 Objection to Claim) (Rubio, Charles) (Entered: 06/16/2017) |

| | | |
|---|---|---|
| 06/19/2017 | 256<br>(71 pgs; 2 docs) | Application for Compensation *Eighth Interim Application for Allowance of Compensation and Reimbursement of Expenses of Diamond McCarthy LLP, as General Counsel for the Chapter 7 Trustee, for the Period October 1, 2016 through March 31, 2017* for Diamond McCarthy LLP, Trustee's Attorney, Period: 10/1/2016 to 3/31/2017, Fee: $20,476.00, Expenses: $264.97. Objections/Request for Hearing Due in 21 days. Filed by Attorney Diamond McCarthy LLP Hearing scheduled for 7/27/2017 at 09:30 AM at Houston, Courtroom 403 (KKB). (Attachments: # 1 Exhibits A - C) (Rubio, Charles) (Entered: 06/19/2017) |
| 06/27/2017 | 257<br>(2 pgs) | Notice *of Rescheduled Hearing*. (Related document(s):254 Objection to Claim) Filed by Rodney D Tow (Rubio, Charles) (Entered: 06/27/2017) |
| 07/10/2017 | 258<br>(4 pgs; 2 docs) | Motion to Continue Hearing On (related document(s):252 Objection to Claim, 253 Objection to Claim). Filed by Trustee Rodney D Tow (Attachments: # 1 Proposed Order) (Rubio, Charles) (Entered: 07/10/2017) |
| 07/11/2017 | 259<br>(1 pg) | Order Granting Motion To Continue/Reschedule Hearing On(Related Doc # 252 and 253) Signed on 7/11/2017. Hearing is continued 8/17/2017 at 02:00 PM at Houston, Courtroom 403 (KKB). (kpico) (Entered: 07/11/2017) |
| 07/13/2017 | 260<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):259 Order on Motion to Continue/Reschedule Hearing) No. of Notices: 9. Notice Date 07/13/2017. (Admin.) (Entered: 07/14/2017) |
| 07/25/2017 | 261<br>(6 pgs) | Stipulation By Rodney D Tow and Southwest Securities, Inc.. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By Rodney D Tow ).(Related document(s):254 Objection to Claim) (Rubio, Charles) (Entered: 07/25/2017) |
| 07/27/2017 | 262 | Courtroom Minutes. Time Hearing Held: 9:30 AM. (Related document(s):256 Application for Compensation). Case Called. No appearances. Hearing is continued to 8/24/2017 at 09:30 AM at Houston, Courtroom 403 (KKB). (kpico) (Entered: 07/28/2017) |
| 08/03/2017 | 263<br>(26 pgs) | Application to Compromise Controversy *with Investor Plaintiffs*. Objections/Request for Hearing Due in 21 days. Filed by Trustee Rodney D Tow Hearing scheduled for 9/7/2017 at 10:00 AM at Houston, Courtroom 403 (KKB). (Rubio, Charles) (Entered: 08/03/2017) |
| 08/03/2017 | 264<br>(9 pgs) | Motion to Seal *Chapter 7 Trustee's Motion for Approval of Settlement* Filed by Trustee Rodney D Tow (Rubio, Charles) (Entered: 08/03/2017) |
| 08/03/2017 | 265<br>(8 pgs; 2 docs) | Second Motion to Continue Hearing On (related document(s):252 Objection to Claim, 253 Objection to Claim). Filed by Trustee Rodney D Tow Hearing scheduled for 8/17/2017 at 10:00 AM at Houston, Courtroom 403 (KKB). (Attachments: # 1 Proposed Order) (Rubio, Charles) (Entered: 08/03/2017) |
| 08/08/2017 | 266<br>(1 pg) | Order Granting Motion To Continue/Reschedule Hearing On(Related Doc # 265) Signed on 8/8/2017. Hearing rescheduled for 9/7/2017 at 10:00 AM at Houston, Courtroom 403 (KKB). (dnor) (Entered: 08/09/2017) |
| 08/11/2017 | 267<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):266 Order on Motion to Continue/Reschedule Hearing) No. of Notices: 9. Notice Date 08/11/2017. (Admin.) (Entered: 08/11/2017) |
| 08/16/2017 | 268<br>(13 pgs) | Motion *Chapter 7 Trustee's Motion to Authorize Interim Distributions* Filed by Trustee Rodney D Tow Hearing scheduled for 9/7/2017 at 10:00 AM at Houston, Courtroom 403 (KKB). (Rubio, Charles) (Entered: 08/16/2017) |
| 08/24/2017 | 269<br>(2 pgs) | Order Granting Application For Compensation (Related Doc # 256). Granting for Diamond McCarthy LLP, fees awarded: $20,476.00, expenses awarded: $264.97, Signed on 8/24/2017. (kpico) (Entered: 08/24/2017) |
| 08/26/2017 | 270<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):269 Order on Application for Compensation) No. of Notices: 9. Notice Date 08/26/2017. (Admin.) (Entered: 08/26/2017) |
| 09/07/2017 | 271<br>(4 pgs) | Response (related document(s):252 Objection to Claim). (Baker, Reese) (Entered: 09/07/2017) |
| | | Courtroom Minutes. Time Hearing Held: 10:00 AM. Appearances: C. Rubio and F. Ellenbogen for Trustee R. Tow, M. Durrischmidt for Bryan, Maples, and Vonder Hoya entities, and R. Baker for Don and Kay Green. (Related document(s):252 Objection to Claim, 253 Objection to Claim, 263 |

A-4

| | | |
|---|---|---|
| 09/07/2017 | | Application to Compromise Controversy, 264 Motion to Seal, 268 Generic Motion). Arguments heard. Evidence presented. Court's exhibit 1 is admitted. Court takes matter 252 Objection to Claim (re: Claim #2) under advisement. Mr. Baker is to file brief by 9/14/2017; Mr. Rubio is to respond by the 9/20/2017. Parties are to file stipulation/proposed facts. Court may set matters for a continued hearing at a later date and time. (kpico) (Entered: 09/08/2017) |
| 09/11/2017 | ⊙ 272 (6 pgs) | Stipulation and Order on Claim Objection Signed on 9/11/2017 (Related document(s):254 Objection to Claim) (amartinez) (Entered: 09/11/2017) |
| 09/13/2017 | ⊙ 273 (9 pgs) | BNC Certificate of Mailing. (Related document(s):272 Order on Claim Objection) No. of Notices: 9. Notice Date 09/13/2017. (Admin.) (Entered: 09/14/2017) |
| 09/14/2017 | ⊙ 274 (25 pgs) | Response (related document(s):252 Objection to Claim). (Baker, Reese) (Entered: 09/14/2017) |
| 09/18/2017 | ⊙ 275 (1 pg) | AO 435 TRANSCRIPT ORDER FORM Daily (24 hours) by Charles M. Rubio. This is to order a transcript of Hearing held on 09/07/2017 before Judge Karen K. Brown. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Rodney D Tow ). (Rubio, Charles) Electronically forwarded to Judicial Transcribers of Texas 9-19-17. Estimated completion date 9-20-17. Modified on 9/19/2017 (tcam). (Entered: 09/18/2017) |
| 09/20/2017 | 🔒 ⊙ 276 (22 pgs) | Transcript RE: Motions Hearing held on September 7, 2017 before Judge Karen K. Brown. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 12/19/2017. (mhen) (Entered: 09/20/2017) |
| 09/20/2017 | ⊙ 277 (96 pgs) | Reply (related document(s):271 Response, 274 Response). (Rubio, Charles) (Entered: 09/20/2017) |
| 09/21/2017 | ⊙ 278 (1 pg) | Notice of Filing of Official Transcript as to 276 Transcript. Parties notified (Related document(s):276 Transcript) (dhan) (Entered: 09/21/2017) |
| 09/23/2017 | ⊙ 279 (4 pgs) | BNC Certificate of Mailing. (Related document(s):278 Notice of Filing of Official Transcript (Form)) No. of Notices: 9. Notice Date 09/23/2017. (Admin.) (Entered: 09/23/2017) |
| 09/27/2017 | ⊙ 280 (34 pgs; 2 docs) | Application for Compensation *FIRST INTERIM* for William G West CPA, Accountant, Period: 6/2/2014 to 9/18/2017, Fee: $98,274.00, Expenses: $736.30. Objections/Request for Hearing Due in 21 days. Filed by Accountant William G West CPA Hearing scheduled for 10/26/2017 at 09:30 AM at Houston, Courtroom 403 (KKB). (Attachments: # 1 Proposed Order) (West, William) (Entered: 09/27/2017) |
| 09/27/2017 | ⊙ 281 (5 pgs) | Notice *of Filing Accountant's First Interim Application for Compensation and Hearing Thereon*. (Related document(s):280 Application for Compensation) Filed by William G West CPA (West, William) (Entered: 09/27/2017) |
| 09/28/2017 | ⊙ 282 (12 pgs) | Brief (Filed By Donald and Kaye Green ).(Related document(s):271 Response, Courtroom Minutes (Text), 277 Reply) (Baker, Reese) (Entered: 09/28/2017) |
| 10/25/2017 | ⊙ 283 (1 pg) | Order Granting Application For Compensation (Related Doc # 280). Granting for William G West CPA, fees awarded: $98,274.00, expenses awarded: $736.30 Signed on 10/25/2017. (kpico) (Entered: 10/25/2017) |
| 10/27/2017 | ⊙ 284 (4 pgs) | BNC Certificate of Mailing. (Related document(s):283 Order on Application for Compensation) No. of Notices: 9. Notice Date 10/27/2017. (Admin.) (Entered: 10/27/2017) |
| 10/31/2017 | ⊙ 285 (5 pgs) | MEMORANDUM OPINION AND ORDER of Bankruptcy Judge Signed on 10/31/2017 (Related document(s):271 Response 252 Omnibus Objections to Claims, 263 Application to Compromise) (rcas) (Entered: 10/31/2017) |
| 10/31/2017 | ⊙ 286 (1 pg) | Order Setting Hearing Signed on 10/31/2017 (Related document(s):252 Objection to Claim) Hearing scheduled for 11/16/2017 at 03:00 PM at Houston, Courtroom 403 (KKB). (sgue) (Entered: 11/01/2017) |
| 11/02/2017 | ⊙ 287 (8 pgs) | BNC Certificate of Mailing. (Related document(s):285 Opinion) No. of Notices: 9. Notice Date 11/02/2017. (Admin.) (Entered: 11/02/2017) |

| 11/03/2017 | 288<br>(4 pgs) | Notice of Hearing with Certificate of Service. (Related document(s):252 Objection to Claim, 253 Objection to Claim, 263 Application to Compromise Controversy) Filed by Rodney D Tow (Rubio, Charles) (Entered: 11/03/2017) |
| 11/03/2017 | 289<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):286 Order Setting Hearing) No. of Notices: 9. Notice Date 11/03/2017. (Admin.) (Entered: 11/03/2017) |
| 11/10/2017 | 290<br>(1 pg) | <mark>Notice of Appeal filed.</mark> (related document(s):285 Opinion). Fee Amount $298. Appellant Designation due by 11/24/2017. (Baker, Reese) (Entered: 11/10/2017) |
| 11/10/2017 | | Receipt of Notice of Appeal(14-32867) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number 19516582. Fee amount $ 298.00. (U.S. Treasury) (Entered: 11/10/2017) |
| 11/14/2017 | 291<br>(3 pgs) | Exhibit List, Witness List (Filed By Rodney D Tow ).(Related document(s):252 Objection to Claim, 253 Objection to Claim, 263 Application to Compromise Controversy, 264 Motion to Seal, 268 Generic Motion) (Rubio, Charles) (Entered: 11/14/2017) |
| 11/16/2017 | 292<br>(16 pgs) | Exhibit List, Witness List (Filed By Rodney D Tow ).(Related document(s):252 Objection to Claim, 253 Objection to Claim, 263 Application to Compromise Controversy, 264 Motion to Seal, 268 Generic Motion) (Rubio, Charles) (Entered: 11/16/2017) |
| 11/16/2017 | 293<br>(1 pg) | Order Approving Chapter 7 Trustee's Motion to File Under Seal (Related Doc # 264) Signed on 11/16/2017. (kpico) (Entered: 11/17/2017) |
| 11/16/2017 | 294<br>(3 pgs) | Order Approving Chapter 7 Trustee's Motion for Approval of Settlement (Related Doc 263) Signed on 11/17/2017. (kpico) (Entered: 11/17/2017) |
| 11/16/2017 | 295<br>(2 pgs) | Order Authorizing Interim Distribution (Related Doc # 268) Signed on 11/16/2017. (kpico) (Entered: 11/17/2017) |
| 11/16/2017 | | Courtroom Minutes. Time Hearing Held: 03:00 PM. Appearances: C. Rubio for Rodney Tow (present). (Related document(s): 252 Omnibus Objection to Claims). Rodney Tow sworn; testimony proffered. Evidence presented. Trustee's exhibits 1-10 are admitted. Court approves Omnibus objections, Application to Compromise, and Motion for Interim Distribution. (kpico) (Entered: 11/17/2017) |
| 11/19/2017 | 296<br>(7 pgs) | BNC Certificate of Mailing. (Related document(s):294 Order on Application to Compromise Controversy) No. of Notices: 61. Notice Date 11/19/2017. (Admin.) (Entered: 11/19/2017) |
| 11/19/2017 | 297<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):295 Generic Order) No. of Notices: 9. Notice Date 11/19/2017. (Admin.) (Entered: 11/19/2017) |
| 11/19/2017 | 298<br>(3 pgs) | BNC Certificate of Mailing. (Related document(s):293 Order on Motion to Seal) No. of Notices: 1. Notice Date 11/19/2017. (Admin.) (Entered: 11/19/2017) |
| 11/20/2017 | 299<br>(42 pgs; 3 docs) | Final Application for Compensation & Reimbursement of Expenses. Objections/Request for Hearing Due in 21 days. Filed by Spec. Counsel Cooper & Scully PC (Attachments: # 1 Exhibit # 2 Proposed Order) (Dortch, Timothy) (Entered: 11/20/2017) |
| 11/21/2017 | 300 | Election to Appeal to District Court . (smur) (Entered: 11/21/2017) |
| 11/21/2017 | 301<br>(1 pg) | Clerk's Notice of Filing of an Appeal under Bankruptcy Rule 8009. On 11/10/17, Don Green et al filed a notice of appeal. The appeal has been assigned to U.S. District Judge Lynn N Hughes, Civil Action 4:17cv3567. Parties notified (Related document(s):290 Notice of Appeal) (smur) (Entered: 11/21/2017) |
| 11/21/2017 | 302<br>(1 pg) | Order Setting Hearing Signed on 11/21/2017 (Related document(s):299 Application for Compensation) Hearing scheduled for 12/14/2017 at 09:30 AM at Houston, Courtroom 403 (KKB). (sgue) (Entered: 11/22/2017) |
| 11/23/2017 | 303<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):301 Clerk's Notice of Filing of an Appeal under Bankruptcy Rule 8004) No. of Notices: 9. Notice Date 11/23/2017. (Admin.) (Entered: 11/24/2017) |
| | 304 | BNC Certificate of Mailing. (Related document(s):302 Order Setting Hearing) No. of Notices: |

A-6

| 11/24/2017 | (4 pgs) | 9. Notice Date 11/24/2017. (Admin.) (Entered: 11/24/2017) |
|---|---|---|
| 11/29/2017 | 305<br>(1 pg) | Notice of Deficiency (Related document(s):290 Notice of Appeal) (ltie) (Entered: 11/29/2017) |
| 12/01/2017 | 306<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):305 Notice) No. of Notices: 9. Notice Date 12/01/2017. (Admin.) (Entered: 12/01/2017) |
| 12/06/2017 | 307<br>(6 pgs) | Appellant Designation of Contents For Inclusion in Record On Appeal (related document (s):290 Notice of Appeal)., Statement of Issues on Appeal (related document(s):290 Notice of Appeal). (Baker, Reese) (Entered: 12/06/2017) |
| 12/12/2017 | 308<br>(1 pg) | Notice of Deficiency (Related document(s):290 Notice of Appeal, 307 Appellant Designation, Statement of Issues on Appeal) (smur) (Entered: 12/12/2017) |
| 12/14/2017 | 309<br>(4 pgs) | Notice of *Reset Hearing*. (Related document(s):299 Application for Compensation) Filed by Rodney D Tow (Dortch, Timothy) (Entered: 12/14/2017) |
| 12/14/2017 | 310<br>(5 pgs) | Notice of *Reset Hearing*. (Related document(s):299 Application for Compensation) Filed by Rodney D Tow (Dortch, Timothy) (Entered: 12/14/2017) |
| 12/14/2017 | 311<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):308 Notice) No. of Notices: 9. Notice Date 12/14/2017. (Admin.) (Entered: 12/14/2017) |
| 12/14/2017 | | Certificate of Email Notice. Contacted J.Koenig. Movant to notice all interested parties and file a certificate of service with the court (Related document(s):299 Application for Compensation) Hearing re-scheduled for 1/25/2018 at 09:30 AM at Houston, Courtroom 403 (KKB). (rcas) (Entered: 12/18/2017) |
| 12/20/2017 | 312<br>(5 pgs) | Appellee Designation of Contents for Inclusion in Record of Appeal (related document(s):290 Notice of Appeal). (Rubio, Charles) (Entered: 12/20/2017) |
| 12/22/2017 | 313<br>(2 pgs) | AO 435 TRANSCRIPT ORDER FORM Ordinary (30 days) by Reese W. Baker. This is to order a transcript of Hearing held on 6/9/2015 before Judge Karen K. Brown. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Donald and Kaye Green ). (Baker, Reese)Electronically forwarded to Judicial Transcribers on 12/22/2017. Estimated completion date 1/22/2018. Modified on 12/22/2017 (ShoshanaArnow). (Entered: 12/22/2017) |
| 12/22/2017 | 314<br>(2 pgs) | AO 435 TRANSCRIPT ORDER FORM Ordinary (30 days) by Reese W. Baker. This is to order a transcript of Hearing held on 9/7/2017 before Judge Karen K. Brown. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Donald and Kaye Green ). (Baker, Reese) Copy order electronically forwarded to Judicial Transcribers of Texas on 12/26/2017. Estimated transcript completion date: 1/26/2018. (LaurenWebster) (Entered: 12/22/2017) |
| 01/19/2018 | 315<br>(2 pgs) | Order on Claim Objection Signed on 1/19/2018 (Related document(s):252 Objection to Claim) (kpico) (Entered: 01/19/2018) |
| 01/19/2018 | 318<br>(4 pgs) | REDOCKETED FOR NOTICING PURPOSES: ORDER ON CLAIM OBJECTION [Signed on 1/19/2018 (Related document(s):252 Objection to Claim) (kpico) (Entered: 01/22/2018) |
| 01/21/2018 | 316<br>(5 pgs) | BNC Certificate of Mailing. (Related document(s):315 Order on Claim Objection) No. of Notices: 10. Notice Date 01/21/2018. (Admin.) (Entered: 01/21/2018) |
| 01/22/2018 | 317<br>(14 pgs) | Transcript RE: Status Conference held on June 9, 2015 before Judge Karen K. Brown. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 04/23/2018. (mhen) (Entered: 01/22/2018) |
| 01/23/2018 | 319<br>(1 pg) | Notice of Filing of Official Transcript as to 317 Transcript. Parties notified (Related document (s):317 Transcript) (hcar) (Entered: 01/23/2018) |
| 01/24/2018 | 320<br>(7 pgs) | BNC Certificate of Mailing. (Related document(s):318 Generic Order) No. of Notices: 9. Notice Date 01/24/2018. (Admin.) (Entered: 01/25/2018) |
| | 321 | BNC Certificate of Mailing. (Related document(s):319 Notice of Filing of Official Transcript |

A-7

| 01/25/2018 | (4 pgs) | (Form)) No. of Notices: 9. Notice Date 01/25/2018. (Admin.) (Entered: 01/26/2018) |
|---|---|---|
| 01/25/2018 | 322 (2 pgs) | Order Granting Application For Compensation (Related Doc # 299). Granting for Cooper & Scully PC, fees awarded: $, expenses awarded: $ Signed on 1/25/2018. (kpico) (Entered: 01/26/2018) |
| 01/28/2018 | 323 (5 pgs) | BNC Certificate of Mailing. (Related document(s):322 Order on Application for Compensation) No. of Notices: 9. Notice Date 01/28/2018. (Admin.) (Entered: 01/29/2018) |
| 01/30/2018 | 324 (1 pg) | Notice of Deficiency (Related document(s):290 Notice of Appeal, 307 Appellant Designation, Statement of Issues on Appeal) (smur) (Entered: 01/30/2018) |
| 01/30/2018 | | (private) Deadlines terminated. (kpico) (Entered: 01/30/2018) |
| 02/01/2018 | 325 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM Ordinary (30 days) by Reese W. Baker. This is to order a transcript of Hearing held on 9/22/2016 before Judge Karen K. Brown. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Donald and Kaye Green ). (Baker, Reese) Electronically forwarded to Judicial Transcribers on 2/5/2018. Estimated completion date 3/5/2018. Modified on 2/5/2018 (ShoshanaArnow). (Entered: 02/01/2018) |
| 02/01/2018 | 326 (4 pgs) | BNC Certificate of Mailing. (Related document(s):324 Notice) No. of Notices: 9. Notice Date 02/01/2018. (Admin.) (Entered: 02/01/2018) |
| 02/13/2018 | 327 (6 pgs) | Appellant Designation of Contents For Inclusion in Record On Appeal (related document (s):290 Notice of Appeal). (Baker, Reese) (Entered: 02/13/2018) |
| 02/21/2018 | | (private) Remark - requesting trial and hearing exhibits from parties (RobbieWestmoreland) (Entered: 02/21/2018) |
| 03/06/2018 | | (private) Motions terminated. (kpico) (Entered: 03/06/2018) |
| 03/21/2018 | 328 (4 pgs) | Transcript RE: Motion for Continuanc held on September 22, 2016 before Judge Karen K. Brown. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 06/19/2018. (mhen) (Entered: 03/21/2018) |
| 03/22/2018 | 329 (1 pg) | Notice of Filing of Official Transcript as to 328 Transcript. Parties notified (Related document (s):328 Transcript) (hcar) (Entered: 03/22/2018) |
| 03/24/2018 | 330 (4 pgs) | BNC Certificate of Mailing. (Related document(s):329 Notice of Filing of Official Transcript (Form)) No. of Notices: 9. Notice Date 03/24/2018. (Admin.) (Entered: 03/24/2018) |
| 04/02/2018 | 331 (1 pg) | Notice of Transfer Under General Order 2018-5. This case has been transferred from Judge Karen K. Brown to Judge *Eduardo V Rodriguez*. All court settings remain in force. (RobbieWestmoreland) (Entered: 04/02/2018) |
| 04/04/2018 | 332 (4 pgs) | BNC Certificate of Mailing. (Related document(s):331 Notice of Transfer Under General Order) No. of Notices: 9. Notice Date 04/04/2018. (Admin.) (Entered: 04/05/2018) |
| 04/16/2018 | | (private) Emailed Mr. Baker about missing transcripts and exhibits. (ShoshanaArnow) Emailed Mr. Baker on 4/23/2018. Modified on 4/24/2018 (ShoshanaArnow). (Entered: 04/16/2018) |

A-8

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Southern District of Texas | ▾ | PROOF OF CLAIM |
|---|---|---|---|

| Name of Debtor: Garrison Municipal Partners, LP | Case Number: 14-32867 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Don and Kay Green**

**COURT USE ONLY**

Name and address where notices should be sent:
P.O. Box 1088
Alpine, TX 79831-1088

Telephone number: (432) 364-2554    email: don@kdoncorp.com

❐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
    *(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):

❐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:         email:

**1. Amount of Claim as of Date Case Filed:**    $_____    1,969,297.65

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  Creditor claims for unpaid obligations
    (See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
    (See instruction #3a)

**3b. Uniform Claim Identifier (optional):** _____
    (See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ❐ Real Estate  ❐ Motor Vehicle  ❐ Other
**Describe:**

Value of Property: $_____

Annual Interest Rate_____% ❐ Fixed  or  ❐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
            $_____

Basis for perfection: _____

Amount of Secured Claim: $_____

Amount Unsecured: $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

❐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

A-9

B10 (Official Form 10) (04/13)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: DON AND KAY GREEN
Title:
Company:
Address and telephone number (if different from notice address above):
P.O. Box 1088
Alpine, TX 79831
Telephone number (432) 364-2554    email:don@kdoncorp.com

(Signature)    (Date) 8/20/14

(Signature)    (Date) 8/20/14

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

A-10

B10 (Official Form 10) (04/13)

| DEFINITIONS | INFORMATION |
| --- | --- |

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

Case 4:17-cv-03567 Document 7-1 Filed on 05/25/18 in TXSD Page 14 of 203
Case 4:17-cv-03567 Document 6-1 Filed in TXSD on 04/23/18 Page 14 of 203 of
Claim Cover   Page 1 of 2
0004

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 14-32867-H5-7 |
| **GARRISON MUNICIPAL** | § | |
| **PARTNERS, L.P.** | § | |
| Debtor | § | Chapter 7 |

## ATTACHMENTS TO PROOF OF CLAIM AND BASIS FOR CLAIM

The following are submitted as part of the proof of claim of Don and Kay Green:

1. Most recent statements from Garrison Municipal Partners, L.P. to Don and Kay Green for the bond fund setting for the amounts owed to Don and Kay Green by Garrison Municipal Partners, L.P.

2. Letter of withdrawal from the bond fund from Don and Kay Green to Garrison Municipal Partners, L.P. dated November 13, 2013.

3. Partnership Agreement for Garrison Municipal Partners, L.P. - Section 5.5 (b) allowing for a withdrawal from the partnership. The withdrawal by Don and Kay Green was effective 45 days after the notice. A complete copy of the Partnership Agreement is available from the creditor.

4. The withdrawal letter dated November 13, 2013, resulted in the payments due to Don and Kay Green by Garrison Municipal Partners, L.P. becoming a claim against Garrison Municipal Partners, L.P. as a creditor after the effective withdrawal date, which withdrawal date was no later than December 31, 2013.


[The remaining part of the page is intentionally left blank]

A-12

5.    Other than the amounts in the cash account of $19,472.10 that were paid to Don and Kay

Green, the above amounts from the bond fund statements of $1,969,297.65 have not been

paid. The amount of $1,969,297.65 are owed to Don and Kay Green from the bond fund

withdrawal effective no later than December 31, 2013

Dated: August _20_, 2014

Respectfully submitted,

_____
Don Green

_____
Kay Green

# GARRISON MUNICIPAL PARTNERS, LP

**Donald J. & Kay M. Green**

| | Garrison Municipal Partners, LP | | |
| --- | --- | --- | --- |
| | Current Month | Year-to-Date | Since Inception |
| Beginning Portfolio Date | 09/30/13 | 01/01/13 | 10/01/08 |
| Beginning Portfolio Value | $1,947,524.03 | $2,016,191.50 | $0.00 |
| Contributions | 0.00 | 0.00 | 1,900,000.00 |
| Withdrawals | 0.00 | 0.00 | (275,000.00) |
| Total Profit / (Loss) | 21,773.62 | (46,893.85) | 344,297.65 |
| **Ending Portfolio Value as of 09/30/13** | **$1,969,297.65** | **$1,969,297.65** | **$1,969,297.65** |

| | | | |
| --- | --- | --- | --- |
| **Total Profit / (Loss)** | $21,773.62 | -$46,893.85 | $344,297.65 |
| **Tax-Free Return Net of All Expenses** | 1.12% | -2.33% | 18.20% |
| **Taxable Equivalence Based upon 35% Tax Rate** | 1.72% | -2.33% | 28.00% |

A-14

Case 4:17-cv-02567 Document 7-1 Filed on 05/25/18 in TXSD Page 17 of 203
Case 4:17-cv-02567 Document 6-1 Filed on 04/24/18 on TXSD Page 1 of 1
1 of 1
0007

**KDON Corporation**
**P.O. Box 1088**
**Alpine, Texas 79831**

MARINE CONSULTANTS

(432) 364-2554                    Fax: (432) 364-2526

November 13, 2013

Monroe Garrison
Garrison Capital Management Croup, LLC
Chase Building, Suite 2125
5847 San Felipe Street
Houston, Texas 77057

Ref: Accounts of Don & Kay Green

Dear Monroe:

Pursurant to your conversation with Kay Green this date, we jointly wish to close all accounts with your firm and have all monies forwarded to the below account:

To:
Bank:                    USAA Federal Savings Bank
                         10750 McDermott Freeway
                         San Antonio, Texas 78288

ABA Nunber:              69
Deposit Account:         Donald J. or Kay M. Green
                         P.O. Box 1088
                         Alpine, Texas 79831-1088
Account Number:          80

It is with deep regret that we feel compelled to do this at this time, however, as discussed with you today Kay has serious health issues and we both feel the need to withdraw to a safe place without the stress of the markets.

We feel confident you will honor this request as soon as possible and look forward to a positive response that our monies have been deposited in the above account. Should you wish to discuss this request please call.

Sincerely,

Donald J. Green

Kay M. Green

A-15

Case 1:17-cv-03567 Document 5-1 Filed 05/25/18 in TXSD Page 18 of 203
Section 5.5 (b)   Page 1 of 2
0008

(g)    In the event of a Transfer or in the event of a distribution of assets of the Partnership to any Partner, the Partnership, in the absolute discretion of the General Partner, may, but is not required to, file an election under Section 754 of the Code and in accordance with the applicable Regulations, to cause the basis of the Partnership's assets to be adjusted for federal income tax purposes as provided by Sections 734 or 743 of the Code.

5.4    Transfer of Interest of the General Partner

(a)    The General Partner may not transfer its General Partner Interest other than (i) pursuant to Section 5.4(b), (ii) pursuant to a transaction not deemed to involve an assignment of its investment management obligations within the meaning of the United States Investment Advisers Act of 1940, as amended, or (iii) with the approval of Limited Partners whose Partnership Percentages represent more than fifty percent (50%) of the aggregate Partnership Percentages of all Limited Partners. By executing this Agreement, each Limited Partner is deemed to have consented to any such transfer permitted by clause (ii) of the preceding sentence.

(b)    Notwithstanding Section 5.4(a), the General Partner may transfer its General Partner Interest to any entity managed and controlled by it or its general partner without the consent of the Limited Partners, and the transferee will be admitted to the Partnership as a substitute General Partner in accordance with Section 5.2(b). The General Partner must notify the Limited Partners of any transfer pursuant to this Section 5.4(b).

5.5    Withdrawal of Interests of Partners

(a)    The Interest of a Partner may not be withdrawn from the Partnership prior to its dissolution except as provided in this Section 5.5.

(b)    Except as provided in Section 5.5(m), Section 6.1(c) and this Section 5.5(b), and subject to any arrangements with Special Limited Partners, a Limited Partner may voluntarily withdraw all or part of his Limited Partner Interest in the Partnership as of the close of business on the last day of each Fiscal Quarter (or at such other times as the General Partner, in its sole discretion, may determine); provided that as of such withdrawal date, such Limited Partner has held a Limited Partner Interest for at least twelve (12) complete, consecutive calendar months; and provided, further, however, that if withdrawal requests are received as of the close of any Fiscal Quarter for more than 20% of the Regular Account Net Assets as of such Fiscal Quarter end, the General Partner may, in its discretion, reduce all withdrawal requests *pro rata* so that only 20% of the value of the Regular Account Net Assets as of such Fiscal Quarter end is withdrawn. A withdrawal request that is not satisfied as of the intended Fiscal Quarter end because of the foregoing restrictions will be satisfied as of the next Fiscal Quarter end; provided, that, such restrictions do not apply as of such time. Such withdrawal requests will be satisfied in preference to later withdrawal requests subject to the foregoing provisions. Capital not withdrawn from the Partnership by virtue of the foregoing

32

Case 1:17-cv-03567 Document 5-1 Filed 05/15/18 in TXSD Page 19 of 203
Section 5.5 (b)   Page 2 of 2
0009

restrictions will remain at the risk of the Partnership until the effective withdrawal date. Such Limited Partner must give irrevocable written notice to the General Partner at the principal office of the Partnership at least forty-five (45) days prior to the proposed withdrawal date (or within such other time as the General Partner, in its sole discretion, determines) indicating the amount to be withdrawn from such Partner's Capital Account in such notice. The General Partner may, in its sole discretion, waive the foregoing notice requirement.

(c) The General Partner may not make any withdrawal from the Partnership if, after giving effect thereto, the value of the General Partner's Capital Account, as a general partner of the Partnership, would be less than the minimum balance required to be maintained pursuant to Section 3.1(c). Subject to the foregoing, the General Partner may voluntarily withdraw part of its Interest (irrespective of whether it be as a general partner or a limited partner of the Partnership) at any time pursuant to this Section 5.5 without giving notice to the Limited Partners.

(d) The General Partner may limit aggregate withdrawals as of any withdrawal date to a maximum of twenty percent (20)% of aggregate Partner capital (the "*Withdrawal Gate*"). If withdrawal requests exceed Withdrawal Gate for any withdrawal date, each Limited Partner who has submitted a timely request will receive a pro rata portion of the requested withdrawal (based on requested withdrawal amounts), and as to any balance, such balance will be considered a timely withdrawal request with respect to the next withdrawal date without any further action by that Limited Partner. However, no such balance resulting from the Withdrawal Gate will be entitled to priority over other redemption requests on subsequent withdrawal dates and will be further subject to the Withdrawal Gate as well as hold-back for reserves and any suspensions as described in this Section 5.5, if applicable at that time. Notwithstanding the foregoing, the General Partner will honor 100% of a timely withdrawal request prior to or at the end of the fourth quarter following the original withdrawal date, whether or not a Withdrawal Gate is imposed at such time.

(e) The General Partner, in its sole discretion, may effect withdrawal payments (i) in cash, (ii) by transfer to the Limited Partner of certain portfolio Securities or other assets of the Partnership, whether or not readily marketable, the fair market value of which would satisfy the Limited Partner's request for withdrawal or (iii) in any combination of the foregoing. Except as provided in Sections 5.5(g) and 5.5(j), payment of at least ninety percent (90%) of the estimated amount due to a withdrawing Partner must be made as soon as practicable (but not more than ten (10) Business Days) after the effective date of withdrawal, provided that the General Partner may delay such payment if such delay is reasonably necessary to prevent such withdrawal from having a material adverse impact on the Partnership. Any remaining balance must be paid, without interest thereon, promptly following completion of the audit of the Partnership's financial statements for the Fiscal Year that includes the effective date of withdrawal. The capital to be withdrawn will not participate in new Special Situation Investments made after the relevant withdrawal date. A request for a partial withdrawal is

33

052

Case 4:17-cv-03567 Document 6-1 Filed on 05/25/18 in TXSD Page 20 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 52 of 370

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **GARRISON MUNICIPAL PARTNERS, LP** | § | **Case No. 14-32867** |
| | § | **(Chapter 7)** |
| **DEBTOR.** | § | |
| | § | |

### TRUSTEE'S OMNIBUS OBJECTION TO PROOFS OF CLAIM FILED BY LIMITED PARTNERS OF GARRISON MUNICIPAL PARTNERS, L.P.

**[Claim Nos. 2, 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45]**

**THIS IS AN OBJECTION TO YOUR CLAIM. THE OBJECTING PARTY IS ASKING THE COURT TO DISALLOW THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE. IF YOU DO NOT REACH AN AGREEMENT, YOU MUST FILE A RESPONSE TO THIS OBJECTION AND SEND A COPY OF YOUR RESPONSE TO THE OBJECTING PARTY WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE OBJECTION IS NOT VALID. IF YOU DO NOT FILE A RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED WITHOUT A HEARING.**

**PURSUANT TO BANKRUPTCY RULE 3007(E), THE CLAIMANTS RECEIVING THE OBJECTION CAN LOCATE THEIR NAMES AND CLAIMS IN EXHIBIT A TO THIS OBJECTION.**

**A HEARING HAS BEEN SET ON THIS MATTER ON JULY 20, 2017 AT 2:00PM IN COURTROOM 403, U.S. COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, the trustee (the "Trustee") of the chapter 7 estate of Garrison Municipal

Partners L.P. (the "Debtor" or the "Partnership") files this Omnibus Objection (the "Objection")

to proofs of claim numbers 2 to 5 and 10 to 45 (the "Claims"), submitted by the limited partners

1

A-18

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 21 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 52 of 370

of the Debtor (the "Claimants"). In support of this Objection, the Trustee submits the Affidavit of Rodney D. Tow attached hereto as Exhibit A (the "Affidavit") and respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      This Court may grant the relief requested in this Objection under Bankruptcy Code §§ 105(a), 502, and 510(b) (the "Bankruptcy Code"); Bankruptcy Rule 3007; and Bankruptcy Rules for the Southern District of Texas 3007-1.

## PROCEDURAL BACKGROUND

3.      The Debtor is a limited partnership organized in February 2008 under the laws of the State of Texas. The purported primary objective of the Partnership was to invest in the municipal bond market.

4.      Charles Monroe Garrison ("Monroe Garrison") represented that the Partnership would invest primarily in municipal securities. However, notwithstanding these representations, Monroe Garrison caused the Partnership to invest in highly speculative securities that were not readily marketable.

5.      Monroe Garrison caused the Partnership to "value" these non-marketable securities in its books in amounts that far exceeded the amount paid for such investments. Specifically, Monroe Garrison would cause the Partnership to purchase certain bonds below par and then would immediately mark them up to par.

2

054

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 22 of 203
Case 4:17-cv-03567 Document 61 Filed in TXSD on 04/25/18 Page 52 of 373

6.      As a result of Monroe Garrison's use of inflated valuations, the book and records of the Partnership incorrectly showed that the Partnership's investments were realizing substantial returns, when there was no actual return occurring.

7.      The Claimants became limited partners in the Debtor by investing in the Debtor through various subscription agreements. Certain Claimants made redemption calls and withdrew from the Partnership between February 2008 and May 22, 2014 (the "Petition Date").

8.      On the Petition Date, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

9.      To date, entities and individuals have filed 46 proofs of claim against the Debtor, including the Claimants.  The Trustee and his advisors have reviewed these proofs of claim, including the supporting documentation filed therewith.  For the reasons set forth below, and based on the Trustee's review, the Trustee has determined that the Claims of the Claimants listed on Exhibit B should be reclassified as equity interests pursuant to Section 510(b) of the Bankruptcy Code as set forth herein.

**RELIEF REQUESTED**

**A.  Claims Should be Subordinated to Equity**

10.      The Claimants assert that the Claims are entitled to status as general unsecured claims.   After reviewing the Claims, including supporting documentation provided by the Claimants, if any, the Trustee has determined that the Claims are not properly classified as general unsecured claims.

11.      The Claims should be reclassified because they are subject to mandatory subordination under Section 510(b) of the Bankruptcy Code.  Specifically, Section 510(b) of the

3

055

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 23 of 203
Case 4:17-cv-03567 Document 61 Filed in TXSD on 04/25/18 Page 53 of 373

Bankruptcy Code requires that the Claims be reclassified as equity claims because each such proof of claim was filed on account of equity interests in the Debtor. Section 510(b) of the Bankruptcy Code provides:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase of sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

12.    Section 510(b) of the Bankruptcy Code serves to effectuate one of the general principles of bankruptcy law, which is that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets. *See In re Am. Housing Found.*, 785 F.3d 143, 153 (5th Cir. 2015)(stating that Section 510(b) of the Bankruptcy Code mandates the subordination of claims arising from purchase of securities); *see also In re SeaQuest Diving, LP*, 579 F.3d 411, 425 (5th Cir. 2009). In order to achieve this result, Section 510(b) makes clear that claims arising from equity investments in a debtor should be subordinated to the claims of general creditors. *See In re Am. Housing Found.*, 785 F.3d at 153.

13.    Furthermore, the Claimants' ownership interests in the Debtor constitute "securities" within the meaning of Section 510(b), as the Bankruptcy Code expressly states that the term includes an "interest of a limited partner in a limited partnership." 11 U.S.C. § 101(49)(A)(xiii).

14.    The Trustee has determined that each of the Claims was filed by the Claimants on account of asserted equity interests held by such Claimant in the Debtor, *i.e.* based solely on ownership of limited partnership interests in the Debtor. As holders of limited partnership

4

interests of the Debtor, the Claimants do not have "claims" against the Debtor.  *See* 11 U.S.C. § 501(a) (stating that "[a]n equity security holder may file a proof of interest.")

15.     Failure to appropriately classify the Claims would therefore entitle the Claimants to recoveries on account of such "claims" to which those Claimants are not entitled.  The subordination of the Claims will enable the Debtor to administer the estate by making distributions to holders of allowed unsecured claims.

16.     Accordingly, the Trustee seeks entry of an order, substantially in the form attached hereto (the "Order"), reclassifying the Claims of the Claimants identified on Exhibit B to this Objection as equity claims.

**B.  Equity Interests Should be Allowed Based on Value of Investments and Withdrawals**

17.     Through entry of the Order, the Trustee further seeks allowance of the Claims of the Claimants in amounts reflecting the total of each individual Claimant's respective cash transactions (including investments and distributions) and non-cash transactions (including investments) with the Debtor (collectively, the "Allowed Claim Amount"), as set forth on Exhibit C to this Objection.

18.     Any amounts provided to the Claimants by the Debtor in the form of a statement may have been part of the Debtor's fraudulent scheme and may not reflect real or trustworthy values. The Trustee and his professionals have determined that the Allowed Claim Amount most closely reflects the true amounts of cash and security transfers between the Claimants and the Debtor.

19.     The Trustee notes that Claimant #5 listed on Exhibit C made transfers to Claimants #17 to 21 and Claimant #23.  These transfers from Claimant #5 to Claimants #17 to 21 and Claimant #23 should be reclassified as distributions from Claimant #5.  Exhibit C reflects the

057

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 25 of 203
Case 4:17-cv-03567 Document 61 Filed in TXSB on 04/25/18 Page 57 of 370

deduction of these amounts from the adjusted balance and Allowed Claim Amount of Claimant #5. This reclassification and deduction properly reflects the amounts of cash and security transfers between Claimant #5 and the Debtor.

20. Through entry of the Order, the Trustee further seeks waiver of local bankruptcy rule 3007-1(f), which requires a proposed procedure for the handling of omnibus objections. This Objection otherwise complies with all Bankruptcy Code and local rules for an omnibus objection. In support of this request, the Trustee declares in the Affidavit attached hereto that this Objection is the only omnibus objection that the Trustee will file on behalf of the Debtor in this matter.

## RESERVATION OF RIGHTS

21. The Trustee expressly reserves the right to amend, modify, or supplement this Objection and file additional substantive (to the extent allowable by the Court) or non-substantive objections to the Claims objected to herein, or any other claims, filed or not, which may be asserted against the Debtor. Should one or more of the grounds of objection stated in this Objection be overruled, the Trustee reserves the right to object on any other applicable grounds. In addition, the Trustee reserves to right to reduce any Claim for any reason, including to the extent such Claim has been paid. The Trustee reserves the right to raise further objections, including objections under section 502(d) of the Bankruptcy Code. To the maximum extent allowable by the Court, nothing in this Objection or the relief requested herein shall limit the right of the Trustee to bring future and/or additional objections to any of the Claims on any basis.

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 26 of 203
058
Case 4:17-cv-03567 Document 76-1 Filed in TXSB on 04/25/18 Page 58 of 373

WHEREFORE, the Trustee respectfully requests entry of the Order granting the relief requested herein and such other and further relief as the Court may deem proper.

DATED: June 12, 2017

Respectfully submitted,

DIAMOND McCARTHY LLP

By:      */s/ Charles Rubio*
Kyung S. Lee
TBA No. 12128400
Charles Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5195

COUNSEL TO RODNEY D. TOW.
CHAPTER 7 TRUSTEE OF
GARRISON MUNICIPAL
PARTNERS, L.P.

## CERTIFICATE OF SERVICE

I certify that on June 12, 2017, a true and correct copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties registered to receive such service; and (ii) transmitted to the parties listed below by the method indicated, within one business day of the filing.

*/s/ Charles Rubio*
Charles Rubio

*By U.S first class mail*

Bryan Consolidated
1331 Lamar, Suite 1075
Houston, TX 77010-3025

Donald J & Kay M. Green
P.O. Box 1088
Alpine, TX 79831-1088

Elizabeth Maples
576 Hopkins Street
Menlo Park, CA 94025

HRB Global
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338

HRB Oil & Gas, Ltd.
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338

Jay Steven Adelson
30 Kite Hill Lane
Mill Valley, CA 94941-1458

J.P. Bryan
1331 Lamar, Suite 1075
Houston, TX 77010-3025

J.P. & Mary Jon Bryan Foundation
1331 Lamar, Suite 1075
Houston, TX 77010-3025

Margaret Vonder Hoya
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338

MVH Grandchildren's Trust
Chris Vonder Hoya, Trustee
4311 Oak Lawn Ave., Suite 360
Dallas, TX 75219-2338

Margaret Vonder Hoya Trust
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338

Mary Jon Bryan
1331 Lamar, Suite 1075
Houston, TX 77010-3025

Mike Maples, Jr.
820 Ramona Street, Suite 200
Palo Alto, CA 94301-2734

Mike Maples, Sr.
8609 Navidad Dr.
Austin, TX 78735-1468

MJMJR, Ltd.
820 Ramona Street, Suite 200
Palo Alto, CA 94301-2734

Patricia Thomas IRA
5735 Indian Circle
Houston, Texas 77057-1302

Robert Kevin Rose
47 N 4th Place
Brooklyn, NY 11249-3104

Bradford Clay Vonder Hoya 2012 Trust
c/o Michael J Durrschmidt
Hirsch & Westheimer, PC
1415 Louisiana, 36th Floor
Houston, Texas 77002

Elizabeth Carrie Petty 2012 Trust
By and through its Trustee,
Christopher
c/o Michael J Durrschmit
1415 Louisia, 36th Floor,
Houston, TX 77002

Margaret Louise Petty Morris 2012 Trust
c/o Michael J Durrschmidt
Hirsch & Westheimer, PC
1415 Louisiana, 36th Floor
Houston, Texas 77002

Margaret Louise Bright Petty
Testamentary Trust
c/o Michael J Durrschmidt
Hirsch & Westheimer, PC
1415 Louisiana, 36th Floor
Houston, Texas 77002

Nathan Bright Petty 2012 Trust
c/o Michael J Durrschmidt
Hirsch & Westheimer, PC
1415 Louisiana, 36th Floor
Houston, Texas 77002

## Exhibit A

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GARRISON MUNICIPAL PARTNERS, LP** | § | **Case No. 14-32867** |
| | § | **(Chapter 7)** |
| DEBTOR. | § | |
| | § | |

**AFFIDAVIT OF RODNEY D. TOW, CHAPTER 7 TRUSTEE OF THE
ESTATE OF GARRISON MUNICIPAL PARTNERS, LP IN SUPPORT
OF TRUSTEE'S OMNIBUS OBJECTION TO PROOFS OF CLAIM FILED BY
LIMITED PARTNERS OF GARRISON MUNICIPAL PARTNERS, L.P.**

**[Claim Nos. 2, 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28,
29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45]**

I, Rodney D. Tow, the trustee of the chapter 7 estate of Garrison Municipal Partners, L.P.

(the "Partnership" or the "Debtor"), being duly sworn, state the following under penalty of

perjury:

1.      Except as otherwise indicated, all statements in this declaration are based on my

personal knowledge, information and belief, my review and discussion of relevant documents or

my opinion based upon my experience and knowledge. If called to testify, I could and would

testify to each of the facts set forth herein.

2.      I submit this affidavit (the "Affidavit") in support of the *Trustee's Omnibus*

*Objection to Proofs of Claim Filed by Limited Partners of Garrison Municipal Partners, L.P.*

(the "Objection"). I am authorized to make this Affidavit.

3.      I have personally reviewed proofs of claim numbers 2 to 5 and 10 to 45 (the

"Claims") filed by certain limited partners of the Partnership (the "Claimants") against the

Debtor. The Claims, in the opinion of the Trustee, seek amounts that are not duly owing to the

061

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 29 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 64 of 377

Claimants. On that basis, I requested counsel to review and if appropriate file the necessary objections.

4.      I have read the Objection, and I am generally familiar with the information contained therein, which is true and correct to the best of my knowledge.

5.      Based on this review, the Trustee has determined that the Claims should be recharacterized for the reasons and allowed in the amounts set forth in the Objection.

6.      This Objection is the only omnibus objection that will be filed by the Trustee on behalf of the Debtor in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 12, 2017.

*/s/ Rodney D. Tow*_____
Rodney D. Tow
Trustee for the Chapter 7 Estate of Garrison
Municipal Partners, LP

10

A-27

## Exhibit B

### Claimants and Claims Objected To

| Claimant | Claim No. | Ground for Objection | Page in Omnibus Objection Pertinent to Stated Grounds |
|---|---|---|---|
| Bradford Clay Vonder Hoya 2012 Trust | 18, 32 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Bryan Consolidated Business Interests | 25, 44 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Donald J. Green | 2 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Elizabeth Carrie Petty 2012 Trust | 10, 11, 34 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Elizabeth Maples | 21, 29 | Subordination and Allowance Based on Transfer Values | 3-5 |
| HRB Global LTD | 16, 36 | Subordination and Allowance Based on Transfer Values | 3-5 |
| HRB Oil & Gas LTD | 13, 37 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Jay Steven Adelson | 5 | Subordination and Allowance Based on Transfer Values | 3-5 |
| JP Bryan | 26, 45 | Subordination and Allowance Based on Transfer Values | 3-5 |
| JP & Mary Jon Bryan Foundation | 24, 43 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Margaret Louise Petty Morris 2012 Trust | 19, 31 | Subordination and Allowance Based on Transfer Values | 3-5 |

11

| | | | |
|---|---|---|---|
| Margaret Louise Bright Petty Testamentary Trust | 27, 41 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Margaret Vonder Hoya | 15, 40 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Margaret Vonder Hoya Grandchildren's Trust | 12, 33 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Margaret Vonder Hoya Trust | 14, 39 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Mary Jon Bryan | 23, 42 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Michael J. Maples, Sr. | 20, 30 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Michael Maples, Jr. | 22, 28 | Subordination and Allowance Based on Transfer Values | 3-5 |
| MJMJR LTD | 11, 38 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Nathan Bright Petty 2012 Trust | 17, 35 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Patricia Allred Thomas | 3 | Subordination and Allowance Based on Transfer Values | 3-5 |
| Robert Kevin Rose | 4 | Subordination and Allowance Based on Transfer Values | 3-5 |

12

# Exhibit C

## Allowed Claim Amounts for Claimants

| | Limited Parter | Cash Transactions | | Non-Cash Transactions | Total | Reclassification | Adjusted Balance and Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| | | Investments | Distributions | Investments | | | |
| 1 | JP Bryan | 1,820,000.00 | (748,835.16) | (601,164.84) | 470,000.00 | 0.00 | 470,000.00 |
| 2 | Bryan Consolidated Business Interests | 3,075,000.00 | (660,400.00) | - | 2,414,600.00 | 0.00 | 2,414,600.00 |
| 3 | JP & Mary Jon Bryan Foundation | 100,000.00 | (45,000.00) | - | 55,000.00 | 0.00 | 55,000.00 |
| 4 | Mary Jon Bryan | 2,500,000.00 | - | 200,000.00 | 2,700,000.00 | 0.00 | 2,700,000.00 |
| 5 | Margaret Vonder Hoya | 8,799,959.98 | (1,323.30) | 200,040.02 | 8,998,676.70 | -153,360.60 | 8,845,316.10 |
| 6 | HRB Global  LTD | 5,298,834.61 | (2,202,124.33) | 701,165.39 | 3,797,875.67 | 0.00 | 3,797,875.67 |
| 7 | Donald J Green | 1,900,000.00 | (275,000.00) | - | 1,625,000.00 | 0.00 | 1,625,000.00 |
| 8 | Margaret Vonder Hoya Trust | 500,000.00 | (2,280.16) | 350,000.00 | 847,719.84 | 0.00 | 847,719.84 |
| 9 | Michael J Maples, Jr. | 3,000,000.00 | - | - | 3,000,000.00 | 0.00 | 3,000,000.00 |
| 10 | MJMJR LTD | 100,000.00 | - | - | 100,000.00 | 0.00 | 100,000.00 |
| 11 | Michael J Maples, Sr. | 2,500,000.00 | - | - | 2,500,000.00 | 0.00 | 2,500,000.00 |
| 12 | HRB Oil & Gas LTD | 700,000.00 | (1,454.26) | - | 698,545.74 | 0.00 | 698,545.74 |
| 13 | Jay Steven Adelson | 500,000.00 | (172,816.00) | - | 327,184.00 | 0.00 | 327,184.00 |
| 14 | Robert Kevin Rose | 250,000.00 | (150,000.00) | 350,000.00 | 450,000.00 | 0.00 | 450,000.00 |
| 15 | Patricia Allred Thomas | 4,000,000.00 | - | - | 4,000,000.00 | 0.00 | 4,000,000.00 |
| 16 | Elizabeth Maples | 1,100,000.00 | - | 1,200,663.93 | 2,300,663.93 | 0.00 | 2,300,633.93 |
| 17 | Margaret Vonder Hoya Grandchildren's | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 18 | Nathan Bright Petty 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 19 | Margaret Louise Petty Morris 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 20 | Elizabeth Carrie Petty 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 21 | Bradford Clay Vonder Hoya 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 22 | The Maples Descendants Trust | - | - | - | - | 0.00 | 0.00 |
| 23 | Margaret Louise Bright Petty Testamen | - | (121.30) | - | (121.30) | 121.30 | 0.00 |

13

# **Proposed Order**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GARRISON MUNICIPAL PARTNERS,** | § | **Case No. 14-32867** |
| **LP** | § | **(Chapter 7)** |
| | § | |
| **DEBTOR.** | § | |

**ORDER APPROVING CHAPTER 7 TRUSTEE'S OMNIBUS OBJECTION TO PROOFS OF CLAIM FILED BY LIMITED PARTNERS OF GARRISON MUNICIPAL PARTNERS, L.P.PURSUANT TO BANKRUPTCY RULE 510(b)**

**[Claim Nos. 2, 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45]**

Came on for consideration the *Trustee's Omnibus Objection to Proofs of Claim Filed by Limited Partners of Garrison Municipal Partners, L.P.* (the "Objection") filed by Rodney D. Tow, the Chapter 7 Trustee (the "Trustee") of Garrison Municipal Partners, L.P. (the "Debtor"), seeking entry of an order (i) reclassifying the Claims[1] of the Claimants set forth on Exhibit A attached hereto as equity claims, and (ii) allowing the Claims in the Allowed Claim Amount as set forth on Exhibit B; and it appearing to the Court that the notice of time for creditors and parties-in-interest to object to the Objection and the hearing date on the Objection is appropriate notice under the circumstances of this case and as set out in the allegations in the Objection; and this Court having determined that the relief requested in the Objection is in the best interest of the Chapter 7 estate, its creditors and other parties-in-interest; and after due consideration of the pleadings and objections, if any filed, the evidence adduced at the hearing on the Objection and the reasons stated on the record at the hearing seeking approval of the Objection: IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Objection.

1

067
Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 35 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 67 of 379

1.      All responses to the Objection, as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

2.      The Claims set forth on Exhibit A to this Order shall be reclassified and subordinated to the level of equity claims pursuant to section 510(b) of the Bankruptcy Code.

3.      The Claims shall be allowed in the Allowed Claim Amount, as set forth on Exhibit B to this Order.

4.      Local bankruptcy rule 3007-1(f) is waived for the purposes of this Objection.

5.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated this __ day of _____, 2017.

_____
KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE

2

068

Case 4:17-cv-03567 Document 761 Filed on 05/25/18 in TXSD Page 36 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 68 of 370

## Exhibit A

## Claimants and Claims Objected To

| Claimant | Claim Number |
|---|---|
| Bradford Clay Vonder Hoya 2012 Trust | 18, 32 |
| Bryan Consolidated Business Interests | 25, 44 |
| Donald J. Green | 2 |
| Elizabeth Carrie Petty 2012 Trust | 10, 11, 34 |
| Elizabeth Maples | 21, 29 |
| HRB Global LTD | 16, 36 |
| HRB Oil & Gas LTD | 13, 37 |
| Jay Steven Adelson | 5 |
| JP Bryan | 26, 45 |
| JP & Mary Jon Bryan Foundation | 24, 43 |
| Margaret Louise Petty Morris 2012 Trust | 19, 31 |
| Margaret Louise Bright Petty Testamentary Trust | 27, 41 |
| Margaret Vonder Hoya | 15, 40 |
| Margaret Vonder Hoya Grandchildren's Trust | 12, 33 |
| Margaret Vonder Hoya Trust | 14, 39 |
| Mary Jon Bryan | 23, 42 |
| Michael J. Maples, Sr. | 20, 30 |
| Michael Maples, Jr. | 22, 28 |
| MJMJR LTD | 11, 38 |
| Nathan Bright Petty 2012 Trust | 17, 35 |
| Patricia Allred Thomas | 3 |
| Robert Kevin Rose | 4 |

# Exhibit B

## Allowed Claim Amounts for Claimants

| | Limited Parter | Cash Transactions | | Non-Cash Transactions | | | |
| | | Investments | Distributions | Investments | Total | Reclassification | Adjusted Balance and Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| 1 | JP Bryan | 1,820,000.00 | (748,835.16) | (601,164.84) | 470,000.00 | 0.00 | 470,000.00 |
| 2 | Bryan Consolidated Business Interests | 3,075,000.00 | (660,400.00) | - | 2,414,600.00 | 0.00 | 2,414,600.00 |
| 3 | JP & Mary Jon Bryan Foundation | 100,000.00 | (45,000.00) | - | 55,000.00 | 0.00 | 55,000.00 |
| 4 | Mary Jon Bryan | 2,500,000.00 | - | 200,000.00 | 2,700,000.00 | 0.00 | 2,700,000.00 |
| 5 | Margaret Vonder Hoya | 8,799,959.98 | (1,323.30) | 200,040.02 | 8,998,676.70 | -153,360.60 | 8,845,316.10 |
| 6 | HRB Global  LTD | 5,298,834.61 | (2,202,124.33) | 701,165.39 | 3,797,875.67 | 0.00 | 3,797,875.67 |
| 7 | Donald J Green | 1,900,000.00 | (275,000.00) | - | 1,625,000.00 | 0.00 | 1,625,000.00 |
| 8 | Margaret Vonder Hoya Trust | 500,000.00 | (2,280.16) | 350,000.00 | 847,719.84 | 0.00 | 847,719.84 |
| 9 | Michael J Maples, Jr. | 3,000,000.00 | - | - | 3,000,000.00 | 0.00 | 3,000,000.00 |
| 10 | MIMIR LTD | 100,000.00 | - | - | 100,000.00 | 0.00 | 100,000.00 |
| 11 | Michael J Maples, Sr. | 2,500,000.00 | - | - | 2,500,000.00 | 0.00 | 2,500,000.00 |
| 12 | HRB Oil & Gas LTD | 700,000.00 | (1,454.26) | - | 698,545.74 | 0.00 | 698,545.74 |
| 13 | Jay Steven Adelson | 500,000.00 | (172,816.00) | - | 327,184.00 | 0.00 | 327,184.00 |
| 14 | Robert Kevin Rose | 250,000.00 | (150,000.00) | 350,000.00 | 450,000.00 | 0.00 | 450,000.00 |
| 15 | Patricia Allred Thomas | 4,000,000.00 | - | - | 4,000,000.00 | 0.00 | 4,000,000.00 |
| 16 | Elizabeth Maples | 1,100,000.00 | - | 1,200,663.93 | 2,300,663.93 | 0.00 | 2,300,633.93 |
| 17 | Margaret Vonder Hoya Grandchildren's | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 18 | Nathan Bright Petty 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 19 | Margaret Louise Petty Morris 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 20 | Elizabeth Carrie Petty 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 21 | Bradford Clay Vonder Hoya 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 22 | The Maples Descendants Trust | - | - | - | - | 0.00 | 0.00 |
| 23 | Margaret Louise Bright Petty Testamen | - | (121.30) | - | (121.30) | 121.30 | 0.00 |

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GARRISON MUNICIPAL PARTNERS, LP** | § | **Case No. 14-32867** |
| | § | **(Chapter 7)** |
| **DEBTOR.** | § | |
| | § | |
| | § | |

**TRUSTEE'S SUPPLEMENT TO OMNIBUS OBJECTION
TO PROOFS OF CLAIM FILED BY
LIMITED PARTNERS OF GARRISON MUNICIPAL PARTNERS, L.P.**

**[Claim Nos. 2, 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45]**

**THIS IS AN OBJECTION TO YOUR CLAIM. THE OBJECTING PARTY IS ASKING THE COURT TO DISALLOW THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE. IF YOU DO NOT REACH AN AGREEMENT, YOU MUST FILE A RESPONSE TO THIS OBJECTION AND SEND A COPY OF YOUR RESPONSE TO THE OBJECTING PARTY WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE OBJECTION IS NOT VALID. IF YOU DO NOT FILE A RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED WITHOUT A HEARING.**

**PURSUANT TO BANKRUPTCY RULE 3007(E), THE CLAIMANTS RECEIVING THE OBJECTION CAN LOCATE THEIR NAMES AND CLAIMS IN EXHIBIT A TO THIS OBJECTION.**

**A HEARING HAS BEEN SET ON THIS MATTER ON JULY 20, 2017 AT 2:00PM IN COURTROOM 403, U.S. COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, the trustee (the "Trustee") of the chapter 7 estate of Garrison Municipal

Partners L.P. (the "Debtor" or the "Partnership") files this Supplement (the "Supplemental

Objection") to Trustee's Omnibus Objection to Proofs of Claim Filed by Limited Partners of

1

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 39 of 203
Case 4:17-cv-03567 Document 61 Filed in TXSD on 04/25/18 Page 39 of 370

Garrison Municipal Partners, L.P. (the "Omnibus Objection"), which objects to proofs of claim numbers 2 to 5 and 10 to 45 (the "Claims"), submitted by the limited partners of the Debtor (the "Claimants"). In support of this Supplemental Objection, the Trustee submits the Supplemental Affidavit of Rodney D. Tow attached hereto as Exhibit A (the "Affidavit") and respectfully states as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    This Court may grant the relief requested in this Objection under Bankruptcy Code §§ 105(a), 502, and 510(b) (the "Bankruptcy Code"); Bankruptcy Rule 3007; and Bankruptcy Rules for the Southern District of Texas 3007-1.

## PROCEDURAL BACKGROUND

3.    The Trustee filed the Omnibus Objection [Docket 252 and 253], requesting that the Claims (i) be reclassified because they are subject to mandatory subordination under Section 510(b) of the Bankruptcy Code, as each such proof of claim was filed on account of equity interests in the Debtor; and (ii) allowed in amounts as reflected in the Debtor's records.

4.    The Omnibus Objection reserved the Trustee's right to supplement the Omnibus Objection with additional substantive and non-substantive objections.

## RELIEF REQUESTED

5.    After reviewing the Claims, including supporting documentation provided by the Claimants, if any, the Trustee has determined that the certain of the Claims are duplicative, as set forth on Exhibit B to this Supplemental Objection.

2

6.      After reviewing the Claims, the Trustee has further determined that the Claims for Claimant Elizabeth Carrie Petty 2012 Trust are properly Claim numbers 10 and 34, as set forth on Exhibit B.

7.      The Trustee seeks entry of an order, substantially in the form attached hereto (the "Order"), eliminating duplicative claims and reclassifying the Claims of the Claimants identified on Exhibit B to this Objection as equity claims.

8.      Through entry of the Order, the Trustee further seeks allowance of the Claims of the Claimants in amounts reflecting the total of each Claimant's respective cash transactions (including investments and distributions) and non-cash transactions (including investments) with the Debtor (collectively, the "Allowed Claim Amount"), as set forth on Exhibit C to this Supplemental Objection.

## RESERVATION OF RIGHTS

9.      The Trustee expressly reserves the right to amend, modify, or supplement this Objection and file additional substantive (to the extent allowable by the Court) or non-substantive objections to the Claims objected to herein, or any other claims, filed or not, which may be asserted against the Debtor.  Should one or more of the grounds of objection stated in this Objection be overruled, the Trustee reserves the right to object on any other applicable grounds.  In addition, the Trustee reserves to right to reduce any Claim for any reason, including to the extent such Claim has been paid.  The Trustee reserves the right to raise further objections, including objections under section 502(d) of the Bankruptcy Code.  To the maximum extent allowable by the Court, nothing in this Objection or the relief requested herein shall limit the right of the Trustee to bring future and/or additional objections to any of the Claims on any basis.

073
Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 41 of 203
Case 17-03567 Document 61 Filed in TXSB on 04/25/18 Page 31 of 37

WHEREFORE, the Trustee respectfully requests entry of the Order granting the relief requested herein and such other and further relief as the Court may deem proper.

DATED: June 16, 2017

Respectfully submitted,

DIAMOND McCARTHY LLP

By:     */s/ Charles Rubio*
Kyung S. Lee
TBA No. 12128400
Charles Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
909 Fannin, Suite 1500
Houston, Texas 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5195

COUNSEL TO RODNEY D. TOW.
CHAPTER 7 TRUSTEE OF
GARRISON MUNICIPAL
PARTNERS, L.P.

### CERTIFICATE OF SERVICE

I certify that on June 16, 2017, a true and correct copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties registered to receive such service; and (ii) transmitted to the parties listed below by the method indicated, within one business day of the filing.

*/s/ Charles Rubio*
Charles Rubio

4

*By U.S first class mail*

| | | |
|---|---|---|
| Bryan Consolidated<br>1331 Lamar, Suite 1075<br>Houston, TX 77010-3025 | Donald J & Kay M. Green<br>P.O. Box 1088<br>Alpine, TX 79831-1088 | Elizabeth Maples<br>576 Hopkins Street<br>Menlo Park, CA 94025 |
| HRB Global<br>4311 Oak Lawn Ave. Suite 360<br>Dallas, TX 75219-2338 | HRB Oil & Gas, Ltd.<br>4311 Oak Lawn Ave. Suite 360<br>Dallas, TX 75219-2338 | Jay Steven Adelson<br>30 Kite Hill Lane<br>Mill Valley, CA 94941-1458 |
| J.P. Bryan<br>1331 Lamar, Suite 1075<br>Houston, TX 77010-3025 | J.P. & Mary Jon Bryan Foundation<br>1331 Lamar, Suite 1075<br>Houston, TX 77010-3025 | Margaret Vonder Hoya<br>4311 Oak Lawn Ave. Suite 360<br>Dallas, TX 75219-2338 |
| MVH Grandchildren's Trust<br>Chris Vonder Hoya, Trustee<br>4311 Oak Lawn Ave., Suite 360<br>Dallas, TX 75219-2338 | Margaret Vonder Hoya Trust<br>4311 Oak Lawn Ave. Suite 360<br>Dallas, TX 75219-2338 | Mary Jon Bryan<br>1331 Lamar, Suite 1075<br>Houston, TX 77010-3025 |
| Mike Maples, Jr.<br>820 Ramona Street, Suite 200<br>Palo Alto, CA 94301-2734 | Mike Maples, Sr.<br>8609 Navidad Dr.<br>Austin, TX 78735-1468 | MJMJR, Ltd.<br>820 Ramona Street, Suite 200<br>Palo Alto, CA 94301-2734 |
| Patricia Thomas IRA<br>5735 Indian Circle<br>Houston, Texas 77057-1302 | Robert Kevin Rose<br>47 N 4th Place<br>Brooklyn, NY 11249-3104 | Bradford Clay Vonder Hoya 2012 Trust<br>c/o Michael J Durrschmidt<br>Hirsch & Westheimer, PC<br>1415 Louisiana, 36th Floor<br>Houston, Texas 77002 |
| Elizabeth Carrie Petty 2012 Trust<br>By and through its Trustee,<br>Christopher<br>c/o Michael J Durrschmit<br>1415 Louisia, 36th Floor,<br>Houston, TX 77002 | Margaret Louise Petty Morris 2012 Trust<br>c/o Michael J Durrschmidt<br>Hirsch & Westheimer, PC<br>1415 Louisiana, 36th Floor<br>Houston, Texas 77002 | Margaret Louise Bright Petty<br>Testamentary Trust<br>c/o Michael J Durrschmidt<br>Hirsch & Westheimer, PC<br>1415 Louisiana, 36th Floor<br>Houston, Texas 77002 |
| Nathan Bright Petty 2012 Trust<br>c/o Michael J Durrschmidt<br>Hirsch & Westheimer, PC<br>1415 Louisiana, 36th Floor<br>Houston, Texas 77002 | | |

5

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GARRISON MUNICIPAL PARTNERS, LP** | § | **Case No. 14-32867** |
| | § | **(Chapter 7)** |
| DEBTOR. | § | |
| | § | |

**SUPPLEMENTAL AFFIDAVIT OF RODNEY D. TOW IN SUPPORT**
**OF SUPPLEMENT TO TRUSTEE'S OMNIBUS OBJECTION TO PROOFS OF CLAIM**
**FILED BY LIMITED PARTNERS OF GARRISON MUNICIPAL PARTNERS, L.P.**

**[Claim Nos. 2, 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45]**

I, Rodney D. Tow, the trustee of the chapter 7 estate of Garrison Municipal Partners, L.P. (the "Partnership" or the "Debtor"), being duly sworn, state the following under penalty of perjury:

1.      Except as otherwise indicated, all statements in this declaration are based on my personal knowledge, information and belief, my review and discussion of relevant documents or my opinion based upon my experience and knowledge. If called to testify, I could and would testify to each of the facts set forth herein.

2.      I submit this affidavit (the "Affidavit") in support of the *Trustee's Supplement to Omnibus Objection to Proofs of Claim Filed by Limited Partners of Garrison Municipal Partners, L.P.* (together with the original objection, the "Objection"). I am authorized to make this Affidavit.

6

3.      I have personally reviewed proofs of claim numbers 2 to 5 and 10 to 45 (the "Claims") filed by certain limited partners of the Partnership (the "Claimants") against the Debtor.

4.      The Claims, in the opinion of the Trustee, seek amounts that are not duly owing to the Claimants. On that basis, I requested counsel to review and if appropriate file the necessary objections.

5.      I have read the Objection, and I am generally familiar with the information contained therein, which is true and correct to the best of my knowledge.

6.      Based on this review, the Trustee has determined that the Claims should be recharacterized for the reasons and allowed in the amounts set forth in the Objection.  The Trustee has also determined that certain of the Claims are duplicative.

7.      This Objection is the only omnibus objection that will be filed by the Trustee on behalf of the Debtor in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 16, 2017.

*/s/  Rodney D. Tow*
Rodney D. Tow
Trustee for the Chapter 7 Estate of Garrison
Municipal Partners, LP

7

### Exhibit B

### Claimants and Claims Objected To

| Claimant | Claim No. | Ground for Objection | Page in Omnibus Objection Pertinent to Stated Grounds |
|----------|-----------|----------------------|---------|
| Bradford Clay Vonder Hoya 2012 Trust | 18, 32 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Bryan Consolidated Business Interests | 25, 44 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Donald J. Green | 2 | Subordination and Allowance Based on Transfer Values | 2-3 |
| Elizabeth Carrie Petty 2012 Trust | 10, 34 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Elizabeth Maples | 21, 29 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| HRB Global LTD | 16, 36 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| HRB Oil & Gas LTD | 13, 37 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Jay Steven Adelson | 5 | Subordination and Allowance Based on Transfer Values | 2-3 |

8

078

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 46 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 46 of 303

| JP Bryan | 26, 45 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| JP & Mary Jon Bryan Foundation | 24, 43 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Margaret Louise Petty Morris 2012 Trust | 19, 31 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Margaret Louise Bright Petty Testamentary Trust | 27, 41 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Margaret Vonder Hoya | 15, 40 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Margaret Vonder Hoya Grandchildren's Trust | 12, 33 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Margaret Vonder Hoya Trust | 14, 39 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Mary Jon Bryan | 23, 42 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |

9

| Michael J. Maples, Sr. | 20, 30 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
|---|---|---|---|
| Michael Maples, Jr. | 22, 28 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| MJMJR LTD | 11, 38 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Nathan Bright Petty 2012 Trust | 17, 35 | Subordination and Allowance Based on Transfer Values<br><br>Duplicative Claims | 2-3 |
| Patricia Allred Thomas | 3 | Subordination and Allowance Based on Transfer Values | 2-3 |
| Robert Kevin Rose | 4 | Subordination and Allowance Based on Transfer Values | 2-3 |

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 48 of 203
080
Case 4:17-cv-03567 Document 61 Filed in TXSD on 04/25/18 Page 80 of 370

**Exhibit C**

**Allowed Claim Amounts for Claimants**

| | | | Cash Transactions | | Non-Cash Transactions | | | |
| | | | Investments | Distributions | Investments | Total | Reclassification | Adjusted Balance and Allowed Claim Amount |
|---|---|---|---|---|---|---|---|---|
| | | Limited Parter | | | | | | |
| | | Allowed Claim No. | | | | | | |
| 1. | 26 | JP Bryan | 1,820,000.00 | (748,835.16) | (601,164.84) | 470,000.00 | 0.00 | 470,000.00 |
| 2. | 25 | Bryan Consolidated Business Interests | 3,075,000.00 | (660,400.00) | - | 2,414,600.00 | 0.00 | 2,414,600.00 |
| 3. | 24 | JP & Mary Jon Bryan Foundation | 100,000.00 | (45,000.00) | - | 55,000.00 | 0.00 | 55,000.00 |
| 4. | 23 | Mary Jon Bryan | 2,500,000.00 | - | 200,000.00 | 2,700,000.00 | 0.00 | 2,700,000.00 |
| 5. | 15 | Margaret Vonder Hoya | 8,799,959.98 | (1,323.30) | 200,040.02 | 8,998,676.70 | -153,360.60 | 8,845,316.10 |
| 6. | 16 | HRB Global  LTD | 5,298,834.61 | (2,202,124.33) | 701,165.39 | 3,797,875.67 | 0.00 | 3,797,875.67 |
| 7. | 2 | Donald J Green | 1,900,000.00 | (275,000.00) | - | 1,625,000.00 | 0.00 | 1,625,000.00 |
| 8. | 14 | Margaret Vonder Hoya Trust | 500,000.00 | (2,280.16) | 350,000.00 | 847,719.84 | 0.00 | 847,719.84 |
| 9. | 22 | Michael J Maples, Jr. | 3,000,000.00 | - | - | 3,000,000.00 | 0.00 | 3,000,000.00 |
| 10. | 11 | MJMJR LTD | 100,000.00 | - | - | 100,000.00 | 0.00 | 100,000.00 |
| 11. | 20 | Michael J Maples, Sr. | 2,500,000.00 | - | - | 2,500,000.00 | 0.00 | 2,500,000.00 |
| 12. | 13 | HRB Oil & Gas LTD | 700,000.00 | (1,454.26) | - | 698,545.74 | 0.00 | 698,545.74 |
| 13. | 5 | Jay Steven Adelson | 500,000.00 | (172,816.00) | - | 327,184.00 | 0.00 | 327,184.00 |
| 14. | 4 | Robert Kevin Rose | 250,000.00 | (150,000.00) | 350,000.00 | 450,000.00 | 0.00 | 450,000.00 |
| 15. | 3 | Patricia Allred Thomas | 4,000,000.00 | - | - | 4,000,000.00 | 0.00 | 4,000,000.00 |
| 16. | 21 | Elizabeth Maples | 1,100,000.00 | - | 1,200,663.93 | 2,300,663.93 | 0.00 | 2,300,633.93 |
| 17. | 12 | Margaret Vonder Hoya Grandchildren's | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 18. | 17 | Nathan Bright Petty 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 19. | 19 | Margaret Louise Petty Morris 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 20. | 10 | Elizabeth Carrie Petty 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 21. | 18 | Bradford Clay Vonder Hoya 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 22. | | The Maples Descendants Trust | - | - | - | - | 0.00 | 0.00 |
| 23. | 27 | Margaret Louise Bright Petty Testamen | - | (121.30) | - | (121.30) | 121.30 | 0.00 |

11

A-46

081

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 49 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 31 of 373

# **<u>Proposed Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GARRISON MUNICIPAL PARTNERS,** | § | **Case No. 14-32867** |
| **LP** | § | **(Chapter 7)** |
| | § | |
| **DEBTOR.** | § | |

**ORDER APPROVING CHAPTER 7 TRUSTEE'S OMNIBUS OBJECTION AND**
**SUPPLEMENT TO OMNIBUS OBJECTION TO PROOFS OF CLAIM FILED BY**
**LIMITED PARTNERS OF GARRISON MUNICIPAL PARTNERS, L.P.**
**PURSUANT TO BANKRUPTCY RULE 510(b)**

**[Claim Nos. 2, 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28,**
**29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45]**

Came on for consideration the *Trustee's Omnibus Objection to Proofs of Claim Filed by Limited Partners of Garrison Municipal Partners, L.P.* and *Trustee's Supplement to Omnibus Objection to Proofs of Claim Filed by Limited Partners of Garrison Municipal Partners, L.P.* (collectively, the "Objection") filed by Rodney D. Tow, the Chapter 7 Trustee (the "Trustee") of Garrison Municipal Partners, L.P. (the "Debtor"), seeking entry of an order (i) reclassifying the Claims[1] of the Claimants set forth on Exhibit A attached hereto as equity claims, (ii) allowing the Claims in the Allowed Claim Amount as set forth on Exhibit B; and (iii) eliminating the duplicate claims set forth on Exhibit A; and it appearing to the Court that the notice of time for creditors and parties-in-interest to object to the Objection and the hearing date on the Objection is appropriate notice under the circumstances of this case and as set out in the allegations in the Objection; and this Court having determined that the relief requested in the Objection is in the best interest of the Chapter 7 estate, its creditors and other parties-in-interest; and after due

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Objection.

1

consideration of the pleadings and objections, if any filed, the evidence adduced at the hearing on the Objection and the reasons stated on the record at the hearing seeking approval of the Objection: IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      All responses to the Objection, as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

2.      The duplicative Claims set forth on Exhibit A shall be eliminated from the claims register.

3.      The Claims set forth on Exhibit A to this Order shall be reclassified and subordinated to the level of equity claims pursuant to section 510(b) of the Bankruptcy Code.

4.      The Claims shall be allowed in the Allowed Claim Amount, as set forth on Exhibit B to this Order.

5.      Local bankruptcy rule 3007-1(f) is waived for the purposes of this Objection.

6.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated this ___ day of _____, 2017.

_____
KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE

2

## Exhibit A

## Claimants and Claims Objected To

| Claimant | Claim Number/s | Duplicate Claim | Claim to be Reclassified and Subordinated |
|---|---|---|---|
| Bradford Clay Vonder Hoya 2012 Trust | 18, 32 | 32 | 18 |
| Bryan Consolidated Business Interests | 25, 44 | 44 | 25 |
| Donald J. Green | 2 | | 2 |
| Elizabeth Carrie Petty 2012 Trust | 10, 34 | 34 | 10 |
| Elizabeth Maples | 21, 29 | 29 | 21 |
| HRB Global LTD | 16, 36 | 36 | 16 |
| HRB Oil & Gas LTD | 13, 37 | 37 | 13 |
| Jay Steven Adelson | 5 | | 5 |
| JP Bryan | 26, 45 | 45 | 26 |
| JP & Mary Jon Bryan Foundation | 24, 43 | 43 | 24 |
| Margaret Louise Petty Morris 2012 Trust | 19, 31 | 31 | 19 |
| Margaret Louise Bright Petty Testamentary Trust | 27, 41 | 41 | 27 |
| Margaret Vonder Hoya | 15, 40 | 40 | 15 |
| Margaret Vonder Hoya Grandchildren's Trust | 12, 33 | 33 | 12 |
| Margaret Vonder Hoya Trust | 14, 39 | 39 | 14 |
| Mary Jon Bryan | 23, 42 | 42 | 23 |
| Michael J. Maples, Sr. | 20, 30 | 30 | 20 |
| Michael Maples, Jr. | 22, 28 | 28 | 22 |
| MJMJR LTD | 11, 38 | 38 | 11 |
| Nathan Bright Petty 2012 Trust | 17, 35 | 35 | 17 |
| Patricia Allred Thomas | 3 | | 3 |
| Robert Kevin Rose | 4 | | 4 |

3

**Exhibit B**

**Allowed Claim Amounts for Claimants**

| | Allowed Claim No. | Limited Parter | Cash Transactions | | Non-Cash Transactions | Total | Reclassification | Adjusted Balance and Allowed Claim Amount |
|---|---|---|---|---|---|---|---|---|
| | | | Investments | Distributions | Investments | | | |
| 1. | 26 | JP Bryan | 1,820,000.00 | (748,835.16) | (601,164.84) | 470,000.00 | 0.00 | 470,000.00 |
| 2. | 25 | Bryan Consolidated Business Interests | 3,075,000.00 | (660,400.00) | - | 2,414,600.00 | 0.00 | 2,414,600.00 |
| 3. | 24 | JP & Mary Jon Bryan Foundation | 100,000.00 | (45,000.00) | - | 55,000.00 | 0.00 | 55,000.00 |
| 4. | 23 | Mary Jon Bryan | 2,500,000.00 | - | 200,000.00 | 2,700,000.00 | 0.00 | 2,700,000.00 |
| 5. | 15 | Margaret Vonder Hoya | 8,799,959.98 | (1,323.30) | 200,040.02 | 8,998,676.70 | -153,360.60 | 8,845,316.10 |
| 6. | 16 | HRB Global LTD | 5,298,834.61 | (2,202,124.33) | 701,165.39 | 3,797,875.67 | 0.00 | 3,797,875.67 |
| 7. | 2 | Donald J Green | 1,900,000.00 | (275,000.00) | - | 1,625,000.00 | 0.00 | 1,625,000.00 |
| 8. | 14 | Margaret Vonder Hoya Trust | 500,000.00 | (2,280.16) | 350,000.00 | 847,719.84 | 0.00 | 847,719.84 |
| 9. | 22 | Michael J Maples, Jr. | 3,000,000.00 | - | - | 3,000,000.00 | 0.00 | 3,000,000.00 |
| 10. | 11 | MJMJR LTD | 100,000.00 | - | - | 100,000.00 | 0.00 | 100,000.00 |
| 11. | 20 | Michael J Maples, Sr. | 2,500,000.00 | - | - | 2,500,000.00 | 0.00 | 2,500,000.00 |
| 12. | 13 | HRB Oil & Gas LTD | 700,000.00 | (1,454.26) | - | 698,545.74 | 0.00 | 698,545.74 |
| 13. | 5 | Jay Steven Adelson | 500,000.00 | (172,816.00) | - | 327,184.00 | 0.00 | 327,184.00 |
| 14. | 4 | Robert Kevin Rose | 250,000.00 | (150,000.00) | 350,000.00 | 450,000.00 | 0.00 | 450,000.00 |
| 15. | 3 | Patricia Allred Thomas | 4,000,000.00 | - | - | 4,000,000.00 | 0.00 | 4,000,000.00 |
| 16. | 21 | Elizabeth Maples | 1,100,000.00 | - | 1,200,663.93 | 2,300,663.93 | 0.00 | 2,300,633.93 |
| 17. | 12 | Margaret Vonder Hoya Grandchildren's | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 18. | 17 | Nathan Bright Petty 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 19. | 19 | Margaret Louise Petty Morris 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 20. | 10 | Elizabeth Carrie Petty 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 21. | 18 | Bradford Clay Vonder Hoya 2012 Trust | - | (30,647.86) | - | (30,647.86) | 30,647.86 | 0.00 |
| 22. | | The Maples Descendants Trust | - | - | - | - | 0.00 | 0.00 |
| 23. | 27 | Margaret Louise Bright Petty Testamen | - | (121.30) | - | (121.30) | 121.30 | 0.00 |

4

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 14-32867** |
| **Garrison Municipal Partners, LP,** | § | |
| Debtor | § | **(Chapter 7)** |

**DON GREEN AND KAY GREEN RESPONSE TO TRUSTEE'S OMNIBUS OBJECTION TO PROOF OF CLAIM FILED BY PARTNERS OF GARRISON MUNICIPAL PARTNERS, L.P.**
**[Docket No. 252]**

**TO THE HONORABLE JUDGE KAREN K. BROWN, UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW Don Green and Kay Green (referred herein as "Green" or "Claimants") and file this response to Trustee's Omnibus Objection to Proof of Claim filed by Partners of Garrison Municipal Partners, L.P. ("Garrison") ("Objection") and, in support thereof, would respectfully show the Court the following:

1. Claimants admit to the allegations contained in paragraph 1.

2. Claimants admit to the allegations contained in paragraph 2.

3. Claimants admit to the allegations contained in paragraph 3.

4. Claimants admit to the allegations contained in paragraph 4.

5. Claimants have insufficient information to admit or deny such allegations and therefore deny the allegations paragraph 5.

6. Claimants have insufficient information to admit or deny such allegations and therefore deny the allegations paragraph 6.

7. Claimants have insufficient information to admit or deny such allegations and therefore deny the allegations paragraph 7.

8. Claimants admit to the allegations contained in paragraph 8.

9. Claimants have insufficient information to admit or deny the allegations contained in paragraph 9 of the Objection and therefore deny the allegations in paragraph 9.

10. Claimants admit that they have filed a claim as a general unsecured creditor. Claimants have insufficient information to admit or deny the remaining allegations contained in paragraph

10 of the Objection and therefore deny the remaining allegations in paragraph 10.

11.    Claimants deny the allegations in paragraph 11.

12.    Claimants deny the allegations in paragraph 12.

13.    Claimants deny the allegations in paragraph 13.

14.    Claimants have insufficient information to admit or deny the allegations contained in paragraph 14 of the Objection and therefore deny the allegations in paragraph 14.

15.    Claimants have insufficient information to admit or deny the allegations contained in paragraph 15 of the Objection and therefore deny the allegations in paragraph 15.

16.    Claimants deny the allegations in paragraph 16 as to Claim number 2.

17.    Claimants have insufficient information to admit or deny the allegations contained in paragraph 17 of the Objection and therefore deny the allegations in paragraph 17.

18.    X Claimants have insufficient information to admit or deny the allegations contained in paragraph 18 of the Objection and therefore deny the allegations in paragraph 18.

19.    Claimants have insufficient information to admit or deny the allegations contained in paragraph 19 of the Objection and therefore deny the allegations in paragraph 19.

20.    Claimants have insufficient information to admit or deny the allegations contained in paragraph 20 of the Objection and therefore deny the allegations in paragraph 20.

21.    Claimants object to the relief requested by Garrison in paragraph 21 as to claim number 2.

22.     Claimants deny the allegations contained in last paragraph of the Objection.

WHEREFORE, based upon the foregoing, Claimants request the Court deny the Trustee's Omnibus Objection to Proof of Claim for Claim Number 2 filed by Claimants, and for such other relief as to which Claimants are entitled.

DATED: September 7, 2017

139

Case 4:17-cv-03567 Document 7-1 Filed on 05/25/18 in TXSD Page 56 of 203
Case 4:17-cv-03567 Document 6 Filed in TXSD on 04/25/18 Page 39 of 373

Respectfully submitted,

*/s/ Reese W. Baker*

_____

Reese W. Baker
TX Bar No. 01587700
5151 Katy Freeway, Ste. 200
Houston, TX 77007
Phone: 713-869-9200
Fax: 713-869-9100
Attorney for Don and Kay Green

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Don Green and Kay Green to Response to Trustee's Omnibus Objection to Proof of Claim filed by Partners of Garrison Municipal Partners, L.P. was served on September 7, 2017, to the parties listed below as by electronic delivery of the clerk of Bankruptcy Court:

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV

Christopher Adams on behalf of Debtor Garrison Municipal Partners, LP
cadams@oakllp.com , teaston@okinadams.com

Charles Rubio on behalf of Rodney D. Tow, Chapter 7 Trustee
crubio@diamondmccarthy.com

Rodney D Tow, Chapter 7 Trustee
rtow@rtowtrustee.com

/s/ Reese W. Baker
Reese W. Baker

## VERIFICATION OF TRANSMITTAL TO U.S. TRUSTEE

The undersigned, an attorney, under penalties of perjury, verifies that a copy of the Application to Employ Attorney was delivered to the United States Trustee, 515 Rusk, Suite 3516, Houston, Texas 77002, on September 7, 2017, by electronic delivery by the clerk of the Bankruptcy Court.

/s/ Reese W. Baker
Reese W. Baker

147
Case 4:17-cv-03567 Document 6-1 Filed on 05/25/18 in TXSD Page 58 of 203
Case 4:17-cv-03567 Document 6-1 Filed on 04/25/18 in TXSD Page 147 of 393

## In the United States Bankruptcy Court
## For the Southern District of Texas
## Houston Division

| | | |
|---|---|---|
| In re: | § | **Case No. 14-32867** |
| **Garrison Municipal Partners, LP,** | § § | |
| **Debtor** | § § | **Chapter 7** |

### DON AND KAY GREEN'S BRIEF REGARDING MANDATORY SUBORDINATION UNDER 11 U.S.C. § 510(b)

### [THIS BRIEF RELATES TO THE OBJECTION FILED BY THE CHAPTER 7 TRUSTEE AT DOCKET #252 ON JUNE 12, 2017]

Claimants Don and Kay Green (the "Greens") file this Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b) and would show the Court as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

1. Don and Kay Green are former owners of limited partnership interests in Garrison Municipal Partners, LP (the "Debtor" or the "Partnership").

2. Article 5.5 of the Limited Partnership Agreement of Garrison Municipal Partners, LP (the "Partnership Agreement"), provided the Greens with the option to voluntarily withdraw their limited partnership interest in the Debtor by means of written notice. [Claim No. 2, Ex. C, at ¶ 5.5(b).].

---

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                                      1

A-56

3.    On November 13, 2013, the Greens gave written notice to the Debtor of their intent to withdraw their limited partnership interest in the Debtor. [Claim No. 2, Ex. B.].

4.    The Greens allege that the effective date of the withdrawal of their partnership interest was no later than December 31, 2013. [Claim No. 2, Attachment Cover at ¶¶ 3-4.].

5.    The Debtor filed a voluntary petition for chapter 7 bankruptcy on May 22, 2014, well after the alleged effective date of the Greens' withdrawal of their partnership interest. [Doc. No. 1].

6.    At the time the Debtor filed its bankruptcy petition, it had not yet paid the Greens pursuant to the terms of Article 5.5 of the Partnership Agreement. The Greens filed Proof of Claim No. 2 in this bankruptcy case, asserting their claim to such amounts as a general unsecured creditor.

7.    On June 12, 2017, the chapter 7 trustee (the "Trustee") filed an Omnibus Objection to Proofs of Claim Filed by Limited Partners of Garrison Municipal Partners, L.P. (the "Objection"). [Doc. No. 252].

8.    The Objection alleges that amounts asserted by former limited partners of the Debtor who, like the Greens, withdrew their partnership interests pursuant to Article 5.5 of the Partnership Agreement prior to the Debtor's bankruptcy

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)          2

A-57

149

Case 4:17-cv-03567 Document 6-1 Filed on 05/25/18 in TXSD Page 60 of 203
Case 4:17-cv-03567 Document 6-1 Filed on 04/25/18 Page 149 of 373

filing are subject to mandatory subordination under 11 U.S.C. § 510(b). For the reasons stated below, the Greens' Proof of Claim No. 2 is not subject to mandatory subordination under 11 U.S.C. § 510(b).[1]

ARGUMENT

9.     Although Section 510(b)[2] requires the subordination of certain claims for "damages arising from the purchase or sale" of a security of the debtor, the legislative history of Section 510(b), the policy objectives underlying it, and the case law interpreting it all make clear that the effect and intent of this section is not "once an equity holder, always an equity holder." Rather, Section 510(b) applies to claims that seek to recover an investor's capital contributions to the debtor irrespective of any loss that may have occurred during the period of time that the investor held its equity stake. The Greens' claim is not such a claim and is substantively equivalent to a claim for redemption of their equity interest. Therefore, it is not and should not be subject to mandatory subordination under Section 510(b).

## I.     <u>Applicable Law</u>

### A.     **Section 510(b) Generally**

10.     Section 510(b) provides:

For the purpose of distribution under this title, a claim arising from re-

---

[1]     This Brief only addresses the claim of the Greens. Other claims may or may not have the same or similar merits.

[2]     All references to "Section" herein refer to Title 11 of the United States Code unless otherwise specified.

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                          3

A-58

> scission of a purchase or sale of a security of the debtor or of an affili-
> ate of the debtor, for damages arising from the purchase or sale of
> such a security, or for reimbursement or contribution allowed under
> section 502 on account of such a claim, shall be subordinated to all
> claims or interests that are senior to or equal the claim or interest rep-
> resented by such security, except that if such security is common
> stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b). As such, Section 510(b) treats certain categories of claims as

equity when such claims would otherwise, technically, be debt. These claims are

subjected to mandatory subordination under Section 510(b).

11.     There are three categories of claims subject to mandatory subordina-

tion under Section 510(b):

> (1) a claim arising from rescission of a purchase or sale of a security
> of the debtor (the rescission category); (2) a claim for damages arising
> from the purchase or sale of a security of the debtor (the damages cat-
> egory); and (3) a claim for reimbursement or contribution allowed un-
> der 11 U.S.C. § 502 on account of either (1) or (2).

*SeaQuest Diving, L.P. v. S&J Diving, Inc. (In re SeaQuest Diving, L.P.),* 579 F.3d

411, 418 (5th Cir. 2009). The Trustee did not specify which of the above categories

he alleges the Greens' claim belongs to, stating only that claims filed "on account

of" equity interests are subject to mandatory subordination under Section 510(b).

[Doc. No. 252, Objection ¶ 11]. However, the Greens have not sought reimburse-

ment or contribution under Section 502. Furthermore, because the Greens' with-

drawal of their partnership interest does not seek to undo their purchase of the

partnership interest, restoring the *status quo ante* as if the purchase had never been

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    4

A-59

Case 4:17-cv-03567 Document 6-1 Filed on 04/25/18 Page 151 of 373

made, their claim is not a claim for rescission. *See SeaQuest*, 579 F.3d at 419 (discussing the meaning of "rescission"). Therefore, Trustee's allegation must be that the Greens' claim is one for "damages arising from the purchase or sale" of a security of the Debtor.

12.    Courts have identified two areas of ambiguity in the language of Section 510(b) requiring subordination of claims for "damages arising from the purchase or sale of" a security of the debtor: (1) the meaning of "damages"; and (2) the meaning of "arising from the purchase or sale of a security." *E.g. SeaQuest*, 579 F.3d at 421 ("[The circuit courts] also agree that the term 'arising from' is ambiguous, so resort to the legislative history is necessary."). *See also Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 153-54 (5th Cir. 2015)(discussing the concept of "damages" for purposes of Section 510(b)); *In re Blondheim Real Estate, Inc.*, 91 B.R. 639, 640-41 (Bankr. D.N.H. 1988)(same); *In re Wyeth Co.*, 134 B.R. 920, 921 (Bankr. W.D. Mo. 1991)(same). Because of these ambiguities, the case law interpreting whether or not particular claims belong to the damages category of claims subject to mandatory subordination relies heavily on the legislative history and policy objectives underlying this section.

### B.    The Legislative History and Policy Rationales Underlying Section 510(b)

13.    Congress enacted Section 510(b) "as a result of the thorny question which had caused conflicts in the courts as to whether an equity security-holder alleging fraud in the purchase of the security could share on the resulting fraud claim on an equal basis with general unsecured creditors—as opposed to the inferior position of equity holders." *Blondheim*, 91 B.R. at 640. Congress chose to allocate the risk of such fraud or illegality to the purchaser of the equity interest rather than to require general unsecured creditors to share equally in that risk. *Wyeth*, 134 B.R. at 921. Section 510(b) thus implements Congress's reallocation of these risks.

14.    Congress's reason for allocating these risks to the investor (*i.e.*, the holder of the equity interest)—who is essentially innocent, having been defrauded by the debtor—is based on two corresponding policy rationales. First, the investor bargained for an equity position in the debtor. As such, the investor is entitled to a potentially unlimited share of future growth, but in exchange for the risk of losing his capital investment. In comparison, creditors bargain only for the repayment of a fixed debt. Therefore, they should be subject to less risk. Second, the investors' risk of the loss of their investments creates an "equity cushion" that creditors rely on when they choose to extend credit to the enterprise. *SeaQuest*, 579 F.3d at 420. Because these two policy rationales for subordination were first articulated by Pro-

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                6

A-61

fessors John J. Slain and Homer Kripke, this Brief will refer to them as the Slain/Kripke rationales.

15.    Although the legislative history of Section 510(b) indicates that Congress was focused on allocating primarily the risk of fraud or illegality in the purchase or sale of equity interests, many circuit courts, including the Fifth Circuit, have held that nothing suggests that Congress's concerns were limited to such risks. *E.g. SeaQuest*, 579 F.3d at 420-21. Rather, "Congress's larger concern was the effort of disaffected stockholders to recapture their investments from the debtors, regardless of the exact nature of their claims." *Id.* at 421. Therefore, the meanings of "damages" and "arising from" the purchase or sale of a security are broad enough to include in the damages category claims predicated on post-issuance conduct of the debtor, for example. *E.g. Templeton*, 785 F.3d at 154. Nevertheless, "there must be some nexus or causal relationship between the claim and the sale" in order for a claim to belong to the damages category of claims subject to mandatory subordination under Section 510(b). *Id.* at 155.

16.    Whether a sufficient nexus or causal relationship between a claim and the purchase or sale of the associated equity interest exists to subject the claim to mandatory subordination can be determined by considering whether or not the Slain/Kripke rationales for subordination apply to the claim. *See, e.g., Nisselson v.*

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    7

A-62

*Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 389 (Bankr. S.D.N.Y. 2007)("the critical issues in determining whether subordination is required under §510(b) are (i) whether the party to be subordinated took on the risk and return expectations of a shareholder, rather than a creditor; and (ii) whether that party seeks recover a contribution to the equity pool presumably relied upon by creditors in deciding whether to extend credit to the debtor.")(quotations omitted); *Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 256 (2d Cir. 2006)("we conform our interpretation of the statute to require subordination here only if [the claimant] (1) took on the risk and return expectations of a shareholder rather than a creditor, or (2) seeks to recover a contribution to the equity pool presumably relied upon by creditors in deciding whether to extend creditor to the debtor."). The case law interpreting Section 510(b), in particular the two major Fifth Circuit decisions on this issue, can be understood in terms of the Slain/Kripke rationales. To the extent that claims implicate the Slain/Kripke rationales, they are claims for "damages" that "arise from" from the purchase or sale of a security of the debtor.

### C.   Fifth Circuit Case Law Interpreting Section 510(b)

17.   The two major Fifth Circuit decisions interpreting Section 510(b) are *SeaQuest* and *Templeton*. By comparing the types of claims discussed in these decisions, it can be shown that claims "for damages arising from the purchase or

---

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                8

A-63

sale" of a security of the debtor are those claims seeking to recover an investor's capital contributions to the debtor irrespective of losses that occurred during the period of investment, but are not claims (such as pre-petition redemption claims) that are subject to such losses.

a.    *In re SeaQuest Diving, L.P.*: Section 510(b) Subordinates Rescission Claims, But Not Redemption Claims

18.    *SeaQuest* concerned whether or not Section 510(b) required subordination of a claim based on the claimant's settlement agreement with the debtor rescinding the claimant's equity investment in the debtor. Although the court found that the claim at issue was subject to mandatory subordination as a rescission of the claimant's investment, the decision is relevant to interpretation of the damages category of Section 510(b) claims because the Fifth Circuit opined that "[t]he scope of the rescission and damages categories should be construed consistently." Indeed, the likely purpose of the damages category of Section 510(b) claims is to capture those claims that are not technically rescission claims, but that have the effect of rescission in substance. *See Montgomery Ward Holding Corp. v. Schoeberl (In re Montgomery Ward Holding Corp.)*, 272 B.R. 836, 842 (Bankr. D. Del. 2001)("[The term 'damages'] also serves to include claims by investors who technically do not have a claim for rescission but who still have a securities fraud claim.").

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)    9

A-64

19.    In *SeaQuest*, the Fifth Circuit held that the claimant's claim for rescission was subject to mandatory subordination. It arrived at this result by comparing the rescission claim to a claim for damages arising from the purchase or sale of a security and considering whether the Slain/Kripke rationales applied equally to the rescission claim as to claims for securities fraud. *SeaQuest*, 579 F.3d at 422. The Fifth Circuit found that the Slain/Kripke rationales did apply equally to the two types of claims because in both types, (1) the claimant has initially bargained for the risk and return expectations of investors whereas the debtor's unsecured creditors have not and (2) the debtor's unsecured creditors relied on the claimant's contributions to the "equity cushion." *Id.* at 422. In addition, speaking generally, the Fifth Circuit stated that "the most important policy rationale" is "the fact that the claims…seek to recover a portion of [the] claimants' equity investment." *Id.*

20.    What the Fifth Circuit means by claims "seeking to recover an equity investment" are those claims seeking the return of the claimant's equity investment *without respect to any loss in the value of the equity investment between the time of the purchase and the time that the claim accrues*. That this is the meaning of "seeking to recover an equity investment" is apparent from the Fifth Circuit's comparison of rescission claims to redemption claims. While rescission claims are subject to mandatory subordination under Section 510(b), redemption claims are

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                 10

A-65

not. *SeaQuest*, 579 F.3d at 422-23. *See also, Montgomery Ward*, 272 B.R. 836 (claim based on a promissory note issued by a debtor to repurchase its own stock is not subject to mandatory subordination); *Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs. (In re Mobile Tool Int'l, Inc.)*, 306 B.R. 778 (Bankr. D. Del. 2004)(same); *MarketXT*, 361 B.R. 369 (claim based on promissory notes issued in exchange for convertible preferred stock is not subject to mandatory subordination); *Burtch v. Gannon (In re Cybersight, LLC)*, 2004 U.S. Dist. LEXIS 24426, 2004 WL 2713098 (D. Del. Nov. 17, 2004)(claim based on pre-petition judgment for debtor's breach of an agreement to purchase the claimant's LLC membership interest in the debtor is not subject to mandatory subordination).

21.     Because redemption claims are not subject to mandatory subordination under Section 510(b), it is clear that claims "seeking to recover an equity investment" is not intended to refer to *any* claim that "at some time in the past…had its genesis in a stock interest." *MarketXT*, 361 B.R. at 389-90 (holding that although the claimant had initially taken an equity risk, by the time of the bankruptcy filing, it had become a creditor and that claims are analyzed as of the date of the filing of a petition, not as of a hypothetical date in the past.). In the same case that the Fifth Circuit identified "seeking to recover an equity investment" as the most important policy rationale underlying mandatory subordination, it also recognized

that "[b]y redeeming equity for debt before the bankruptcy filing, the claimant can convert the risk/return position of an equity investor to a fixed, pre-petition debt due and owing the claimant as a creditor." *SeaQuest*, 579 F.3d at 422-23. As such, the converted claim would no longer be subject to mandatory subordination under Section 510(b). *Id.* (citing cases). Therefore, although redemption of an equity interest could theoretically, in a general sense, be considered the recovery of an equity investment, it is clear that that is not the meaning intended by the Fifth Circuit. For purposes of Section 510(b), redemption converts an equity interest into debt in a way that rescission does not.

22.     The reason that redemption claims convert an equity interest into debt in a way that rescission claims do not for purposes of mandatory subordination is because the amount of a redemption claim incorporates the risk of loss assumed by an equity investor and relied upon by creditors whereas a rescission claim does not. Rescission seeks "to place the parties in the position they would have occupied if no such contract had ever been made" and the "measure of damage is the return of the consideration paid, together with such further damage or expense as may have been reasonably incurred by the party wronged on account of the contract." *SeaQuest*, 579 F.3d at 419. In contrast, redemption seeks only the value of the equity interest as of the effective date of the redemption.

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)          12

A-67

23.     In terms of the Slain/Kripke rationales, an investor seeking to rescind its investment disclaims all of the risk it assumed by choosing to invest in the debtor: the amount of the investor's rescission claim will be the amount invested in the debtor even if the value of the equity interest has declined between the time the investor purchased it and the time that the investor rescinds it. Because a rescission claim returns the investor's capital contribution without regard to any loss that occurred during the period of time between purchase of the equity interest and rescission of the interest, the investor's capital contribution has served no function as an equity cushion, contrary to the reasonable expectation of the debtor's creditors. In contrast, an investor that has redeemed its investment pre-petition has not disclaimed the risk that it initially assumed by choosing to invest in the debtor. The amount of the investor's redemption claim will be reduced to the extent that the value of its equity interest has declined between the time the investor purchased it and the time that the investor redeems it. Because the amount of a redemption claim incorporates the potential loss of the investor's capital contribution during the period of time between purchase of the equity interest and redemption of the interest, the investor's capital contribution has served its function as an equity cushion and the return of any such contribution remaining does not frustrate the reasonable expectations of the debtor's creditors.

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                                    13

A-68

24.     A numerical example demonstrates that subordination of rescission claims effectuates Congress's decision to allocate the risk of the debtor's fraud or illegality in the purchase or sale of security interests to the purchaser, whereas subordination of redemption claims does not. Suppose the debtor fraudulently induced an investor to buy an equity interest for $100, even though the interest was really worth only $25. The loss resulting from the debtor's fraud is therefore $75. If the investor subsequently rescinds its investment pre-petition, it will be entitled to the full $100 it invested, despite the fraud loss. Since the rescission "undoes" the purchase of the equity interest, on the date of the bankruptcy filing, the investor no longer holds an equity interest and its $100 claim against the debtor (including the $75 in fraud loss) is a general unsecured debt. But for mandatory subordination under Section 510(b), the amount of the investor's claim representing the $75 fraud loss is asserted on an equal footing with the debtor's other unsecured creditors, who thereby end up bearing the loss resulting from the debtor's fraud. By subordinating the rescission claim, Section 510(b) shifts the $75 of loss to the debtor's equity holders.

25.     In contrast, if the investor redeems its investment pre-petition, it will be entitled only to the $25 that the equity interest was worth on the effective date of the redemption. As with rescission, the investor no longer holds an equity inter-

---

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    14

A-69

est on the date of the bankruptcy filing and its $25 claim against the debtor is a general unsecured debt. However, it is clear that the investor has *already* borne the $75 loss resulting from the debtor's fraud. The loss is reflected in the already diminished value of the investor's claim. Therefore, there is no remaining fraud loss to shift from the debtor's unsecured creditors to its equity holders.

26.    This distinction between the rescission and the redemption of an investment holds true whether the decline in the value of the equity interest is due to fraud in the investor's initial purchase of the security, the debtor's post-issuance illegal or fraudulent conduct, or even the general failure of the debtor's business absent bad conduct. Regardless of the reason for the decline in value of the equity interest while held by the investor, rescission insulates the investor from the decline whereas redemption does not.

      b.     *Templeton v. O'Cheskey (In re Am. Hous. Found.)*: Section 510(b) Subordinates Guaranty Claims

27.    The Fifth Circuit's decision in *Templeton* follows its decision in *SeaQuest* and likewise can be understood in terms of the Slain/Kripke rationales and on the fundamental basis that the claim asserted in the case sought, in substance, to disclaim the claimant's initial assumption of risk and insulate the claimant from the decline in the investment's value during the period of time held by the claimant. In *Templeton*, the investor had purchased limited partnership interests in

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)     15

A-70

a number of limited partnerships affiliated with the debtor. At the time that the claimant purchased these interests, the debtor guaranteed repayment of the claimant's investment in the affiliated partnerships. When the limited partnerships failed and the debtor filed bankruptcy, the claimant asserted, as a general unsecured claim against the debtor, his claim under the debtor's contractual guaranties.[3] The Fifth Circuit held that this claim was subject to mandatory subordination under Section 510(b).

28.     Unlike in *SeaQuest*, the Fifth Circuit in *Templeton* directly considered whether the claimant's guaranty claim was within the damages category of Section 510(b) claims, *i.e.*, whether it was a claim for damages arising from the purchase or sale of a security of the debtor. Nevertheless, it followed the reasoning in *SeaQuest*, noting again that "'[t]he most important policy rationale' behind Section 510(b) is that claims 'seek[ing] to recover a portion of claimants' equity investment[s]' should be subordinated." *Templeton*, 785 F.3d at 153 (quoting *SeaQuest*, 579 F.3d at 421). For the reasons explained above, "claims seeking to recover a portion of claimants' equity investments" do not include all claims that have their ultimate genesis in an equity interest and specifically do not include claims for the pre-petition redemption of an equity interest. Rather, "claims seeking to recover a

---

[3] In the following analysis, the *Templeton* debtor and its affiliated limited partnerships are treated as if they were one entity. *See Templeton*, 785 F.3d at 153 ("claims arising from equity investments in a debtor's affiliate should be treated the same as equity investments in the debtor itself.").

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                                    16

A-71

portion of claimants' equity investments" are those that seek to insulate the investor from the decline in value of its equity interest during the period of time held by the investor.

29.     The holding in *Templeton* supports this understanding of "claims seeking to recover a portion of claimants' equity investments." Although the court analyzed both whether the guaranty claim was a claim for "damages" within the meaning of Section 510(b) and whether it was a claim "arising from" the purchase or sale of a security, its conclusions on both issues were made on essentially the same basis: by suing for breach of the guaranties, the claimant was effectively attempting to recoup his capital contributions to the limited partnerships. The court concluded that the guaranty claims were claims for "damages" because they were the substantive equivalent of suing directly for repayment of the claimant's equity investments. *Templeton*, 785 F.3d at 154. The court concluded that the guaranty claims "arose from" the purchase or sale of the claimant's equity investments in part because the claimant was "effectively attempting to recoup his equity investments in the LPs through his claims." *Id.* at 155.

30.     The guaranty claims subordinated in *Templeton* are like the rescission claim subordinated in *SeaQuest* because, like the rescission claim, they sought to make the investor whole regardless of any decline in the value of the equity inter-

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                                    17

A-72

est that occurred while in the possession of the investor. Because the contractual guaranties in *Templeton* would have repaid to the claimant the amount of his capital contributions to the limited partnerships rather than the value of the partnership interests on the date of asserting the claims, the guaranty claims were the substantive equivalent of a rescission claim, which also seeks to return to the claimant the amount of his capital contributions rather than the actual value of the equity investment at the time of assertion. The guaranty claims in *Templeton* therefore implicated the Slain/Kripke rationales to the same extent as the rescission claim in *SeaQuest*. By suing on the guaranties for the amount of his capital contributions, the claimant in *Templeton* sought to avoid the loss in value of the limited partnership interests that had occurred during the time that he held them, thereby disclaiming the risks that he had initially assumed as an equity holder in exchange for the potential of unlimited profits. Likewise, because the *Templeton* claimant's capital contributions would have been returned to him under the guaranty claims in full and without regard to loss in the value of the limited partnership interests, his capital contributions would not have served any function as an equity cushion, contrary to the reasonable expectation of the debtor's creditors. Because the guaranty claims in *Templeton* are, in all relevant respects, the substantive equivalent of the rescission claim in *SeaQuest*, the holding in *Templeton* does not in any way con-

tradict the distinction drawn in *SeaQuest* between rescission claims and redemption claims for purposes of mandatory subordination under Section 510(b).

## II.        Application of Section 510(b) to the Greens' Claim

31.      The Greens' claim is essentially a claim for redemption and therefore should not be subject to mandatory subordination under Section 510(b). In *SeaQuest*, the Fifth Circuit recognized that a claimant could convert equity to debt pre-petition by redeeming the equity and thereby "convert[ing] from the risk/return position of an equity investor to a fixed, pre-petition debt due and owing the claimant as a creditor." *SeaQuest*, 579 F.3d at 422-23. This is precisely what the withdrawal provision of Article 5.5 of the Partnership Agreement (the "Withdrawal Provision") does.

32.      Subsection (k) of the Withdrawal Provision provides that "[a] withdrawing Partner does not share in the income, gains and losses of the Partnership or have any other rights as a Partner after the effective date of its withdrawal, except as provided in Section 3.8." [Ex. A., Partnership Agreement ¶ 5.5(k)]. Therefore, just as a pre-petition redemption contemplated by the Fifth Circuit in *SeaQuest* converts the risk/return position of an equity investor to a fixed, pre-petition debt due and owing the claimant as a creditor, the Greens' pre-petition withdrawal of their partnership interest pursuant to the Withdrawal Provision con-

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                          19

A-74

verted their risk/return position—which  formerly entitled them to share in the in-
come and gains of the Partnership, but also required them to share in its losses—
into a pre-petition debt fixed at the value of their Limited Partnership Interest on
the effective date of the withdrawal.

33.    Although the Debtor did not issue a promissory note to the Greens for
the value of their Limited Partnership Interest, the lack of a promissory note does
not change the nature of the Greens' claim. In *Cybersight*, which the Fifth Circuit
cited in support of its distinction between redemption and rescission claims, the
claimant held a membership interest in the debtor and sued to enforce a provision
in the LLC agreement requiring the debtor to purchase the claimant's membership
interest at fair market value. *Cybersight*, 2004 U.S. Dist. LEXIS 24426, 2004 WL
2713098. The claimant obtained a pre-petition judgment against the debtor for the
amount of its claim. The court held that Section 510(b) did not require subordina-
tion because "there was 'no material difference between the exchange of a promis-
sory note for equity interest' and the judgment that the claimant received. 'In both
instances, the claimants, pre-petition, were no longer able to participate in the ben-
efits and risks associated with being equity holders of the debtors.'" *SeaQuest*, 579
F.3d at 423 (quoting *Cybersight*, 2004 U.S. Dist. LEXIS 24426 at *10-11). Like-
wise, upon the pre-petition effective date of their withdrawal, pursuant to subsec-

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    20

A-75

tion (k) of the Withdrawal Provision, the Greens became unable to participate in the benefits and risks associated with being a limited partner of the Debtor.

34.    Because the Greens' claim is essentially a claim for redemption, it does not qualify as a "claim seeking to recover an equity investment" within the meaning of *SeaQuest* and *Templeton*; nor does it implicate the Slain/Kripke rationales in the way that the claims subordinated in those cases did. Both the rescission claim in *SeaQuest* and the guaranty claims in *Templeton* sought to recover the claimants' capital contributions to the debtor without respect to any loss in value of the equity investment between the time that the claimant purchased the equity interest and the time that the claimants asserted their claims. In contrast, the amount owed to the Greens by virtue of their withdrawal under the Withdrawal Provision *was* subject to any loss in the value of their Limited Partnership Interest occurring between the time that they purchased their Limited Partnership Interest and the effective date of their withdrawal. For example, during 2013, the value of the Greens' Limited Partnership Interest declined by $46,893.85. This loss is reflected in the amount of the Greens' claim. Had the Greens withdrawn their Limited Partnership Interest with an effective date of January 1, 2013, they would have had a claim for $2,016,191.50. However, because the effective date of their withdrawal was December 31, 2013, their claim is for $1,969,297.65, thereby absorbing the

$46,893.85 loss. By incorporating the losses that occurred while the Greens held their Limited Partnership Interest, the Greens' withdrawal claim—like the redemption claims discussed in *SeaQuest* and unlike the rescission and guaranty claims subordinated in *SeaQuest* and *Templeton*—does not seek to disclaim the risk that the Greens initially assumed in exchange for the possibility of unlimited profits: while the Greens remained equity investors and until they converted their equity position to a fixed debt, their investment was fully and actually at risk and available as an equity cushion for the Debtor's unsecured creditors. Therefore, the Greens' withdrawal claim fails to implicate the Slain/Kripke rationales in the way that rescission and guaranty claims do.

35.    In *Templeton*, the Fifth Circuit considered the claimant's guaranty claims to be claims for "damages" within the meaning of Section 510(b) because the claims were "functionally seek[ing] to 'recover a portion of the claimants' equity investment[s].'" *Templeton*, 785 F.3d at 154 (quoting *SeaQuest*, 579 F.3d at 421). For the reasons explained above, the Greens' withdrawal claim does not seek to recover a portion of their equity investment, functionally or otherwise, as that concept is meant in *SeaQuest* and *Templeton*. Therefore, the Greens' claim is not a claim for "damages" as that term has been construed by the Fifth Circuit. Additionally, whether a claim seeks to recover a portion of the claimants' equity in-

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                                    22

A-77

vestment is the most important policy rationale to consider in determining whether a claim "arises from" the purchase or sale of a security. *SeaQuest*, 579 F.3d at 421. Again, the Greens' withdrawal claim does not seek to recover a portion of their equity investment as that concept is meant in *SeaQuest* and *Templeton*. Therefore, their claim does not "arise from" the purchase or sale of their Limited Partnership Interest. Because the Greens' withdrawal claim neither is a claim for "damages" nor does it "arise from" their purchase of the Limited Partnership Interest, it is not a claim that falls within the damages category of Section 510(b) claims subject to mandatory subordination.

## CONCLUSION

The legislative history, policy rationales, and case law interpreting Section 510(b) demonstrate that the purpose of mandatory subordination under this section is to ensure that, to the extent an investor bargains for the potential rewards of an equity stake in an enterprise, the investor also bears the risk of loss of its capital contributions. This is both because the investor has voluntarily assumed this risk and because the creditors of the enterprise have relied on the investor's assumption of this risk. Where an investor seeks to recover its capital contributions without regard to loss that occurred during the period of investment—as when the investor asserts a claim for rescission or under a guaranty—the assumption of risk and possibility for reward become uncoupled. Such claims will be asserted only to recover

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                                        23

A-78

a loss. It is therefore appropriate to subordinate the investor's claim under Section 510(b). However, where an investor seeks to recover the value of its equity interest subject to loss that occurred during the period of investment—as when the investor asserts a claim for pre-petition redemption—the assumption of risk and opportunity for reward have not become uncoupled and there is no cause for subordination under Section 510(b). By withdrawing their Limited Partnership Interest prior to the filing of the Debtor's bankruptcy, the Greens redeemed their equity stake in the Debtor, subject to any loss that occurred during the period of investment. Their claim is consistent with an assumption of risk that is co-extensive with their opportunity for profit: it reflects both the profits and the losses that occurred prior to their withdrawal. Therefore, there is no cause to subordinate the Greens' claim under Section 510(b).

Dated: September 14, 2017

Respectfully submitted,

*/s/ Reese Baker*
Reese Baker
TX Bar No. 01587700
5151 Katy Frwy, Ste. 200
Houston, Texas 77007
(713) 869-9200
(713) 869-9100 Fax
ATTORNEY FOR THE GREENS

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    24

A-79

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b) was filed electronically and served upon all parties receiving electronic notice from the Court's ECF notification system in the above-referenced bankruptcy case.


*/s/ Reese W. Baker*
Reese W. Baker

---

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    25

A-80

Case 4:17-cv-03567 Document 6-1 Filed on 05/25/18 in TXSD Page 83 of 203
194
Case 4:17-cv-03567 Document 6-1 Filed on 04/25/18 Page 94 of 373

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | | |
|---|---|---|---|
| In re: | § | | |
| | § | | |
| **GARRISON MUNICIPAL PARTNERS, LP** | § | | **Case No. 14-32867** |
| | § | | **(Chapter 7)** |
| **DEBTOR.** | § | | |
| | § | | |

**CHAPTER 7 TRUSTEE'S REPLY TO THE GREEN'S**
**RESPONSE TO OMNIBUS OBJECTION**

TO THE HONORABLE KAREN BROWN, UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, the chapter 7 trustee (the "Trustee") for the estate of Garrison Municipal Partners L.P. (the "Partnership" or "Debtor") respectfully submits this Reply to the Green's Response to the Omnibus Objection [Docket No. 252].

**Procedural Background**

1. On June 12, 2017, the Trustee filed the Omnibus Objection to Proofs of Claim Filed by Limited Partners of Garrison Municipal Partners, L.P. (the "Omnibus Objection"), seeking to subordinate and reclassify the claims of the Limited Partners of the Limited Partnership (the "Claimants") as equity interests pursuant to Section 510(b) of the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code").

2. The Claimants became limited partners in the Debtor by investing in the Debtor through various subscription agreements. Don Green and Kay Green (the "Greens") were Limited Partners in the Partnership.

3. On May 22, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

1

4.     The Trustee requests that the Court take judicial notice of the Green's proof of claim against the Debtor, filed on this Court's docket on August 20, 2014, in the amount of ONE MILLION NINE HUNDRED SIXTY-NINE THOUSAND TWO HUNDRED NINETY-SEVEN dollars and SIXTY-FIVE cents ($1,969,297.65) (the "Claim"). [Claim No. 2][1].    A copy of the Claim is attached hereto as Exhibit A.

5.     Based on the Trustee's review, the Trustee determined that the claims of the Claimants, including the Green's Claim, should be reclassified as equity interests pursuant to Section 510(b) of the Bankruptcy Code and filed the Omnibus Objection on June 12, 2017 in support thereof.

6.     On September 7, 2017, the Court held a hearing on the Omnibus Objection (the "Hearing").

7.     On September 7, 2017, the date of the Hearing, the Greens filed an untimely response to the Omnibus Objection.  *See* Docket No. 252.

8.     At the Hearing, the Trustee objected to the untimeliness of the Green's objection, which the Court overruled.

9.     At the Hearing, the Trustee argued that the claims of the Claimants should be subject to mandatory subordination pursuant to Section 510(b) of the Code.

10.     The Court requested briefing from the Greens and the Trustee in support of their respective positions.

11.     On September 14, 2017, the Greens filed *Don and Kay Green's Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)* (the "Green's Brief"). [Docket No. 274].

---

[1]     As an exhibit to Claim No. 2, the Greens attached an excerpt from the Limited Partnership's Partnership Agreement.  The Trustee has attached a complete copy of the Agreement in accordance with Federal Rule of Evidence 106 with Exhibit A hereto.

A-82

12.     The Trustee files this *Reply to the Green's Response to the Omnibus Objection* (the "<u>Reply</u>").

### **Relief Requested**

13.     The Trustee seeks entry of proposed findings of facts and conclusions of law, substantially in the form attached hereto (the "<u>Order</u>"), reclassifying the Claims of the Claimants as equity claims, eliminating duplicative claims, and allowing the equity claims of the Claimants in amounts reflecting each individual Claimant's cash and non-cash transactions with the Debtor (the "<u>Allowed Claim Amount</u>").

### **Factual Background**[2]

14.     The Greens are former owners of limited partnership interests in the Debtor.

15.     Article 5.5 of the Limited Partnership Agreement of the Debtor (the "<u>Agreement</u>"), provides the Greens with the opportunity to voluntarily withdraw their limited partnership interest in the Debtor by means of written notice. [Claim No. 2, Ex. C, at ¶ 5.5(b)].

16.     Between September 27, 2012 and November 22, 2013, at least seven (7) other Claimants gave written notice to the Debtor of their intent to withdraw from the Partnership (attached hereto as <u>Exhibit B</u>).

17.     On November 13, 2013, the Greens gave written notice to the Debtor of their intent to withdraw their limited partnership interest in the Debtor.  [Claim No. 2, Ex. B].

18.     The Greens allege that the effective date of the withdrawal of their partnership interest was no later than December 31, 2013.  [Claim No. 2, Attachment Cover, at ¶¶ 3-4].

---

[2]     Pursuant to the Court's request that the parties agree to stipulated facts, the Trustee is stipulating to the authenticity and admissibility of the documents attached to the Claim and the facts as set forth in the Green's Brief which facts are restated in this Reply.

197

Case 4:17-cv-03567   Document 6-1   Filed on 05/25/18 in TXSD   Page 96 of 203
Case 4:17-cv-03567   Document 6-1   Filed on 04/25/18   Page 96 of 203

19.     The Debtor filed a voluntary petition for chapter 7 bankruptcy on the Petition Date, well after the alleged effective date of the Green's withdrawal of their partnership interest. [Docket No. 1].

20.     At the time the Debtor filed its bankruptcy petition, it had not yet paid the Greens pursuant to Article 5.5 of the Agreement.  The Greens filed the Claim in this bankruptcy case, asserting their claim such amounts as a general unsecured creditor.

## Memorandum of Law

21.     The Green's Brief draws tenuous analogies between Fifth Circuit case law to the matter at hand in an attempt to show that the Claim is a redemption claim outside the scope of Section 510(b).  However, the issue before the Court is clear-cut and the Green's Claim falls squarely within the mandatory subordination provisions of the Code.  Section 510(b) of the Bankruptcy Code requires subordination of claims for damages arising from the purchase of securities.  The Green's Claim is for damages for breach of the Agreement, which arises from their purchase of an ownership interest in the Debtor.  Additionally, the body of Section 510(b) case law holds that subordination of the Green's Claim effectuates the great principles of bankruptcy law and the legislative policy of Section 510(b), which is that creditors should be paid ahead of equity holders.  For the reasons set forth below, the Court should re-characterize and subordinate the Claim to the level of equity.

**A.     Section 510(b) Requires Mandatory Subordination of the Green's Claim**

22.     Section 510(b) of the Code provides that:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase of sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

4

23.     The Green's Claim falls squarely within the scope of 510(b) as intended by Congress and as interpreted by circuit courts, including the Fifth Circuit, for two reasons.  First, the Claim is a claim for breach of contract damages arising from the Debtor's breach of the Agreement.  Second, the Claim arises from the purchase and sale of a security interest in the Debtor.

1.     The Claim is for Damages Arising for Breach of Contract

24.     The Green's Brief makes abundantly clear that the Claim seeks damages for injuries resulting from breach of contract under the Agreement.  Green's Brief, pp. 19-20.  The Greens sought to withdraw their equity investment in the Debtor, pursuant to the voluntary withdrawal provisions of the Agreement.  *Id*.  There is no evidence that the Debtor satisfied the Green's withdrawal request, nor is there evidence that the Debtor issued the Greens a promissory note or any other debt instrument or guarantee of repayment.  Instead, the Debtor filed for bankruptcy on the Petition Date and the Greens filed the Claim.

25.     For the purposes of "damages," the majority of courts confronting subordination cases have read Section 510(b) broadly, encompassing a variety of claims, including breach of contract.  *SeaQuest Diving, L.P. v. S&J Diving, Inc. (In re SeaQuest Diving, L.P.)*, 579 F.3d 411, 421 (5th Cir. 2009)(stating that a claim arising from the purchase or sale of a security can include claims based on post-issuance breach of contract); *Official Committee of Unsecured Creditors v. Fli Deep Marine LLC (In re Deep Marine Holdings, Inc.)*, 2011 WL 160595, at *7 (Bankr. S.D. Tex. January 19, 2011)(stating that the policies underlying Section 510(b) support a broad construction of its scope); *Baroda Hill Investments, Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133, 142 (3rd. Cir. 2002)(reasoning that Section 510(b) prevents claimants from using breach of contract claims to recover the value of their equity investment in parity with general unsecured creditors); *Pensco Trust Co. v. Tristar Esperanza Properties, LLC*

5

(*In re Tristar Esperanza Properties, LLC*), 782 F.3d 492, 495 (9th Cir. 2015) (holding that for 510(b) purposes a claim that an LLC failed to pay an amount due under the operating agreement for the repurchase of membership interests was a breach of contract claim).  As noted by the Fifth Circuit, "the circuit courts agree that a claim arising from the purchase or sale of a security can include a claim predicated on post-issuance conduct — i.e., conduct after the issuance of the security — such as breach of contract."  *Templeton v. O'Cheskey (In re Am. Housing Found.)*, 785 F.3d 143, 154 (5th Cir. 2015).

26.     The Green's Claim is that the Debtor failed to pay them the amount due under the Agreement as a result of their voluntary withdrawal, which is a claim for the Debtor's breach of contract.  *See In re Tristar*, 782 F.3d at 495 (holding that for the purposes of Section 510(b), an investor's claim that an LLC failed to pay her the amount she was due under the operating agreement for the purchase of her membership interest was a breach of contract claim).

27.     The Greens have attempted to cloak their Claim as a redemption claim in order to avoid Section 510(b) mandatory subordination and to recoup their equity investment. Green's Brief, p. 19.  The Court should immediately view the Green's position with mistrust. As other courts have noted, "[w]hen a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion."  *Rombro v. Dufrayne (In re Med. Diversified, Inc.)*, 461 F.3d 251, 258 (2nd Cir. 2006).  Additionally, the Fifth Circuit is clear on this point: the fact that the Greens are "effectively attempting to recoup [their] equity investments in the [Debtor] through [the Claim] supports the application of Section 510(b) here."  *In re Am. Housing Found.*, 785 F.3d at 155; *see also In re Telegroup*,

6

281 F.3d at 142 (stating that in the 510(b) analysis, more important than the timing of actionable conduct is the fact that a claim seeks to recover a claimant's equity investment).

### 2. The Claim Arises from the Purchase of Security Interests in the Debtor

28.     In this case, it is clear that the Claim arises from the purchase of a security within the meaning of Section 510(b).[3]

29.     Recognizing that the term "arising from" is ambiguous, the Fifth Circuit and other courts have turned the legislative history of Section 510(b).  The courts have determined that "for a claim to 'arise from' the purchase or sale of a security, there must be some nexus or causal relationship between the claim and the sale."  *In re SeaQuest*, 579 F.3d at 421 (citing *In re Telegroup*, 281 F.3d at 138).  In terms of policy considerations, "the fact that the claims in the case seek to recover a portion of the claimant's equity investment is the most important policy rationale."  *Id.* (stating that when an investor seeks *pari passu* treatment with creditors, he disregards the absolute priority rule and attempts to establish a contrary principle that threatens to swallow this fundamental rule of bankruptcy).

30.     Therefore, the crucial question for the Court is to determine how the Claim arises and whether there is a causal nexus between the claim and the purchase of the security.  *See In re Tristar Experanza*, 782 F.3d at 497; *see also In re SeaQuest*, 579 F.3d at 421.

31.     This very Court has previously decided similar questions in favor of the Trustee's position.  In *In re Marine Deep Holdings*, investors brought a pre-petition suit against a company for confiscating their shares in a short-form merger, and subsequent to the bankruptcy petition, filed proofs of claim.  2011 WL 160595, at *1.  In that case, this Court was

---

[3]     There does not seem to be a dispute over the fact that the Bankruptcy Code expressly defines the term "security" to "include [an] interest of a limited partner in a limited partnership."  11 U.S.C. § 101(49)(A)(xiii).

201

Case 4:17-cv-03567   Document 6-1   Filed on 05/25/18 in TXSD   Page 201 of 293
Case 4:17-cv-03567   Document 7-1   Filed on 04/25/18 in TXSD   Page 90 of 203

confronted with deciding whether Section 510(b) includes claims that arise during the course of a claimant's ownership of a security or, instead, whether Section 510(b) only encompasses claims for damages incurred through the actual purchase or sale of a security. *Id*. at 4.

32.     This Court noted that the purpose of Section 510(b) is to "prevent disappointed shareholders from recovering their investment loss by using fraud and other securities claims to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding." *Id*. at 6 (quoting *In re Telegraph*, 281 F.3d at 142). The Court then stated that "there is no reason to use the time in which security-holders' claims arise as a basis for treating security-holders' claims differently in a bankruptcy proceeding." *Id.* (observing that the purpose of Section 510(b) is to prevent shareholders from receiving equal treatment with unsecured creditors); *see also Am. Broadcasting Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823, 829 (9th Cir. 2000)(stating that nothing in Section 510(b) requires a subordinated claimant to be a shareholder). Based on this reasoning and the policy purposes of Section 510(b), the Court held that the investor's claims were causally linked to their status as shareholders and that mandatory subordination was required. *Id*. at 7.

33.     The Ninth Circuit's holding in *In re Tristar* is also factually similar and instructive to the case at hand. In *In re Tristar*, an LLC investor exercised her right to voluntarily withdraw from the company. 782 F.3d at 494. After a dispute between the investor and the LLC regarding the valuation of the investor's interest, the investor obtained an arbitration award and state-court judgment. *Id*. The company then filed for bankruptcy and the investor filed a proof of claim, which the company sought to subordinate under Section 510(b) of the Code. *Id*. The Ninth Circuit held that the investor's claim was subject to mandatory subordination.

8

34.     The investor first argued that her claim was not for damages, but for a fixed debt. *Id*. at 495.  The Ninth Circuit disagreed, holding that the investor's claim that the company failed to pay her for the purchase of her membership in accordance with the operating agreement interest was a breach of contract damages claim.  *Id*. at 495.

35.     Next, similar to the Green's Claim, investor argued that her claim did not arise from the purchase or sale of a security because her equity claim was converted into a debt claim prior to the bankruptcy petition.  *Id*. at 496.  Observing that the investor had exercised her right to withdraw from the LLC, the Ninth Circuit nonetheless categorically disagreed with this argument.  *Id*. The court noted that although the investor did not enjoy the benefits of equity ownership on the petition date, she bargained for an equity position and thus embraced the risks of that position.  *Id*.  The Ninth Circuit reasoned that the critical question for the purposes of 510(b), as clearly shown in the statutory text, "is not whether the claim is debt or equity at the time of the petition, but rather whether the claim *arises from* the purchase or sale of a security." *Id*. 497 (emphasis in original)(noting that although the investor was a creditor on the petition date, the status of the claim on the petition date does not end the 510(b) inquiry).  Because the investor's claim arose from the failed sale of her membership interest and the LLC's breach of the operating agreement's provisions regarding repurchase of membership interests, the Ninth Circuit had "no doubt as to whether her claim for damages '[flowed] from' the purchase or sale of a security of the debtor" and upheld the subordination of the investor's claim.  *Id*. at 498.

36.     Based on this case law, it is evident that the Green's Claim arises from their purchase of an ownership interest in the Debtor.  The Green's Brief makes clear that their Claim relates directly to their purchase of equity interests in the Debtor.  Green's Brief, pp. 1-2.  The Green's Claim further arises from the failed withdrawal of their ownership interest in the

203
Case 4:17-cv-03567   Document 6-1   Filed on 05/25/18 in TXSD   Page 92 of 203
Case 4:17-cv-03567   Document 6-1   Filed on 04/25/18   Page 203 of 373

Limited Partnership, and the Debtor's breach of the Agreement regarding satisfaction of that withdrawal. Green's Brief, p. 2. This Court has previously decided that there is no reason to use the time in which the Green's Claim arose as a basis for treating them differently from any of the other Claimants. *See In re Marine Deep Holdings*, 2011 WL 160595 at *6.

37.     The Bankruptcy Court for the District of Delaware alluded to in the Green's Brief to support their position that they converted from an equity position to a creditor position are entirely inapposite in this case. Green's Brief, pp. 11-12 (citing *In re SeaQuest*, 579 F.3d at 422-23). In both *In re Montgomery Ward Holding Corp* and *In re Mobile Tool Int'l, Inc.*, the Delaware court held that a claim based on a promissory note is not subject to subordination under Section 510(b). *Montgomery Ward Holding Corp. v. Schoeberl (In re Montgomery Ward Holding Corp.)*, 272 B.R. 836, 844–45 (Bankr. D. Del. 2001); *Official Committee of Unsecured Creditors v. Am. Capital Fin. Servs., Inc. (In re Mobile Tool Int'l, Inc.)*, 306 B.R. 778, 782 (Bankr. D. Del. 2004). As stated in *In re Mobile Tool*, the fundamental concept underlying the Delaware court's decisions in those cases is that the "Defendants did exchange their stock for a debt instrument." 306 B.R at 781. The Delaware court distinguished the facts in *In re Mobile Tool* and *In re Montgomery Ward* from other 510(b) cases specifically on the basis that the other cases "involved neither a separate promissory note nor a debt instrument." *Id*.

38.     Similarly, in its discussion of *In re Montgomery Ward* and *In re Mobile Tool*, the Fifth Circuit clearly pointed out that the Delaware court's basis for holding that the equity claimant's position changed is that the claimants exchanged stock for a promissory note. *In re SeaQuest*, 579 F.3d at 423. In this case, there is simply no evidence whatsoever that the Debtor ever provided the Green's with a promissory note, debt instrument, or any other promise to repay. To the contrary, the Green's Claim arises from their failed withdrawal from the Limited

10

Partnership and the Debtor's breach of the Agreement's provisions regarding satisfaction of the Green's withdrawal.

39.     As in *In re Tristar*, the direct causal link between the Green's Claim and their ownership of an equity interest in the Debtor clearly shows that their Claim arises from the purchase of a security of the Debtor.  *See*, 782 F.3d at 498.  The Green's assertion that they are entitled to treatment as general unsecured creditors "is exactly the elevation of form over substance that Section 510(b) seeks to avoid—by subordinating claims that functionally seek to 'recover a portion of claimants' equity investment[s].'"  *In re Am. Housing Found.*, 785 F.3d at 154 (quoting *In re SeaQuest*, 579 F.3d at 421).

**B.     Subordination of the Green's Claim Effectuates the Purpose of Section 510(b)**

40.     The re-characterization and mandatory subordination of the Green's claim is consistent with Congress' goals in enacting Section 510(b) of the Code, which "serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets." *SeaQuest*, 579 F.3d at 417.

41.     Congress drew inspiration for 510(b) from an article authored by Professors John Slain and Homer Kripke in 1973 regarding the allocation of risk between investors and creditors.  *In re Deep Marine Holdings*, 2011 WL 160595 at *5.  According to Slain and Kripke, the risk of illegality in the issuance of securities should be borne by investors.  *Id*. at 6.  The basis for this premise is that "it would be improper to reallocate this risk to creditors who (1) never bargained for an equity position in the debtor and (2) extended credit to the debtor in reliance on the equity cushion provided by the investors."  *In re SeaQuest,* 579 F.3d at 420.

42.     In enacting Section 510(b), Congress intended to "prevent disappointed shareholders from recovering their investment loss by using fraud and other securities claims to

205
Case 4:17-cv-03567   Document 7-1   Filed on 05/25/18 in TXSD   Page 94 of 203
Case 4:17-cv-03567   Document 6   Filed in TXSD on 04/25/18   Page 205 of 373

bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding." *In re Deep Marine Holdings*, 2011 WL 160595 at *6.  Otherwise, investors would unfairly be given a claim to the upside if the company prospers and participation with creditors if the company fails.  *Id*.  As a result, Section 510(b) binds a claimant to their decision to take an equity stake in the debtor.  *Id*.

43.     The fact that the Greens seek to recover a portion of their equity investment is the most important policy consideration for the Court.  *Id*. at 7.  In attempting to obtain *pari passu* treatment with the Debtor's creditors, the Greens disregard the absolutely priority rule and attempt to establish a contrary principle to the fundamental rule of bankruptcy law that creditors should be paid ahead of shareholders.  *Id*.


*{Remainder of Page Intentionally Left Blank}*

206
Case 4:17-cv-03567 Document 6-1 Filed on 05/25/18 in TXSD Page 95 of 203
Case 4:17-cv-03567 Document 6-1 Filed in TXSD on 04/25/18 Page 206 of 373

WHEREFORE, the Trustee respectfully requests entry of the Order granting the relief requested herein and such other and further relief as the Court may deem proper.

DATED: September 20, 2017

Respectfully submitted,

DIAMOND MCCARTHY, LLP

*/s/ Charles M. Rubio*_____
Kyung S. Lee
State Bar No. 12128400
Charles M. Rubio
State Bar No. 24083768
Diamond McCarthy, LLP
909 Fannin Street, 15th Floor
Two Houston Center
Houston, Texas 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5195

GENERAL COUNSEL TO
RODNEY D. TOW, TRUSTEE

## CERTIFICATE OF SERVICE

I certify that on September 20, 2017, a true and correct copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties registered to receive such service; (ii) within one business day transmitted to the parties listed on the attached Service List by the method indicated; and (iii) within one business day transmitted to counsel for the Greens by fax as set forth below.

*/s/ Charles M. Rubio*_____
Charles M. Rubio

Reese Baker, Esq.
Fax: (713) 869-9100

13

Case 4:17-cv-03567 Document 6-1 Filed on 05/25/18 in TXSD Page 96 of 203
Case 4:17-cv-03567 Document 6-1 Filed in TXSD on 04/25/18 Page 208 of 373
207

Service List
Case No. 14-32867

**Debtor**

C. Monroe Garrison
Garrison Municipal Partners, LP
1707 Post Oak Blvd #163
Houston, TX 77056
*Via First Class Mail*

**Debtor's Counsel**

Christopher Adams
Okin & Adams, LLP
1113 Vine Street
Suite 201
Houston, TX 77002-1045
*Via ECF*

**Office of the US Trustee**

Christine A. March
Office of the US Trustee
515 Rusk Avenue
Suite 3516
Houston, Texas 77002-2604
*Via ECF*

**Chapter 7 Trustee**

Rodney D. Tow
Tow & Koenig PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380-1960
*Via ECF*

**Counsel for Chapter 7 Trustee**

Kyung S. Lee
Diamond McCarthy LLP
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas 77010
*Via ECF*

**Secured Creditors**

Sunny Hudson
Deutsche Bank
5021 Gate Parkway
Jacksonville, Florida 32256
*Via First Class Mail*

Thomas Dudley
Senior Vice President
Philip Dudley
Vice President
Morgan Stanley
222 Catoctin Circle SE Suite 101
Leesburg, VA 20175-3730
*Via First Class Mail*

**Unsecured Creditors**

Alvarez & Marsal
1100 Walnut Street, Suite 2970
Kansas City, MO 64106-2133
*Via First Class Mail*

BDO, USA, LLP
330 North Wabash, Suite 3200
Chicago, IL 60611-7610
*Via First Class Mail*

Colleen Deal
DLA Piper LLP
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629

Christina Ponig
DLA PIPER LLP (US)
1000 Louisiana Street, Suite 2800
Houston, Texas 77002-5005
*Via First Class Mail*

SecondMarket, Inc.
Robert O'Hare Jr.
O'Hare Parnagian LLP
82 Wall Street, Suite 300
New York, NY 10005-3686
*Via First Class Mail*

Case 4:17-cv-03567 Document 6-1 Filed on 05/25/18 in TXSD Page 97 of 203
Case 4:17-cv-03567 Document 6-1 Filed on 04/25/18 Page 208 of 373
208

Service List
Case No. 14-32867

Southwest Securities, Inc.
1201 Elm Street
Suite 3500
Dallas, TX 75270-2180
*Via First Class Mail*

**Investors**

J.P. Bryan
1331 Lamar, Suite 1075
Houston, TX 77010-3025
*Via First Class Mail*

Bryan Consolidated
1331 Lamar, Suite 1075
Houston, TX 77010-3025
*Via First Class Mail*

J.P. & Mary Jon Bryan Foundation
1331 Lamar, Suite 1075
Houston, TX 77010-3025
*Via First Class Mail*

Mary Jon Bryan
1331 Lamar, Suite 1075
Houston, TX 77010-3025
*Via First Class Mail*

Margaret Vonder Hoya
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338
*Via First Class Mail*

Margaret Vonder Hoya Trust
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338
*Via First Class Mail*

HRB Global
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338
*Via First Class Mail*

Donald J & Kay M. Green
P.O. Box 1088
Alpine, TX 79831-1088
*Via First Class Mail*

Mike Maples, Jr.
820 Ramona Street, Suite 200
Palo Alto, CA 94301-2734
*Via First Class Mail*

MJMJR, Ltd.
820 Ramona Street, Suite 200
Palo Alto, CA 94301-2734
*Via First Class Mail*

Mike Maples, Sr.
8609 Navidad Dr.
Austin, TX 78735-1468
*Via First Class Mail*

HRB Oil & Gas, Ltd.
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338
*Via First Class Mail*

Jay Steven Adelson
30 Kite Hill Lane
Mill Valley, CA 94941-1458
*Via First Class Mail*

Robert Kevin Rose
47 N 4th Place
Brooklyn, NY 11249-3104
*Via First Class Mail*

Patricia Thomas IRA
5735 Indian Circle
Houston, Texas 77057-1302
*Via First Class Mail*

Elizabeth Maples
576 Hopkins Street
Menlo Park, CA 94025
*Via First Class Mail*

209
Case 4:17-cv-03567   Document 7-1 Filed on 05/25/18 in TXSD   Page 98 of 203
Case 4:17-cv-03567   Document 6-1 Filed in TXSD on 04/25/18   Page 209 of 373

Service List
Case No. 14-32867


MVH Grandchildren's Trust
Chris Vonder Hoya, Trustee
4311 Oak Lawn Ave., Suite 360
Dallas, TX 75219-2338
*Via First Class Mail*

NBP 2012 Trust; Chris Vonder Hoya, Trust
4311 Oak Lawn Ave, Suite 360
Dallas, TX 75219-2338
*Via First Class Mail*

MLPM 2012 Trust, Chris Vonder Hoya
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338
*Via First Class Mail*

ECP 2012 Trust, Chris Vonder Hoya
4311 Oak Lawn Ave. Suite 360
Dallas, TX 75219-2338
*Via First Class Mail*

BCVH 2012 Trust, Chris Vonder Hoya
4311 Oak Lawn Ave., Suite 360
Dallas, TX 75219-2338
*Via First Class Mail*

MLBP Testamentary Trust; JP Bryan
1331 Lamar, Suite 1075
Houston, TX 77010-3025
*Via First Class Mail*

**Interested Parties**

C. Monroe Garrison
CMG Management, LP
1707 Post Oak Blvd #163
Houston, TX 77056
*Via First Class Mail*

Ms. Kelly Sandill
Mr. Greg Waller
Andrews Kurth
600 Travis
Suite 4200
Houston, Texas 77002
*Via First Class Mail*

C. Monroe Garrison
Garrison Capital Management LLC
1707 Post Oak Blvd #163
Houston, TX 77056
*Via First Class Mail*

Texas State Securities Board
P.O. Box 13167
Austin, TX 78711-3167
*Via First Class Mail*

Gregory Mount
780 Clepper Street
Suite 200
Montgomery, Texas 77356
*Via First Class Mail*

Maria Tabar
1707 Post Oak Blvd #163
Houston, TX 77056
*Via First Class Mail*

Navshad Kermali
La Porte CPA
1770 St. James Place
Suite 250
Houston, TX 77057
*Via First Class Mail*

**Parties Requesting Notice**

Mr. Michael Durrschmidt
Mr. Eric Lipper
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002
*Via ECF*

Frances A. Smith
Shackelford Melton McKinley & Norton
3333 Lee Parkway, Tenth Floor
Dallas, Texas 75219
*Via ECF*

Service List
Case No. 14-32867

Richard D. Pullman
Kessler Collins
2100 Ross Avenue, Suite 750
Dallas, TX  75201
Telephone:  (214) 379-0722
Fax:  (214) 373-4714
Email:  rpullman@kesslercollins.com
*Via ECF*

Donald and Kaye Green
c/o Reese W. Baker
Baker & Associates
5151 Katy Freeway Suite 200
Houston, Texas 77007
713-869-9200
Fax 713-869-9100
Email: courtdocs@bakerassociates.net
igo@bakerassociates.net
*Via ECF*

Michael D. Rubenstein
Liskow & Lewis
1001 Fannin Street, Suite 1800
Houston, Texas 77002
(713) 651-2953 - telephone
(713) 651-2952 - facsimile
mdrubenstein@liskow.com
*Via ECF*

Jay Adelson
c/o Carolyn Carollo
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019
(713) 335-4800/4853 Direct
(713) 335-4848 Fax
carolyncarollo@snowspencelaw.com
*Via ECF*

Dwayne R. Day
DWAYNE R. DAY, PC
3401 Allen Parkway, Suite 100
Houston, Texas 77019
TEL: 713-759-1600
FAX: 713-759-6930
EMAIL: dday@ddaylaw.com
*Via ECF*

Mark A. Rome
The Rome Law Firm, PLLC
3401 Allen Parkway, Suite 100
Houston, Texas 77019
Email: mark@theromelawfirm.com
713.701.5110 (Office)
281.754.4403 (Fax)
*Via ECF*

Vincent P. Slusher
Vince.slusher@dlapiper.com
Casey L. Moore
Casey.moore@dlapiper.com
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
*Via ECF*

211
Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 100 of 203
Case 4:17-cv-03567 Document 76 Filed in TXSD on 04/25/18 Page 211 of 373

Exhibit A

Claim

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Southern District of Texas | | PROOF OF CLAIM |
|---|---|---|---|

| Name of Debtor: <br> Garrison Municipal Partners, LP | Case Number: <br> 14-32867 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Don and Kay Green**

**COURT USE ONLY**

Name and address where notices should be sent:
P.O. Box 1088
Alpine, TX 79831-1088

Telephone number: (432) 364-2554     email: don@kdoncorp.com

❒ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
  (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:            email:

❒ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**          $          1,969,297.65

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Creditor claims for unpaid obligations
  (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:** <br> (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** <br> (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ❒Real Estate  ❒Motor Vehicle  ❒Other
**Describe:**

Value of Property: $_____

**Annual Interest Rate**_____% ❒Fixed  or  ❒Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

                $_____

**Basis for perfection:** _____

**Amount of Secured Claim:**  $_____

**Amount Unsecured:**  $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

❒ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❒ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❒ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❒ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❒ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❒ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

A-99

B10 (Official Form 10) (04/13)                                                                                                                    2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.     ☐ I am the creditor's authorized agent.          ☐ I am the trustee, or the debtor,          ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                          or their authorized agent.                   (See Bankruptcy Rule 3005.)
                                                                          (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  **DON AND KAY GREEN**
Title:
Company:
Address and telephone number (if different from notice address above):          (Signature)                          8/20/14  (Date)
P.O. Box 1088
Alpine, TX 79831                                                                (Signature)                          8/20/14  (Date)

Telephone number (432) 364-2554       email: don@kdoncorp.com
*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

A-100

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 103 of 203

B10 (Official Form 10) (04/13)

3

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 14-32867-H5-7 |
| **GARRISON MUNICIPAL** | § | |
| **PARTNERS, L.P.** | § | |
| Debtor | § | Chapter 7 |

**ATTACHMENTS TO PROOF OF CLAIM AND BASIS FOR CLAIM**

The following are submitted as part of the proof of claim of Don and Kay Green:

1. Most recent statements from Garrison Municipal Partners, L.P. to Don and Kay Green for the bond fund setting for the amounts owed to Don and Kay Green by Garrison Municipal Partners, L.P.

2. Letter of withdrawal from the bond fund from Don and Kay Green to Garrison Municipal Partners, L.P. dated November 13, 2013.

3. Partnership Agreement for Garrison Municipal Partners, L.P. - Section 5.5 (b) allowing for a withdrawal from the partnership. The withdrawal by Don and Kay Green was effective 45 days after the notice. A complete copy of the Partnership Agreement is available from the creditor.

4. The withdrawal letter dated November 13, 2013, resulted in the payments due to Don and Kay Green by Garrison Municipal Partners, L.P. becoming a claim against Garrison Municipal Partners, L.P. as a creditor after the effective withdrawal date, which withdrawal date was no later than December 31, 2013.


[The remaining part of the page is intentionally left blank]

5.  Other than the amounts in the cash account of $19,472.10 that were paid to Don and Kay

    Green, the above amounts from the bond fund statements of $1,969,297.65 have not been

    paid. The amount of $1,969,297.65 are owed to Don and Kay Green from the bond fund

    withdrawal effective no later than December 31, 2013

Dated: August _20_, 2014

Respectfully submitted,

Don Green

Kay Green

# GARRISON MUNICIPAL PARTNERS, LP

**Donald J. & Kay M. Green**

|  | Garrison Municipal Partners, LP | | |
|---|---|---|---|
|  | Current Month | Year-to-Date | Since Inception |
| Beginning Portfolio Date | 09/30/13 | 01/01/13 | 10/01/08 |
| Beginning Portfolio Value | $1,947,524.03 | $2,016,191.50 | $0.00 |
| Contributions | 0.00 | 0.00 | 1,900,000.00 |
| Withdrawals | 0.00 | 0.00 | (275,000.00) |
| Total Profit / (Loss) | 21,773.62 | (46,893.85) | 344,297.65 |
| Ending Portfolio Value as of 09/30/13 | $1,969,297.65 | $1,969,297.65 | $1,969,297.65 |

| | Current Month | Year-to-Date | Since Inception |
|---|---|---|---|
| Total Profit / (Loss) | $21,773.62 | -$46,893.85 | $344,297.65 |
| Tax-Free Return Net of All Expenses | 1.12% | -2.33% | 18.20% |
| Taxable Equivalence Based upon 35% Tax Rate | 1.72% | -2.33% | 28.00% |



**KDON Corporation**
**P.O. Box 1088**
**Alpine, Texas 79831**

(432) 364-2554                    Fax: (432) 364-2526

November 13,2013

Monroe Garrison
Garrison Capital Management Croup, LLC
Chase Building, Suite 2125
5847 San Felipe Street
Houston, Texas 77057

Ref:  Accounts of Don & Kay Green

Dear Monroe:

Pursurant to your conversation with Kay Green this date, we jointly wish to close all accounts
with your firm and have all monies forwarded to the below account:

To:
Bank:                    USAA Federal Savings Bank
                         10750 McDermott Freeway
                         San Antonio, Texas 78288

ABA Nunber:                   69
Deposit Account:         Donald J. or Kay M. Green
                         P.O: Box 1088
                         Alpine, Texas 79831-1088
Account Number:               80

It is with deep regret that we feel compelled to do this at this time, however, as discussed with
you today Kay has serious health issues and we both feel the need to withdraw to a safe place
without the stress of the markets.

We feel confident you will honor this request as soon as possible and look forward to a positive
response that our monies have been deposited in the above account. Should you wish to discuss
this request please call.

Sincerely,

Donald J. Green


Kay M. Green


http://www.kdoncorp.com

(g)    In the event of a Transfer or in the event of a distribution of assets of the Partnership to any Partner, the Partnership, in the absolute discretion of the General Partner, may, but is not required to, file an election under Section 754 of the Code and in accordance with the applicable Regulations, to cause the basis of the Partnership's assets to be adjusted for federal income tax purposes as provided by Sections 734 or 743 of the Code.

**5.4**    Transfer of Interest of the General Partner

(a)    The General Partner may not transfer its General Partner Interest other than (i) pursuant to Section 5.4(b), (ii) pursuant to a transaction not deemed to involve an assignment of its investment management obligations within the meaning of the United States Investment Advisers Act of 1940, as amended, or (iii) with the approval of Limited Partners whose Partnership Percentages represent more than fifty percent (50%) of the aggregate Partnership Percentages of all Limited Partners. By executing this Agreement, each Limited Partner is deemed to have consented to any such transfer permitted by clause (ii) of the preceding sentence.

(b)    Notwithstanding Section 5.4(a), the General Partner may transfer its General Partner Interest to any entity managed and controlled by it or its general partner without the consent of the Limited Partners, and the transferee will be admitted to the Partnership as a substitute General Partner in accordance with Section 5.2(b). The General Partner must notify the Limited Partners of any transfer pursuant to this Section 5.4(b).

**5.5**    Withdrawal of Interests of Partners

(a)    The Interest of a Partner may not be withdrawn from the Partnership prior to its dissolution except as provided in this Section 5.5.

(b)    Except as provided in Section 5.5(m), Section 6.1(c) and this Section 5.5(b), and subject to any arrangements with Special Limited Partners, a Limited Partner may voluntarily withdraw all or part of his Limited Partner Interest in the Partnership as of the close of business on the last day of each Fiscal Quarter (or at such other times as the General Partner, in its sole discretion, may determine); provided that as of such withdrawal date, such Limited Partner has held a Limited Partner Interest for at least twelve (12) complete, consecutive calendar months; and provided, further, however, that if withdrawal requests are received as of the close of any Fiscal Quarter for more than 20% of the Regular Account Net Assets as of such Fiscal Quarter end, the General Partner may, in its discretion, reduce all withdrawal requests *pro rata* so that only 20% of the value of the Regular Account Net Assets as of such Fiscal Quarter end is withdrawn. A withdrawal request that is not satisfied as of the intended Fiscal Quarter end because of the foregoing restrictions will be satisfied as of the next Fiscal Quarter end; provided, that, such restrictions do not apply as of such time. Such withdrawal requests will be satisfied in preference to later withdrawal requests subject to the foregoing provisions. Capital not withdrawn from the Partnership by virtue of the foregoing

A-106

restrictions will remain at the risk of the Partnership until the effective withdrawal date. Such Limited Partner must give irrevocable written notice to the General Partner at the principal office of the Partnership at least forty-five (45) days prior to the proposed withdrawal date (or within such other time as the General Partner, in its sole discretion, determines) indicating the amount to be withdrawn from such Partner's Capital Account in such notice. The General Partner may, in its sole discretion, waive the foregoing notice requirement.

(c)     The General Partner may not make any withdrawal from the Partnership if, after giving effect thereto, the value of the General Partner's Capital Account, as a general partner of the Partnership, would be less than the minimum balance required to be maintained pursuant to Section 3.1(c). Subject to the foregoing, the General Partner may voluntarily withdraw part of its Interest (irrespective of whether it be as a general partner or a limited partner of the Partnership) at any time pursuant to this Section 5.5 without giving notice to the Limited Partners.

(d)     The General Partner may limit aggregate withdrawals as of any withdrawal date to a maximum of twenty percent (20)% of aggregate Partner capital (the "*Withdrawal Gate*"). If withdrawal requests exceed Withdrawal Gate for any withdrawal date, each Limited Partner who has submitted a timely request will receive a pro rata portion of the requested withdrawal (based on requested withdrawal amounts), and as to any balance, such balance will be considered a timely withdrawal request with respect to the next withdrawal date without any further action by that Limited Partner. However, no such balance resulting from the Withdrawal Gate will be entitled to priority over other redemption requests on subsequent withdrawal dates and will be further subject to the Withdrawal Gate as well as hold-back for reserves and any suspensions as described in this Section 5.5, if applicable at that time. Notwithstanding the foregoing, the General Partner will honor 100% of a timely withdrawal request prior to or at the end of the fourth quarter following the original withdrawal date, whether or not a Withdrawal Gate is imposed at such time.

(e)     The General Partner, in its sole discretion, may effect withdrawal payments (i) in cash, (ii) by transfer to the Limited Partner of certain portfolio Securities or other assets of the Partnership, whether or not readily marketable, the fair market value of which would satisfy the Limited Partner's request for withdrawal or (iii) in any combination of the foregoing. Except as provided in Sections 5.5(g) and 5.5(j), payment of at least ninety percent (90%) of the estimated amount due to a withdrawing Partner must be made as soon as practicable (but not more than ten (10) Business Days) after the effective date of withdrawal, provided that the General Partner may delay such payment if such delay is reasonably necessary to prevent such withdrawal from having a material adverse impact on the Partnership. Any remaining balance must be paid, without interest thereon, promptly following completion of the audit of the Partnership's financial statements for the Fiscal Year that includes the effective date of withdrawal. The capital to be withdrawn will not participate in new Special Situation Investments made after the relevant withdrawal date. A request for a partial withdrawal is

33

Case 4:17-cv-03567 Document 61 Filed on 04/25/18 Page 290 of 370

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 14-32867** |
| **GARRISON MUNICIPAL PARTNERS, LP,** | § | |
| | § | **Chapter 7** |
| **Debtor** | § | |

## DON & KAY GREEN'S REPLY BRIEF REGARDING MANDATORY SUBORDINATION UNDER 11 U.S.C. § 510(b)

Claimants Don & Kay Green (the "Greens") file this Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b) and would show the Court as follows:

### INTRODUCTION

1.      In *SeaQuest*, the Fifth Circuit recognized that certain claims with a provenance in equity are not subject to mandatory subordination under Section 510(b)[1] because it is possible for an equity holder to convert its claim against the debtor to debt prior to the debtor's bankruptcy filing. Section 510(b) therefore must be interpreted in such a way as to exclude claims for redemption from its scope. Furthermore, unless form is to be elevated over substance, it must be interpreted in such a way as to exclude any claims that bear the same economic relationship to the debtor and its creditors as claims for redemption. In his response to the Greens' Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b) (the "Greens'

---

[1] All "Section" references herein are to Title 11 of the United States Code unless otherwise specified.

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)          1

A-108

Case 4:17-cv-03567 Document 6-1 Filed on 05/25/18 in TXSD Page 291 of 303
Case 4:17-cv-03567 Document 6-1 Filed in TXSD on 04/25/18 Page 291 of 303

Brief")(the "Trustee's Response"), the Trustee promotes an application of Section 510(b) and the case law thereunder that is overly broad because it fails to account for the correct application under the Fifth Circuit analysis. The interpretation of Section 510(b) proposed in the Greens' Brief correctly analyzes the Fifth Circuit case law: that claims are not subject to mandatory subordination when a former equity holder has relinquished its ability to participate in the risks and rewards of equity investment prior to the petition date and does not seek to recover losses that occurred during the period of ownership.

ARGUMENT

2.      In order for a claim to be for "damages arising from the purchase or sale of a security of the debtor," there must be "some nexus or causal relationship between the claim and the sale." *SeaQuest Diving, LP v. S&J Diving, Inc. (In re SeaQuest Diving, LP)*, 579 F.3d 411, 421 (5th Cir. 2009). In *SeaQuest*, the Fifth Circuit recognized that that nexus or causal relationship no longer exists when a former equity holder has converted its equity interest to debt pre-petition. *Id.* at 422-23. Although the Trustee emphatically asserts that the Greens did not convert their former equity interest to debt for purposes of Section 510(b), he does not offer any convincing reason why this is so or how one determines whether or not a former equity holder has effectively converted its equity interest to debt.

**I.      The Existence or Non-Existence of a Promissory Note Is Not**

---

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                                      2

A-109

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 292 of 303
292
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 292 of 303

**Determinative**

3.      At most, the Trustee argues that it is the existence or non-existence of a promissory note which determines whether or not a claimant has successfully converted its equity interest to debt. [Doc. No. 277, Trustee's Reply ¶ 38]. However, it is clear that the Fifth Circuit does not view this as a critical distinction because it cited *Burch v. Gannon (In re Cybersight, LLC)*, 2004 U.S. Dist. LEXIS 24426, 2004 WL 2713098 (D. Del. Nov. 17, 2004) as authority for the position that claims for redemption are not subject to mandatory subordination. *SeaQuest*, 579 F.3d at 423. The claimant in *Cybersight* had no promissory note from the debtor. Instead, the claimant held a state court judgment for the debtor's breach of its promise in the LLC Agreement to purchase the claimant's membership interests in the debtor. The Fifth Circuit, quoting *Cybersight*, stated that the essential similarity between the claims involving promissory notes and the claim in *Cybersight* was that "the claimants, pre-petition, were no longer able to participate in the benefits and risks associated with being equity holders of the debtors." *SeaQuest*, 579 F.3d at 423. This essential similarity applies equally to the Greens' claim: on the date of the Debtor's bankruptcy filing, according to the express terms of the Limited Partnership Agreement of Garrison Municipal Partners (the "Partnership Agreement"), the Greens were no longer able to participate in the benefits and risks associated

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)          3

A-110

with being equity holders of the Debtor. [Doc. No. 274-1, Partnership Agreement ¶ 5.5(k)].

4.      The Fifth Circuit has stated that the interpretation of Section 510(b) should not be guided by the elevation of form over substance. *See Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 154 (5th Cir. 2015). Whether or not a debtor has issued a formal promissory note to a claimant to whom it owes a fixed amount, the economic nature of the claim is unchanged and the economic relationship of the claimant to the debtor, and by extension to the debtor's other creditors, is likewise unchanged. By looking to whether or not the claimant has relinquished its ability to participate in the benefits and risks of equity investment rather than merely to whether or not a promissory note exists, the Fifth Circuit bases its distinction between converted and non-converted claims on the actual economic relationship between the parties rather than on a mere formality.

## II.      Neither *Tristar* Nor *Marine Holdings* Provide a Persuasive Basis to Distinguish the Greens' Claim from Other Redemption Claims

5.      Except for the promissory note distinction discussed above, the Trustee's only basis for distinguishing the Greens' claim from other redemption claims that are not subject to mandatory subordination are the cases of *Pensco Trust Co. v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC)*, 782 F.3d 492 (9th Cir. 2015) in the Ninth Circuit and *Official Comm. of Unsecured Credi-*

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 114 of 203
Case 4:17-cv-03567 Document 61 Filed in TXSD on 04/25/18 Page 294 of 373

*tors v. FLI Deep Marine, LLC (In re Deep Marine Holdings, Inc.)*, Adv. No. 10-03116, 2011 Bankr. LEXIS 579 (Bankr. S.D. Tex. Jan. 19, 2011) by Judge Isgur in this district. However, neither of these cases provide a persuasive basis to distinguish the Greens' claim from the redemption claims identified in *SeaQuest* as not subject to mandatory subordination under Section 510(b). *Tristar* is not persuasive because it expressly rejects the holdings and reasoning of the cases that the Fifth Circuit relied on in *SeaQuest* to demonstrate when an equity holder has effectively converted its equity interest to debt. *Marine Holdings* is not persuasive because the claimants never asserted that they had converted their equity interests to debt and, therefore, the court did not decide or even consider that issue.

### A. *Tristar*

6. Although *Tristar* bears some factual similarity to the case at hand, it should not be regarded as persuasive authority in this circuit because it expressly rejects the holdings and reasoning that the Fifth Circuit followed in *SeaQuest*. *Tristar* involves facts very similar to *Cybersight*. In both cases, the debtors were required by their respective LLC or operating agreements to repurchase the claimants' equity interests, but failed to do so. The claimants in each case then obtained state court judgments for breach of contract prior to the debtors' bankruptcy filings. The claims that the claimants asserted in the respective bankruptcy cases were based on those state court judgments. However, whereas the Ninth Circuit

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)          5

A-112

held that such claims were subject to mandatory subordination under Section 510(b), the court in *Cybersight* held that such claims were for redemption and not subject to mandatory subordination. The Ninth Circuit rejected the holding and reasoning of *Cybersight*, as well as that of *MarketXT* and *Mobile Tool*, all of which are cases the Fifth Circuit cited favorably in support of its observation that an equity holder can convert its equity interest to debt pre-petition. *Tristar*, 782 F.3d at 496-97. Because *Tristar* expressly rejects the reasoning followed by the Fifth Circuit in *SeaQuest*, that case should not be regarded as persuasive in this circuit.

### B.   *Marine Holdings*

7.     The memorandum opinion in *Marine Holdings* is a case decided by a bankruptcy judge in this same district. However, the decision is not binding on the Court. "It is unambiguous that one district judge is not bound by the decisions of the other district judges of the district court…. Accordingly, two district judges from the same district court could reach opposite conclusions on the same difficult question of law." *Villarreal v. Showalter (In re Villarreal)*, 413 B.R. 633, 641 (Bankr. S.D. Tex. 2009). *Also, In re Romano*, 350 B.R. 276, 281 (Bankr. E.D. La. 2005). Therefore, even if the facts of *Marine Holdings* were the same as the facts of this case for all practical purposes, the decision would not be binding on this Court. *Villarreal*, 413 B.R. at 641. However, the facts of *Marine Holdings* are not the same as the facts of this case for all practical purposes. In addition, the court

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                                    6

A-113

did not consider in that case the issue raised by the Greens in this case. Specifically, the court did not consider whether the claimants had converted their equity interests to debt prior to the petition date. Therefore, *Marine Holdings* should not be considered persuasive on the issue of whether or not the Greens converted their equity interest to debt prior to the petition date by withdrawing their partnership interest.

8.     In *Marine Holdings*, the court stated that the only issue it had to address was "whether § 510(b) includes claims that arise during the course of a claimant's ownership of a security or, instead, whether § 510(b) only encompasses claims for damages incurred through the actual purchase or sale of a security." *Marine Holdings*, 2011 Bankr. LEXIS 579 at *14. The court was called upon to consider only this issue because the claimants argued only that their claims were not subject to mandatory subordination because they involved post-issuance conduct rather than conduct involving the actual purchase or sale of their securities. *Id.* at *7-8. The claimants further argued that the core of their claims was not their appraisal rights for fair market value as a result of the merger, but the breaches of fiduciary duty, unjust enrichment, and related claims based on the debtor's conduct that occurred in the years before the merger. *Id.* at *7.

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    7

A-114

9.     Considering that the claimants characterized their claims primarily as claims to recover losses to the value of their equity interests prior to the confiscation of their stock, the holding of *Marine Holdings* is consistent with the Greens' interpretation of Section 510(b) as set forth in the Greens' Brief. The Greens' fundamental argument is that an investor seeks to recover a portion of its equity investment within the meaning of the Fifth Circuit in *SeaQuest* (and therefore falls within the broad scope of Section 510(b)) when the investor asserts a claim to recover the losses that occurred to his investment during the time that he held the investment. The *Marine Holdings* claims for breach of fiduciary duty and other illegal conduct prior to the merger would have sought retroactively to recoup to the claimants the loss in the value of their equity interests prior to the confiscation of their stock, even though the claimants were entitled to share in the potential rewards of equity investment throughout that same period. Although some of the *Marine Holdings* claims, such as the claim for appraisal rights, may be analogous to the Greens' claim, the claimants did not seek to distinguish these claims from those seeking to recover their pre-merger losses. Given the claimants' characterization of their claims as primarily claims for damages based on the debtor's post-issuance illegal conduct that improperly reduced the value of the claimants' equity interests prior to confiscation, the court's decision addressed different factors that

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    8

A-115

Case 4:17-cv-03567 Document 61 Filed in TXSD on 04/25/18 Page 298 of 370

were not present in the Green's case and should not affect the position of the Greens in the case at bar.

10.     In contrast to the claimants in *Marine Holdings*, the Greens do not seek to recover any loss in the value of their equity investment that occurred as a result of the Debtor's post-issuance conduct while they held their investment. Like a claim for redemption, the Greens' claim seeks only the value of their equity interest at the time they relinquished their ability to participate in the risks and rewards of equity investment, subject to all losses already incurred. In this regard, the Greens' claim is factually distinct from the *Marine Holdings* claims and should not be treated in the same way.

11.     Furthermore, unlike the *Marine Holdings* claimants, the Greens do not argue that post-issuance conduct can never form the basis of claim subject to mandatory subordination. Rather, they argue that at some point a former equity holder must be viewed as having converted its equity interest into debt, because the Fifth Circuit expressly recognized that possibility. The Greens reached that point when they irrevocably withdrew their partnership interest and relinquished their ability to participate in the risks and rewards of equity investment in the Debtor. They are not reaching back to recover losses to their investment that occurred prior to that point. The court in *Marine Holdings* did not address this argument and its holding

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                                9

A-116

does not provide any basis to distinguish between those claims where the claimant has effectively converted its equity interest to debt prior to the petition date and those claims where the claimant has not. As stated by the court, the only issue considered and decided in that case was whether or not Section 510(b) includes claims that arise from post-issuance conduct. Therefore, *Marine Holdings* should not be considered persuasive on the issue of whether or not the Greens' withdrawal of their partnership interest effectively converted their equity interest to debt prior to the Debtor's bankruptcy filing for purposes of mandatory subordination under Section 510(b).

## CONCLUSION

12.     Throughout his brief, the Trustee assumes as fact that the Greens "are attempting to recoup their equity investments" and "seek to recover a portion of their equity investment," but he does not identify any specific fact that supports this assertion. [Doc. No. 277, Trustee's Response ¶¶ 27 and 43]. He identifies no specific fact concerning the Greens' claim that makes it different from the redemption claims—in particular the *Cybersight* claim, which involved no promissory note—that the Fifth Circuit identified as not subject to mandatory subordination under Section 510(b). Likewise, the Trustee asserts that "it is evident" that the Greens' claim arises from the purchase of their ownership interest and that their brief "makes clear" that the claim relates directly to their purchase of the owner-

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    10

A-117

ship interest; but, again, the Trustee identifies no specific fact about the Greens' claim that makes it different in this regard from the redemption claims discussed in *SeaQuest*. [Doc. No. 277, Trustee's Response ¶ 36].

  13. The Trustee does not identify any such facts because they do not exist. The Greens' claim is not "cloaked" as a redemption claim; it *is* a redemption claim. The Greens' economic relationship to the Debtor and its other creditors on the petition date was the same in all material respects as the claimants' economic relationship to the respective debtors in *Montgomery Ward*, *Mobile Tool*, *MarketXT*, and *Cybersight*.[2] Specifically, on the petition date, the Greens had already relinquished all right to participate in the risks and rewards of equity ownership in the Debtor and they do not seek to recover losses of their equity investment that occurred prior to the date of their relinquishment. Because the Fifth Circuit chose to follow the holdings of *Montgomery Ward*, *Mobile Tool*, *MarketXT*, and *Cybersight*, finding that the claimants therein were true debt claimants on the petition date, not equity claimants masquerading as debt claimants, the Court should hold that the Greens too are true debt claimants and therefore that their claim is not subject to mandatory subordination.

---

[2] *Montgomery Ward Holding Corp. v. Schoeberl (In re Montgomery Ward Holding Corp.)*, 272 B.R. 836 (Bankr. D. Del. 2001); *Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs. (In re Mobile Tool Int'l, Inc.)*, 306 B.R. 778 (Bankr. D. Del. 2004); *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369 (Bankr. S.D.N.Y. 2007); *Cybersight*, 2004 U.S. Dist. LEXIS 24426, 2004 WL 2713098.

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)     11

A-118

Case 4:17-cv-03567 Document 7-1 Filed on 05/25/18 in TXSD Page 121 of 203
Case 4:17-cv-03567 Document 7-1 Filed in TXSD on 04/25/18 Page 301 of 303
301

Dated: September 28, 2017

Respectfully submitted,

*/s/ Reese Baker*
Reese Baker
TX Bar No. 01587700
950 Echo Lane, Ste. 200
Houston, Texas 77024
(713) 979-2279
(713) 869-9100 Fax
ATTORNEY FOR THE GREENS

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b) was filed electronically and served upon all parties receiving electronic notice from the Court's ECF notification system in the above-referenced bankruptcy case.

*/s/ Reese W. Baker*
Reese W. Baker

*In re Garrison Municipal Partnership, LP*
Don & Kay Green's Reply Brief Regarding Mandatory Subordination Under 11 U.S.C. § 510(b)                    12

A-119

302
Case 4:17-cv-03567 Document 6-1 Filed on 05/15/18 in TXSD Page 302 of 320
Case 4:17-cv-03567 Document 6-1 Filed in TXSD on 04/25/18 Page 122 of 203

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

ENTERED
10/31/2017

|  |  |  |
|---|---|---|
| IN RE | § | |
| | § | |
| GARRISON MUNICIPAL PARTNERS, LP, | § | CASE NO. 14-32867-H5-7 |
| | § | |
| Debtor, | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

The Chapter 7 Trustee objected to the proofs of claim filed by 22 prepetition investors in the Debtor on grounds they were duplicates and represented equity interests rather than unsecured claims. (Docket No. 252). The Trustee reached a settlement with 18 of the prepetition investors and filed a motion for compromise. (Docket No. 263). On the day of a combined hearing on the motion for compromise and the claim objection, Don and Kay Green (two of the non-settling prepetition investors) denied the material allegations of the claim objection. (Docket No. 271). The Greens argue that they are entitled to a general unsecured claim because they submitted a withdrawal request prepetition. Trustee argues that the Greens' asserted general unsecured claim would consume the entirety of the estate and thus would defeat the settlement with the other prepetition investors. Trustee seeks a judgment on partial findings overruling the Greens' objection. The Court overrules the Greens' objection because the partnership agreement withdrawal provisions are not self-executing.

P:\garrison.20171031.wpd

## I. The Partnership Agreement

Section 5.5 of the Limited Partnership Agreement provides in part:

5.5     Withdrawal of Interests of Partners

(a) The Interest of a Partner may not be withdrawn from the Partnership prior to its dissolution except as provided in this Section 5.5.

(b) Except as provided in Section 5.5(m), Section 6.1(c) and this Section 5.5(b), and subject to any arrangements with Special Limited Partners, a Limited Partner may voluntarily withdraw all or part of his Limited Partner Interest in the Partnership as of the close of business on the last day of each Fiscal Quarter (or at such other times as the General Partner, in its sole discretion, may determine); provided that as of such withdrawal date, such Limited Partner has held a Limited Partner Interest for at least twelve (12) complete, consecutive calendar months; and provided, further, however, that if withdrawal requests are received as of the close of any Fiscal Quarter for more than 20% of the Regular Account Net Assets as of such Fiscal Quarter end, the General Partner may, in its discretion, reduce all withdrawal requests pro rata so that only 20% of the value of the Regular Account Net Assets as of such Fiscal Quarter end is withdrawn. A withdrawal request that is not satisfied as of the intended Fiscal Quarter end because of the foregoing restrictions will be satisfied as of the next Fiscal Quarter end; provided, that, such restrictions do not apply as of such time. Such withdrawal requests will be satisfied in preference to later withdrawal requests subject to the foregoing provisions. Capital not withdrawn from the Partnership by virtue of the foregoing restrictions will remain at the risk of the Partnership until the effective withdrawal date.  Such Limited Partner must give irrevocable written notice to the General Partner at the principal office of the Partnership at least forty-five (45) days prior to the proposed withdrawal date (or within such other time as the General Partner, in its sole discretion, determines) indicating the amount to be withdrawn from such Partner's Capital Account in such notice. The General Partner may, in its sole discretion, waive the foregoing notice requirement.

* * *

(e) The General Partner, in its sole discretion, may effect withdrawal payments (I) in cash, (ii) by transfer to the Limited Partner of certain portfolio Securities or other assets of the Partnership, whether or not readily marketable, the fair market value of which would satisfy the Limited Partner's request for withdrawal or (iii) in any combination of the foregoing.  Except as provided in Sections 5.5(g) and 5.5(j), payment of at least ninety percent (90%) of the estimated amount due to a withdrawing Partner must be made as soon as practicable (but not more than ten (10) Business Days) after the effective date of withdrawal, provided that the General Partner may delay such payment if such delay is

P:\garrison.20171031.wpd                    2

A-121

reasonably necessary to prevent such withdrawal from having a material adverse impact on the Partnership. Any remaining balance must be paid, without interest thereon, promptly following completion of the audit of the Partnership's financial statements for the Fiscal Year that includes the effective date of withdrawal. The capital to be withdrawn will not participate in new Special Situation Investments made after the relevant withdrawal date. A request for a partial withdrawal is charged to a Limited Partner's Capital Account attributable to the Regular Account to the extent thereof unless otherwise agreed with the General Partner.

* * *

(g) Upon receipt by the General Partner of a Limited Partner's notice of intention to withdraw assets from the Partnership, the General Partner has the absolute discretion to manage the Partnership's assets in a manner which would provide for cash being available to satisfy such Limited Partner's request for withdrawal, but the General Partner is under no obligation to effect sales of Partnership assets if the General Partner. in its sole discretion, determines that such transactions might be detrimental to the interest of the other Partners or that such transactions are not reasonably practicable. In the case of a complete withdrawal, or a partial withdrawal that cannot be fully funded out of the Limited Partner's interest in the Regular Account, no settlements may occur with respect to any of such Limited Partner's Special Situation Investment Sub-accounts until the occurrence of a Recognition Event with respect to any such Special Situation Investment after the scheduled payment date for the withdrawal. If the Recognition Event is a sale for cash, the settlement is funded in cash within 90 days after the Recognition Event (without interest). If the Recognition Event is not a sale for cash, the General Partner may effect the settlement either by making a distribution in kind of the Limited Partner's ratable share of the relevant Security or by distributing the net proceeds derived from a sale of such Securities or other available cash. In connection with any such settlement, a calculation of the Limited Partner's Performance Change through the date of the Recognition Event is made to determine whether any Performance Allocation is to be credited to the General Partner. The General Partner is entitled to withdraw an amount equal to any such Performance Allocation, together with any Management Fees deferred pursuant to Section 3.7(a). at the same time and in the same form (in cash or in kind) as the distribution to the withdrawing Limited Partner.

* * *

(k) A withdrawing Partner does not share in the income, gains and losses of the Partnership or have any other rights as a Partner after the effective date of its withdrawal except as provided in Section 3.8.

(Docket No. 277).

P:\garrison.20171031.wpd                3

The parties agree that on November 13, 2013, the Greens gave written notice to Debtor of their intent to withdraw their limited partnership interest in the Debtor. Debtor never made any payment to the Greens, before their notice or after Debtor filed a Chapter 7 petition on May 22, 2014.

## II. The Greens' Unsecured Claim is Subordinated to Other Unsecured Claims

Section 510(b) provides:

> (b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

(11 U.S.C. § 510(b)).

Section 510(b) applies to the ownership interests in a limited partnership. *See In re SeaQuest Diving, LP*, 579 F.3d 411 (5th Cir. 2009). As a general principle, creditors are entitled to be paid ahead of equity security holders in the distribution of corporate assets. *SeaQuest,* 579 F.3d, at 417. The Fifth Circuit stated in *SeaQuest*:

> For purposes of the damages category, the circuit courts agree that a claim arising from the purchase or sale of a security can include a claim predicated on post-issuance conduct, such as breach of contract. They also agree that the term "arising from" is ambiguous, so resort to the legislative history is necessary. For a claim to "arise from" the purchase or sale of a security, there must be some nexus or causal relationship between the claim and the sale. Further, the fact that the claims in the case seek to recover a portion of claimants' equity investment is the most important policy rationale.

*SeaQuest,* 579 F.3d, at 421. (internal citations omitted).

P:\garrison.20171031.wpd                    4

Debtor's failure to pay the Greens' claim upon withdrawal is a claim for breach of contract arising from the withdrawal. The Greens are seeking to recover their equity investment. Thus, under Section 510(b), their claim is subordinated and has the same priority as the other prepetition investors.

The Greens' argument that their notice of withdrawal is a redemption claim similar to those in *In re Montgomery Ward Holding Co.* 272 B.R. 836 (Bankr. D. Del. 2001), *abrogated on other grounds by In re Telegroup, Inc.*, 281 F.3d 133 (3d Cir. 2002) lacks merit. A redemption claim requires a separate note, see *SeaQuest,* 579 F.3d, at 423, and must be independent of the partnership agreement. *See In re American Housing Foundation*, 785 F.3d 143 (5th Cir. 2015). In this case, the notice of withdrawal was not self-executing so as to give the Greens an interest in the assets of the partnership. The partnership agreement required action on the part of the general partner to repay the Greens equity interests.

The Court will set an additional hearing on the "Trustee's Omnibus Objection to Proofs of Claim Filed by Limited Partners of Garrison Municipal Partners, L.P." (Docket No.252) and the "Chapter 7 Trustee's Motion under 11 U.S.C. §§ 105(A) and 363, Bankruptcy Rules 6004 and 9019 and Local Rule 9013-1 for Approval of Settlement" (Docket No.263) in light of this Memorandum Opinion and Order.

Signed at Houston, Texas on October 31, 2017

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-32867 |
| **Garrison Municipal Partners, LP,** | § | |
| **Debtor** | § | (Chapter 7) |

## NOTICE OF APPEAL BY DON AND KAY GREEN

Don and Kay Green, creditors in the above case (hereafter "Appellants") appeal to the United States District Court for the Southern District of Texas under 28 U.S.C § 158, from the judgments, orders, or decrees to wit: Order, signed on October 31, 2017 and entered on October 31, 2017 at docket number #285 and titled: "Memorandum Opinion and Order." The names of the parties to the appeal are listed below:

Reese Baker
Baker and Associates
950 Echo Lane, Ste 200
Houston, Texas 77024
Attorney for Appellant

Charles Rubio
Diamond McCarty
909 Fannin Street, 15th Floor
Two Houston Center
Houston, Texas 77010
Attorney for Appellee

Dated: November 10, 2017

Respectfully submitted,

*/s/Reese W. Baker*
Reese W. Baker
TX Bar No. 01587700
Baker & Associates
5151 Katy Freeway, Suite 200
Houston, TX 77007
713-869-9200
713-869-9100 (Fax)
ATTORNEYS FOR APPELLANTS

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-32867-H5-7 |
| | § | HOUSTON, TEXAS |
| GARRISON MUNICIPAL PARTNERS, | § | THURSDAY |
| LP, | § | SEPTEMBER 7, 2017 |
| DEBTOR. | § | 10:11 A.M. TO 11:32 A.M. |

MOTIONS HEARING

BEFORE THE HONORABLE KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

FOR THE PARTIES:                    SEE NEXT PAGE

COURTROOM DEPUTY/RECORDER:          TRACEY CONRAD

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
(281) 277-5325 (office) ◇ (281) 277-0946 (fax)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

173

2

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 129 of 203
Case 4:17-cv-03567 Document 76 Filed in TXSD on 04/25/18 Page 173 of 370

APPEARANCES:


For Rodney Tow,                    DIAMOND McCARTHY, LLP
Chapter 7 Trustee:                 Charles Rubio, Esq.
                                   909 Fannin, Ste. 1500
                                   Houston, Texas  77010
                                   713-333-5127


For the Creditors                  BAKER & ASSOCIATES, LLP
Donald & Kaye Green:               Reese Baker, Esq.
                                   950 Echo Lane, Ste. 200
                                   Houston, Texas  77024
                                   713-869-9200


For the Creditors                  HIRSCH & WESTHEIMER, P.C.
the Bryan entities, et al:         Michael Durrschmidt, Esq.
                                   1415 Louisiana, 36th Floor
                                   Houston, Texas  77002
                                   713-220-9165

174

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 130 of 203
Case 4:17-cv-03567 Document 76 Filed in TXSD on 04/25/18 Page 174 of 377

3

INDEX

| WITNESSES: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| NONE | | | | |

| EXHIBITS: | | Marked | Offered | Admitted |
|---|---|---|---|---|
| Court Exhibit #1 | | 13 | 13 | 13 |

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 131 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 175 of 270

1      HOUSTON, TEXAS; THURSDAY, SEPTEMBER 7, 2017, 10:11 A.M.

2           THE COURT:  This is the Docket for September the

3      7th.  The next, or the case set for this morning, is Garrison

4      Municipal Partners.  Let me have Counsel state your

5      appearances, please.

6           MR. RUBIO:  Good morning, Judge Brown.  Charles

7      Rubio on behalf of Rodney Tow, the Chapter 7 Trustee.  With me

8      in the courtroom is Frances Ellenbogen.

9           THE COURT:  All right.

10          MR. DURRSCHMIDT:  Good morning, Your Honor.  Michael

11     Durrschmidt on behalf of J.P. Bryan and his various entities.

12     The Maples, Michael Maple, Jr. and Sr., Liz Maples and -- I'm

13     missing one.

14          THE COURT:  That's all right.  It's whomever you

15     represent.

16          MR. DURRSCHMIDT:  The Brites, yes.

17          THE COURT:  All right.

18          Mr. Baker?

19          MR. BAKER:  Your Honor, Reese Baker on behalf of Don

20     and Kay Greene.

21          THE COURT:  All right.

22          All right, Mr. Baker just filed his objection.  And

23     that's okay, we could take it up.

24          But how do you wish to go through these, Mr. Rubio?

25          MR. RUBIO:  Thank you, Your Honor.  Charles Rubio

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 132 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 176 of 370

1 again for the Record.

2   Your Honor, what we have on file today is the

3 omnibus claim objection and then three motions.  One motion to

4 file under seal a settlement agreement with Michael

5 Durrschmidt's clients.  What we refer to as the "investor

6 plaintiffs."  Then there's the motion to approve the

7 settlement with the investor plaintiffs.  And then finally, a

8 distribution motion to satisfy all the claim holders in this

9 case, assuming the omnibus objection that I first referenced

10 is actually entered and the parties that have filed claims in

11 connection with the partnership interest are subordinated to

12 equity.

13   And I think the best way to start, since a threshold

14 matter is going to be the omnibus objection.

15   THE COURT:  All right.

16   MR. RUBIO:  So the omnibus objection seeks to

17 reclassify the claims asserted by the partners in Garrison

18 Municipal Partners as equity interest.  There were claims that

19 were filed by the partners.  There were claims and proofs of

20 interest.  And to the extent that claims and proofs of

21 interest are filed, we're also asking to eliminate the

22 duplicative claim, as well.

23   Mr. Baker, is that correct?

24   THE COURT:  Yes.

25   MR. RUBIO:  He's just filed a claim, an objection to

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 133 of 203
Case 4:17-cv-03567 Document 76 Filed in TXSD on 04/25/18 Page 177 of 270

1    this.  And if you'd like me to address that now, I will.

2              THE COURT:  Yes, go ahead.

3              MR. RUBIO:  Well, first I would ask the Court to

4    just overrule the objection as untimely.  We filed this

5    omnibus objection on June 12th with a notice saying that

6    objections were due on 30 days.  In accordance with local

7    Rule 3071(e) the parties are supposed to confer prior to the

8    initial hearing on an omnibus objection, which Mr. Baker has

9    failed to do.  This is a complete surprise attack on his part.

10   And I -- you know, in respect to administering this case, you

11   know, I don't think we should be delayed in administering it

12   just because, you know, we're getting surprise on the date of

13   the hearing with an objection that doesn't seem to make any

14   substantive argument as to the relief being sought in this

15   objection.

16             THE COURT:  All right.  Mr. Baker, I wasn't sure

17   what your objection was in terms of content, either.

18             MR. BAKER:  Well, my clients actually submitted

19   documents and changed their position from an equity investor

20   to an unsecured claim quite some time before the bankruptcy

21   was filed.  And so I don't believe 5K actually applies to

22   their situation at all.  And --

23             THE COURT:  And the lateness of the objection you're

24   coming in with.  Why are you late?  That's the question.

25             MR. BAKER:  Well, I know we had looked at this

1    before and there are some other things that had been going on

2    in the last two weeks.

3              THE COURT:  That I can't imagine.  Okay.  All right.

4              I understand that's the last two weeks.  But when

5    did the Greenes hire you?

6              MR. BAKER:  We've been representing them for awhile.

7              THE COURT:  Okay.  All right.  Couldn't remember.

8              All right.  If they're seeking -- have already

9    sought the unsecured position and giving up striking the

10   equity, so they're just asking to be treated like every other

11   unsecured; is that what I understand?

12             MR. RUBIO:  Your Honor, there's three creditors that

13   we think are proper creditors of this case and these are trade

14   creditors, effectively.  One is Southwest Securities that

15   entered into a trade agreement with Garrison Municipal

16   Partners, that Garrison Municipal Partners then rejected that

17   trade agreement.  Southwest Securities then took a loss on the

18   securities because they had to resell it back in the

19   marketplace.  The other one is Andrews & Kurth, which provided

20   legal Counsel to the debtor's management.  And they had an

21   indemnification agreement and that claim was allowed by this

22   Court.  And the other one was a claim by Alvarez & Marsal.

23   That was also allowed by order of this Court.

24             So those are three claims that are from,

25   effectively, what we're considering trade creditors of this

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 135 of 203
Case 4:17-cv-03567 Document 61 Filed in TXSD on 04/25/18 Page 179 of 203

1     case.  And all the other claim holders are parties that were

2     investors in Garrison Municipal Partners.

3          Now whether or not, as Mr. Reese says, that they

4     made some arrangement to try to improve their position from an

5     equity holder to an unsecured creditor -- one, I've never seen

6     anything like that, but the argument would still hold in that

7     they should be treated in the same respect as all the other

8     parties that put money into this and treated with the same

9     treatment.  That's all that we're doing by virtue of the

10    omnibus objection is reclassifying them and treating all those

11    parties in *pari passu*.

12         THE COURT:  All right.

13         MR. BAKER:  Well, Your Honor --

14         THE COURT:  Go on.

15         MR. BAKER:  The documentation allowed them to submit

16    and actually change their investment, which they did long

17    before the case was filed, the bankruptcy case was filed.  So

18    when the case was filed, they were valid unsecured creditors.

19    They were not equity investors.  And, in fact, Mr. Tow

20    actually acknowledged that to me when I filed the claim

21    initially.  And that was one of the issues.

22         MR. RUBIO:  I'm going to object to hearsay, Your

23    Honor.  If this is --

24         THE COURT:  Wait, wait, wait, wait, wait.

25         MR. BAKER:  It's not hearsay.  He is the Trustee.

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 Page 180 of 370

1          THE COURT:  Wait.  Wait.  Stop it.

2          Go ahead.

3          MR. BAKER:  And when I talked to Mr. Tow initially

4  about it, he was the one who recommended filing the claim.  He

5  said, look, your clients are unsecured creditors.  He

6  acknowledged that to me at the beginning of the case.  So he

7  had read the documents and looked at that and understood that

8  to be the case.  That's what we filed and I think that's what

9  they are.

10         THE COURT:  Okay.  We're going to carve out the

11  Greens.  We're going to save them for an opportunity for you

12  to look at this and take your time with it, Mr. Rubio, and see

13  what -- who says what to whom, when, all right?  Because this

14  is too minor to litigate in the context of all these others.

15         So, separate and apart from the Greens who were

16  Claim No. 2?  2, all right.  Who is -- these will not apply to

17  at this time.  All right.  And I'm hoping you'll be able to

18  reach a stipulated settlement on them, but that's for another

19  day.

20         So, this omnibus objection for which you have

21  received no other objections, has -- I am approving that if

22  given that you will represent the adequacy of the notice to

23  all parties.

24         MR. RUBIO:  Yes, Your Honor.  Your Honor, this is

25  somewhat of a package deal.  It doesn't really make sense to

Case 4:17-cv-03567 Document 761 Filed on 05/25/18 in TXSD Page 137 of 203
Case 4:17-cv-03567 Document 761 Filed in TXSD on 04/25/18 Page 181 of 370

1    proceed on the other components of it without proceeding

2    because as I'm looking at this, the Greenes actually have a

3    $1.625 million claim, potentially, which would consume the

4    value of the estate.  So we would just request that, pursuant

5    to Local Rule we treat this as a scheduling conference for

6    seeking discovery.

7             THE COURT:  Fine.  Let me -- we will then postpone

8    the ruling on everything except the motion to seal and

9    compromise.  Is that right?  Which I think we could take care

10   of today if I'm understanding the numbers right.

11            MR. RUBIO:  I'm trying to --

12            THE COURT:  Okay.  Why don't I take a break?  All

13   right.  Let's break --

14            MR. RUBIO:  Yeah.  I would appreciate that.  Thank

15   you.

16            THE COURT:  Let's break for 30 minutes.  Okay.

17            THE CLERK:  All rise.

18         (Recess from 10:20 a.m. to 11:15 a.m.)

19            THE COURT:  All right.  Mr. Rubio, how do you wish

20   to proceed?

21            MR. RUBIO:  Thank you, Judge Brown.

22            I want to take a bite as this apple before moving to

23   scheduling.

24            THE COURT:  Fine.

25            MR. RUBIO:  We filed an objection.  Mr. Baker has

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 138 of 203

1    the burden of establishing his claim.

2              THE COURT:  Right.

3              MR. RUBIO:  He's filed a Proof of Claim, and the

4    basis by which he's asserting his status as an unsecured claim

5    is contained in his unsecured claim.  And I would request that

6    the Court take judicial notice of the contents of his Proof of

7    Claim.

8              THE COURT:  I need -- Do you have a copy of it?

9              MR. RUBIO:  Unfortunately -- and, again, this is all

10   done by surprise.

11             THE COURT:  No, no.  Mr. Baker, have you got a copy

12   of what you -- your Proof of Claim?  And you don't either.

13   All right.  Your Proof of Claim?

14             MR. BAKER:  Oh, I don't have a hard copy.  It's

15   actually filed at No. 2.

16             THE COURT:  Okay.  I need a hard copy.

17             Ruben, get me a copy.

18             Go ahead, so --

19             MR. RUBIO:  I appreciate that, Your Honor.

20             THE COURT:  All right.  Go ahead.

21             MR. RUBIO:  The contents of his Proof of Claim and

22   the basis by which he's asserting is that his clients made a

23   withdrawal request to the partnership saying:  We want to

24   withdraw our interest in the partnership.  They filed this

25   document with the partnership.

183
Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 139 of 203
Case 4:17-cv-03567 Document 76-1 Filed on 04/25/18 in TXSD Page 183 of 370

12

1          THE COURT:  ALL RIGHT.

2          MR. RUBIO:  And the partnership has terms in the

3     partnership agreement that provide how the withdrawals are

4     made.

5          THE COURT:  Right.

6          MR. RUBIO:  This is his basis by which the filing of

7     this document, this withdrawal request, has elevated his claim

8     to be superior to that of other partners.

9          THE COURT:  Okay.

10          MR. RUBIO:  There's no dispute on the facts here, as

11     far as that his client was a partner, they invested money and

12     made this withdrawal request.  None of that is in dispute.

13          THE COURT:  All right.

14          MR. RUBIO:  I'm asking the Court to make a directed

15     verdict based off of these facts, that admitting that these

16     facts are true, that it's not going to elevate his clients'

17     claim to that of the other partners in the claim -- the other

18     partners in this fund.

19          THE COURT:  Go over and listen to Mr. Durrschmidt or

20     whatever he's saying right now.  Or come on up and --

21          (Counsel confer.)

22          MR. RUBIO:  I'm sorry.  Just to clarify, it doesn't

23     improve his position over the other partners to elevate him to

24     an unsecured creditor.

25          THE COURT:  All right.  Do we have a partnership

184

13

Case 4:17-cv-03567 Document 761 Filed on 05/25/18 in TXSD Page 140 of 203
Case 4:17-cv-03567 Document 761 Filed on 04/25/18 Page 184 of 370

1    agreement?

2         MR. RUBIO:  We have the terms, the relevant terms of

3    the partnership -- and again, those are attached to the Proof

4    of Claim.

5         THE COURT:  Okay.  Again, all right, we'll pull that

6    up.  So we've got the relevant partnership agreement.  Did the

7    partnership ever take any action with regards to the

8    withdrawal before filing?

9         MR. RUBIO:  I think, again, the facts are undisputed

10   here that it's no.  Otherwise, if they did, we wouldn't be

11   having this claim objection dispute, they would have gotten

12   paid out.

13        THE COURT:  Right.  Okay.  All right.  So let's get

14   that copy and --

15        (Talking off the Record.)

16        THE COURT:  On looking at the Proof of Claim is

17   there any --

18        MR. RUBIO:  So you should have nine pages in front

19   of you.  The seventh page is the letter of withdrawal.

20        THE COURT:  Okay.  Which is -- all right.  For the

21   purpose of the Record this is -- I'll make this Court's

22   Exhibit #1.  And this is a letter -- letterhead, Marine

23   Consultants.  And dated November 13th, 2013, directed to

24   Monroe Garrison, Garrison Capital Management Group.  And it's

25   -- it'll go into the Record, but:

185

14

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 141 of 203
Case 4:17-cv-03567 Document 61 Filed on 04/25/18 Page 185 of 370

1          "Pursuant to your conversation with Kaye Green this date,

2          we jointly wish to close all accounts with your firm and

3          have all monies forwarded to the cited accounts of the

4          Greens.  Kaye has serious health problems."

5          And they need to withdraw for the security in taking

6      it out of the market.  And there is no response to that.

7          The withdrawal of interest provision, the paragraph

8      of the partnership agreement which is 5.5 says -- specifies

9      that:

10          "Only 5.5 will control the withdrawal of a partner prior

11          to dissolution.  And except -- and 5.5(m), 6.1(c) and

12          5.5(b), a limited partner may voluntarily withdraw all or

13          part of his its limited interest in the partnership as of

14          the close of business of the last day of each fiscal

15          quarter, which would have been" -- what was that fiscal

16          year, October?  Maybe.  And, "or at such other times as

17          provided for, provided as of such withdrawal date each

18          limited partner has held a limited partnership agreement

19          for at least 12 consecutive calendar months.  However, if

20          withdrawal requests are received as of the close of the

21          fiscal quarter for more than 20 percent of the regular

22          account as net assets of the regular account net assets"

23          -- Is that a defined term? -- "as of such fiscal quarter,

24          they may reduce all withdrawal requests of the general

25          partner so that only 20 percent of the value of the

1          regular account net assets, as of that quarter, is

2          withdrawn.

3          "So any withdrawal request that is not satisfied as of

4          this intended fiscal quarter and because of the foregoing

5          restrictions, will be satisfied next quarter.  They will

6          not  -- those provisions won't apply.  Such withdrawal

7          request will be satisfied in preference to later

8          withdrawal requests subject to the previous exceptions.

9          Capital not withdrawn from the partnership by virtue of

10         the foregoing restrictions will remain at risk until the

11         effective withdrawal date.  Irrevocable written notice to

12         the general partner at least 45 days prior to withdrawal.

13         And the general partner may waive that."

14              And the other exceptions were 5.5(b), the 6.1(c) and

15     5.5(m).

16              So I don't have --

17              MR. RUBIO:  The rest of them aren't contained.

18              THE COURT:  Mm-hm, 5.5(m) is --

19              MR. RUBIO:  Ultimately, what we're saying is that

20     this is a situation where we have a partner that we

21     acknowledge made a withdrawal request.  There are provisions

22     in there that provide for the withdrawal request.  We're

23     saying -- this is a Court of equity.

24              What we're trying to do is we're trying to treat all

25     these partners in a fair and equitable way.  We have cut a

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 143 of 203

1    deal with a group of the investor plaintiffs that was premised

2    on the assumption of a certain amount of general unsecured

3    creditors getting paid in full and the rest of the partners

4    being treated on a prorata basis.  And we're saying that the

5    effect of submitting this withdrawal did not enhance their

6    position to that of the other partners and make them an

7    unsecured creditor.

8            So that's what we're seeking a directed ruling on

9    now.

10           THE COURT:  Okay.  All right.  Mr. Baker?

11           MR. BAKER:  Well, Your Honor, first of all, the

12    claim -- we had Claim No. 2 that was submitted.  That claim

13    was submitted as a general unsecured claim.  It was not

14    submitted as an investor claim.  The documentation that the

15    Greens submitted was done in excess of the 45 days, so by

16    December 31st, 2013, under the partnership documents they had

17    withdrawn as a partner.

18           The fact that the partnership did not pay them does

19    not change the status that they had.  They provided the

20    notice.  The notice says you may withdraw, and they withdrew.

21    So as of December 31st, 2013, they're no longer a limited

22    partner.  They are a creditor at that point in time.

23           THE COURT:  Only if there are sufficient net assets

24    as per this agreement.  I asked if that was a defined term.

25           MR. BAKER:  Well, that's a distribution issue.

1     That's not a -- that is not a classification issue.  That's a

2     distribution issue.

3          And the other problem is the fact that Garrison did

4     not honor that does not change this legal status of what my

5     clients were at that point in time.  There's another breach of

6     contract that went on there by Garrison in failing to honor

7     that.  But that doesn't change their status under the

8     partnership documents.  They made a voluntary withdrawal or

9     election to convert their -- to withdraw their interest.  And

10    said:  Okay, pay us now, okay?  As of December 31st.  We

11    submitted it within -- with more than the 45 days, we get

12    paid.

13         The fact they didn't get paid, they're an unsecured

14    creditor like other unsecured creditors in this case.  They're

15    no longer a partner.

16         The provision also says it's in preference -- you

17    get a preference time as far as when you submit it, okay?  And

18    they don't have any upside or downside any further after that

19    point in time.  They are supposed to get paid a specific

20    amount as a creditor.  They're no longer riding along getting

21    up or downsides on the market.

22         MR. RUBIO:  Your Honor, may I address these points?

23         THE COURT:  Whoa, whoa, whoa, whoa, whoa.  Let him

24    finish.

25         MR. BAKER:  And so, and that's the way it was treated

Case 4:17-cv-03567 Document 61 Filed on 05/25/18 in TXSD Page 145 of 203
Case 4:17-cv-03567 Document 61 Filed in TXSD on 04/25/18 Page 189 of 203

1    from the beginning.  We filed an unsecured claim, they were

2    treated as an unsecured claim.  My discussions with Mr. Tow

3    were that it was an unsecured claim.  And I don't know, as far

4    as the discussion that happened in the settlement mediation,

5    this is the first time I've heard.  It's the first time that

6    anything has been conveyed to me that my client was treated as

7    an equity holder when, in fact, nothing had been filed at that

8    time to treat them as an equity holder.  And they had filed a

9    general unsecured claim.  So --

10             THE COURT:  Did you not get notice of the mediation?

11             MR. BAKER:  I don't think we were asked to

12   participate in the mediation.

13             THE COURT:  Okay.  I can understand why.

14             Yes, please, Mr. Rubio.

15             MR. RUBIO:  Thank you.

16             On his first point regarding that he filed a Proof of

17   Claim, all the partners filed Proofs of Claim.  And that's the

18   purpose of the omnibus objection was to reclassify those Proofs

19   of Claim as equity holders and treat them all in a similar

20   manner.

21             With respect to his argument that there's a

22   contractual claim or other claims that derive from his equity

23   interest, this is precisely what Section 510(b) of the

24   Bankruptcy Code is intended to address.  It is when an equity

25   holder has a claim that derives from their equity holders, the

1    Bankruptcy Code doesn't allow that party to improve their

2    status to an unsecured creditor.  It makes that type of claim,

3    any claim that derives -- whether it's a breach of contract

4    claim or any other claim that derives from an equity claim to

5    remain as a status as an equity holder.

6            There's a Fifth Circuit case, the *In Re: American*

7    *Housing*, found 785 5 3rd, 143.  And this case serves for the

8    proposition that Section 510(b) of the Bankruptcy Code serves

9    to effectuate one of the general principals of bankruptcy law,

10   which is that creditors are entitled to be paid ahead of

11   shareholders in distribution of corporate assets.

12           That's what 510(b) is intended for.  It's not

13   intended -- you're not intended to improve your claim as a

14   shareholder by converting your claim and making some sort of

15   contract claim or tort claim that's derived from your equity

16   claim.  And that's exactly what Mr. Reese is trying to do here.

17           THE COURT:  All right.

18           MR. BAKER:  Well, I'd argue --

19           THE COURT:  He's Baker.

20           MR. RUBIO:  I'm sorry.  Mr. Baker.

21           THE COURT:  That's all right.

22           MR. RUBIO:  I'm sorry.

23           THE COURT:  All right.  That's all right.

24           Mr. Baker?

25           MR. BAKER:  Your Honor, under Section 510, that

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 191 of 203

1    section does not specifically address what happened in this

2    case, okay?  My clients did not rescind, they did not do the

3    other things that are specified in 510(b).  And I haven't seen

4    any cases on it.  There may be cases saying all that, but we

5    had -- nobody has actually looked at that issue at this point

6    in time.

7            My clients had a contractual right under the

8    partnership agreement to submit and ask for their money back,

9    which is not unusual, okay?  This was an investment.  The

10   investor said -- or the partnership said:  Look, if you want

11   out of it, you may request to get your money out and we will

12   pay you.  And that's what they did.  They didn't rescind it.

13   They didn't do the other things that are specified in there,

14   okay?  They exercised their rights under the partnership

15   agreement to go on and take their money out and become a

16   creditor.  And that's exactly what they did.

17           THE COURT:  All right.  I am concerned about this for

18   the reason that on appeal the Fifth Circuit seems to think that

19   nothing is actually moot.  And so I can see this being hit as a

20   -- on appeal going to either court and taken up on the merits,

21   even if there's a complete distribution to everybody else.  And

22   so, that's one reason to take briefing on this.

23           I think Mr. Rubio is right.  I am concerned if there

24   are other cases out there that I'm not aware of.  But I think

25   that's the purpose of this.  And especially when a 510,

Case 4:17-cv-03567 Document 76 Filed on 05/25/18 in TXSD Page 148 of 203
Case 4:17-cv-03567 Document 76 Filed in TXSD on 04/25/18 Page 192 of 370

1   especially when the facts are stipulated.  There seems to be no

2   disagreement.

3          So at the risk of having -- seeing this back some day

4   because of the Fifth Circuit's position, there is a value to do

5   a brief opportunity for briefing.  Okay.

6          All right.  So let me -- Mr. Baker, get me a brief by

7   the 14th.  That's next week.  And, Mr. Rubio, respond by the

8   20th.  And give me -- both of you give me either a stipulation

9   or a proposed facts as to the stipulated numbers and as to your

10  legal positions so that this can get done quickly.

11         So, I think that's the most prudent thing to do right

12  now.  And understanding that I am inclined to follow the

13  Trustee.  But I think that's the best idea.

14         MR. RUBIO:  I appreciate it, Your Honor.

15         MR. BAKER:  Okay, Your Honor.

16         THE COURT:  All right.  Any questions?

17         MR. RUBIO:  Just to clarify, we're going to continue

18  all matters?

19         THE COURT:  We're going to continue everything

20  until --

21         MR. RUBIO:  Are we going to set a date for oral

22  argument?

23         THE COURT:  We get -- No, not unless I really have

24  some questions.  But it should get out before the end of

25  September, barring no other catastrophes.

193

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 149 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 193 of 370

22

1          MR. RUBIO:  And then for the -- can we carry the

2    other motions that are on file?  They're all interrelated, so.

3          THE COURT:  I know.

4          MR. RUBIO:  Okay.

5          THE COURT:  Okay.  All right.  Any questions?

6          MR. RUBIO:  Thank you.

7       (Proceeding concluded at 11:32 a.m.)

8                        *  *  *  *  *

9          *I certify that the foregoing is a correct transcript*

10   *to the best of my ability produced from the electronic sound*

11   *recording of the proceedings in the above-entitled matter.*

12    */S./  MARY D. HENRY*

13   *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

14   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

15   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

16   *JTT TRANSCRIPT #57432*

17   *DATE:  SEPTEMBER 20, 2017*

18

19

20

21

22

23

24

25

221

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 150 of 203
Case 4:17-cv-03567 Document 76-1 Filed on TXSD on 04/25/18 Page 221 of 373

Case 4:17-cv-03567 Document 76-1 Filed on TXSD on 04/25/18 Page 221 of 373

EXHIBIT I

# GARRISON MUNICIPAL PARTNERS, LP

*A Texas Limited Partnership*

Limited Partnership Agreement

April 1, 2008

681626.0002 WEST 6213263 v3

222
Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 151 of 203
Case 4:17-cv-03567 Document 76-1 Filed on TXSD on 04/25/18 Page 222 of 373

NOTICE

NEITHER GARRISON MUNICIPAL PARTNERS, LP NOR THE LIMITED PARTNER INTERESTS THEREIN HAVE BEEN OR WILL BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED, OR THE SECURITIES LAWS OF ANY OF THE STATES OF THE UNITED STATES. THE OFFERING OF SUCH LIMITED PARTNER INTERESTS IS BEING MADE IN RELIANCE UPON AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT OF 1933, AS AMENDED, FOR OFFERS AND SALES OF SECURITIES WHICH DO NOT INVOLVE ANY PUBLIC OFFERING, AND ANALOGOUS EXEMPTIONS UNDER STATE SECURITIES LAWS.

THE DELIVERY OF THIS LIMITED PARTNERSHIP AGREEMENT SHALL NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY NOR SHALL THERE BE ANY OFFER, SOLICITATION OR SALE OF INTERESTS IN GARRISON MUNICIPAL PARTNERS, LP IN ANY JURISDICTION IN WHICH SUCH OFFER, SOLICITATION OR SALE IS NOT AUTHORIZED OR TO ANY PERSON TO WHOM IT IS UNLAWFUL TO MAKE SUCH OFFER, SOLICITATION OR SALE.

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE, MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM AND MAY NOT BE SOLD OR OTHERWISE TRANSFERRED EXCEPT IN ACCORDANCE WITH THE REQUIREMENTS AND CONDITIONS SET FORTH IN THIS LIMITED PARTNERSHIP AGREEMENT.

i

# TABLE OF CONTENTS

*Page*

Article I Definitions ........................................................................................................1

Article II Organization...................................................................................................9
2.1     Formation of Limited Partnership................................................................9
2.2     Name of Partnership ..................................................................................10
2.3     Registered Office and Agent......................................................................10
2.4     Term of Partnership ...................................................................................10
2.5     Objectives of Partnership..........................................................................10
2.6     Actions by Partnership...............................................................................10
2.7     Reliance by Third Parties ..........................................................................10
2.8     Liability of Partners ...................................................................................10

Article III Capital .........................................................................................................11
3.1     Contributions to Capital............................................................................11
3.2     Rights of Partners in Capital .....................................................................12
3.3     Capital Accounts .......................................................................................12
3.4     Operation of the Regular Account and Regular Sub-accounts ..................12
3.5     Special Situation Investment Sub-accounts ..............................................13
3.6     Allocations Relating to Restricted Issues and Designated Securities..................14
3.7     Allocation of Management Fees, Withholding Taxes and Certain Other
          Expenditures ..............................................................................................15
3.8     Reserves; Adjustments for Certain Future Events .....................................15
3.9     Performance Allocation .............................................................................16
3.10   Special Allocations....................................................................................16
3.11   Allocation to Avoid Capital Account Deficits...........................................19
3.12   Allocations for Income Tax Purposes........................................................19
3.13   Qualified Income Offset ............................................................................20
3.14   Gross Income Allocation ...........................................................................21
3.15   Individual Partners' Tax Treatment ...........................................................21
3.16   Distributions..............................................................................................21

Article IV Management .................................................................................................21
4.1     Duties and Powers of the General Partner .................................................21
4.2     Management Fees ......................................................................................22
4.3     Expenses ...................................................................................................22
4.4     Rights of Limited Partners ........................................................................24
4.5     Other Activities of Partners ......................................................................24
4.6     Duty of Care; Indemnification..................................................................26
4.7     Fiduciary Duties; Discretion......................................................................27
4.8     Investment Committee...............................................................................28

Article V Admissions, Transfers and Withdrawals .......................................................29
5.1     Admission of Limited Partners ..................................................................29
5.2     Admission of Additional General Partners ................................................29
5.3     Transfer of Interests of Limited Partners ...................................................29

A-150

224
Case 4:17-cv-03547 Document 76-1 Filed on 05/25/18 in TXSD Page 153 of 203
Case 4:17-cv-03547 Document 76-1 Filed on 04/25/18 in TXSD Page 224 of 370

| | | |
|---|---|---|
| 5.4 | Transfer of Interest of the General Partner | 32 |
| 5.5 | Withdrawal of Interests of Partners | 32 |
| 5.6 | Withdrawal of Organizational Limited Partner | 36 |

**Article VI Dissolution and Liquidation** ........................................................... 36
| | | |
|---|---|---|
| 6.1 | Dissolution of Partnership | 36 |
| 6.2 | Liquidation of Assets | 37 |

**Article VII Accounting and Valuations; Books and Records** ............................. 38
| | | |
|---|---|---|
| 7.1 | Accounting and Reports | 38 |
| 7.2 | Valuation of Partnership Assets and Interests | 39 |
| 7.3 | Determinations by the General Partner | 40 |
| 7.4 | Books and Records | 41 |
| 7.5 | Confidentiality | 41 |

**Article VIII General Provisions** ....................................................................... 42
| | | |
|---|---|---|
| 8.1 | Amendment of Partnership Agreement | 42 |
| 8.2 | Special Power of Attorney | 44 |
| 8.3 | Notices | 45 |
| 8.4 | Agreement Binding Upon Successors and Assigns | 45 |
| 8.5 | Governing Law | 45 |
| 8.6 | Not for Benefit of Creditors | 46 |
| 8.7 | Consents | 46 |
| 8.8 | Merger and Consolidation; Division | 46 |
| 8.9 | Interpretation of Partnership Accounting Systems and Terminology | 47 |
| 8.10 | Miscellaneous | 47 |
| 8.11 | Entire Agreement | 47 |

THIS LIMITED PARTNERSHIP AGREEMENT of Garrison Municipal Partners, LP is made as of this 1st day of April, 2008 by and among CMG Management, LP, as General Partner, Charles Monroe Garrison, as Organizational Limited Partner, and those Persons who are hereafter admitted as additional limited partners in accordance with this Agreement.

## Article I
Definitions

For purposes of this Agreement:

"*Adjusted Capital Account Deficit*" means with respect to any Partner, the deficit balance, if any, in such Partner's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

        (i)    credit to such Capital Account any amounts which such Partner is obligated to restore pursuant to the provisions of this Agreement or is deemed to be obligated to restore pursuant to the next to the last sentence of Regulation Sections 1.704-2(g)(1) and 1.704-2(i)(5), after taking into account any changes during such year in partnership minimum gain and partner nonrecourse debt minimum gain; and

        (ii)    debit to such Capital Account the items described in Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6) of the Regulations.

"*Affiliate*" means with respect to any Person, a Person that, directly or indirectly through one or more intermediaries, controls, is controlled by or is under common control with such Person, and the term "Affiliated" has a correlative meaning. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting Securities, by contract or otherwise.

"*Agreement*" means this Limited Partnership Agreement, as amended from time to time.

"*Applicable Rate*" means, with respect to each Partner, a daily rate equal to: the twelve (12) month average for one year Treasury Bills/360 multiplied by the number of days in the applicable period.

"*Authorized Representative*" has the meaning assigned to such term in Section 7.5 hereof.

"*Base Amount*" means an amount determined daily with respect to each Limited Partner for each day during each Performance Period that initially is equal to the balance of such Limited Partner's Capital Account as of the commencement of the Performance Period and that is adjusted as follows:

    (1)    the Base Amount is increased by the amount of any contribution by such Limited Partner to his Capital Account effective as of the date credited thereto; and

    (2)    the Base Amount is decreased by the amount of any withdrawal by or distribution to the Limited Partner effective as of the date charged thereto.

"*Business Day*" means any day on which banks are open for business in New York, New York.

"*Capital Account*" means with respect to each Partner the capital account established and maintained on behalf of such Partner as described in Section 3.3.

"*Carryforward Account*" means a memorandum account to be recorded in the books and records of the Partnership with respect to each Limited Partner that has an initial balance of zero and that is adjusted as follows:

    (1)    As of the first day after the close of each Performance Period for such Limited Partner, the balance of the Carryforward Account (a) is increased by the amount, if any, of such Limited Partner's Negative Performance Change for such Performance Period and (b) is reduced (but not below zero) by the amount, if any, of such Limited Partner's Positive Performance Change for such Performance Period.

    (2)    As of the close of each Performance Period for such Limited Partner, any positive balance of the Carryforward Account is further adjusted if the Capital Account balance of such Limited Partner has been reduced during such Performance Period as a result of a distribution or a partial withdrawal, by reducing such positive balance (but not below zero) by an amount determined by multiplying (a) such positive balance by (b) a fraction, of which (i) the numerator is equal to the amount so distributed or withdrawn, and (ii) the denominator is equal to the balance of such Limited Partner's Capital Account immediately before giving effect to such distribution or withdrawal.

"*Certificate*" means the certificate of limited partnership referred to in Section 2.1.

"*Code*" means the U.S. Internal Revenue Code of 1986, as amended and as hereafter amended, or any successor law.

"*Commencement Date*" means the first date on or as of which a Limited Partner other than the Organizational Limited Partner is admitted to the Partnership.

"*Company Act*" means the Investment Company Act of 1940, as amended.

"*Covered Person*" means the General Partner; each member, shareholder, partner, manager, director, officer, employee or agent of, or any Person who controls, the General Partner; each of the respective Affiliates of the foregoing; each of the respective executors, heirs,

2

assigns, successors or other legal representatives of the foregoing; and each member of the Investment Committee and his or her executors, heirs, assigns, successors or other legal representatives.

"*Designated Securities*" has the meaning assigned to such term in Section 3.6(b) hereof.

"*ERISA*" means the Employee Retirement Income Security Act of 1974, as the same may be amended from time to time.

"*Excluded Partner*" means any Partner designated as such by the General Partner and who has provided evidence satisfactory to the General Partner to the effect that such Partner is legally or otherwise restricted from participating (in whole or in part) in investments in one or more particular Securities.

"*Fiscal Period*" means each period that starts on the Commencement Date (in the case of the initial Fiscal Period) and thereafter on the day immediately following the last day of the preceding Fiscal Period, and that ends on the earliest of the following dates:

> (1)    the last day of any Fiscal Quarter; or

> (2)    any date as of which any withdrawal or distribution of capital is made by or to any Partner or as of which this Agreement provides for any amount to be credited to or debited against the Capital Account of any Partner, other than a withdrawal or distribution by or to, or an allocation to the Capital Accounts of, all Partners that does not result in any change of any Partner's Partnership Percentage; or

> (3)    the date that immediately precedes any day as of which a contribution to capital is accepted by the General Partner from any new or existing Partner; or

> (4)    the date of any Recognition Event with respect to a Special Situation Investment; or

> (5)    any other date that the General Partner selects in its sole discretion.

"*Fiscal Quarter*" means any calendar quarter, unless the General Partner elects another fiscal quarter.

"*Fiscal Year*" means the period commencing on the Commencement Date and ending on March 31, 2008, and thereafter each period commencing on January 1 of each year and ending on December 31 of such year, unless the General Partner elects another fiscal year, provided that any such other fiscal year is permissible for federal income tax purposes.

"*General Partner*" means CMG Management, LP, a Texas limited partnership, any successor thereto, and any Persons hereafter admitted as additional general partners, each in its capacity as a general partner of the Partnership.

"*Interest*" means the entire ownership interest of a Partner in the Partnership at the relevant time, including the right of such Partner to any and all benefits to which a Partner may be entitled as provided in this Agreement, together with the obligations of such Partner to comply with all the terms and provisions of this Agreement.

"*Investment Committee*" has the meaning assigned to such term in Section 4.8 hereof.

"*Limited Partner*" means any Person admitted to the Partnership as a Limited Partner, until the entire Limited Partner Interest of such Person has been withdrawn pursuant to Section 5.5 or a substitute Limited Partner or Partners are admitted with respect to such Person's entire Limited Partner Interest. Except as the context otherwise requires in relation to Management Fees, Performance Allocation, withdrawal rights or other specified terms of this Agreement, the term includes any Special Limited Partner. For all purposes of the TBOC, the Limited Partners constitute a single class or group of limited partners.

"*Managed Account*" means any assets managed by the General Partner or any of its Affiliates, whether for its own account or for the account of any third party, that are invested or available for investment in investment or trading activities, whether or not of the specific type being conducted by the Partnership.

"*Management Fee*" means an amount calculated at an annual rate of 1.0% of the Capital Account balance of each Limited Partner, which amount accrues from the Commencement Date and is payable quarterly in advance on the first day of the current Fiscal Quarter, based on the Capital Account balances of Limited Partners as of the beginning of such Fiscal Quarter (or on the Commencement Date in the case of the Partnership's first Fiscal Quarter). The General Partner has the discretion to reduce or eliminate the Management Fee with respect to any Special Limited Partner.

"*NASD*" means the National Association of Securities Dealers, Inc.

"*NASD-restricted Issues*" has the meaning assigned to such term in Section 3.6(a) hereof.

"*Negative Basis*" means with respect to any Partner and as of any time of calculation, the excess of such Partner's "adjusted tax basis" in its Partnership interest for federal income tax purposes at such time (determined without regard to any adjustments made to such adjusted tax basis by reason of any transfer or assignment of such interest, including by reason of death) over the amount that such Partner is entitled to receive upon withdrawal from or liquidation of the Partnership.

"*Negative Basis Partner*" shall mean any Partner who withdraws from the Partnership and who has Negative Basis as of the effective date of such withdrawal, but such Partner shall cease to be Negative Basis Partner at such time as it shall have received allocations pursuant to Section 3.12(d) equal to such Partner's Negative Basis as of the effective date of the withdrawal and without regard to such Partner's share of the liabilities of the Partnership under Section 752 of the Code.

"*Organizational Limited Partner*" means Charles Monroe Garrison, in his capacity as organizational limited partner.

4

229

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 158 of 203
Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 229 of 303

"*Partner*" means the General Partner or any of the Limited Partners, except as otherwise expressly provided herein, and "*Partners*" means the General Partner and all of the Limited Partners.

"*Partnership*" means the limited partnership formed pursuant to this Agreement.

"*Partnership Percentage*" means a percentage established for each Partner on the Partnership's books as of the first day of each Fiscal Period representing such Partner's share of allocations attributable to transactions involving the Regular Account for such Fiscal Period. The Partnership Percentage of a Partner for a Fiscal Period is determined by dividing the amount of the Partner's Regular Sub-account as of the beginning of the Fiscal Period (after adjustment for all net contributions to the capital of the Partnership and Management Fees that are effective as of such date) by the Regular Account Net Assets as of the beginning of the Fiscal Period (after adjustment for all net contributions to the capital of the Partnership and Management Fees that are effective as of such date). The sum of the Partnership Percentages of all Partners for each Fiscal Period must equal one hundred percent (100%).

"*Performance Allocation*" means, with respect to any Limited Partner to the extent that such Limited Partner's Positive Performance Change determined as of the close of a Performance Period exceeds the Priority Return Amount, twenty percent (20%) of the amount determined as of the close of each Performance Period with respect to each Limited Partner, by which (i) such Limited Partner's Positive Performance Change for such Performance Period , if any, exceeds (ii) any positive balance in such Limited Partner's Carryforward Account as of the most recent prior date as of which any adjustment has been made thereto. The General Partner has the discretion to reduce or eliminate the Performance Allocation with respect to any Special Limited Partner.

"*Performance Change*" means, with respect to each Limited Partner for each Performance Period, the difference between:

(1)     the sum of (a) the balance of such Limited Partner's Capital Account as of the close of the Performance Period (after giving effect to all allocations to be made to such Limited Partner's Capital Account as of such date other than any Performance Allocation to be debited against such Limited Partner's Capital Account), plus (b) any debits to such Limited Partner's Capital Account during the Performance Period to reflect any actual or deemed distributions or withdrawals with respect to such Limited Partner's Interest, plus (c) any debits to such Limited Partner's Capital Account during the Performance Period to reflect any items allocable to such Limited Partner's Capital Account pursuant to Section 3.7(b) or 3.7(c) hereof; and

(2)     the sum of (a) the balance of such Limited Partner's Capital Account as of the commencement of the Performance Period, plus (b) any credits to such Limited Partner's Capital Account during the Performance Period to reflect any contributions by such Limited Partner to the capital of the Partnership.

A-156

230

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 159 of 203
Case 4:17-cv-03567 Document 76-1 Filed on 04/25/18 in TXSD Page 230 of 373

If the amount specified in clause (1) exceeds the amount specified in clause (2) such difference is a "*Positive Performance Change*", and if the amount specified in clause (2) exceeds the amount specified in clause (1), such difference is a "*Negative Performance Change*."

"*Performance Period*" means, with respect to each Limited Partner, the period commencing as of the date of admission of such Limited Partner to the Partnership (in the case of such Limited Partner's initial Performance Period) and thereafter each period commencing as of the day following the last day of the preceding Performance Period with respect to such Limited Partner, and ending as of the close of business on the first to occur of the following after the relevant commencement date:

    (1)    the last day of a Fiscal Year;

    (2)    the withdrawal by such Limited Partner of his entire Interest;

    (3)    the partial withdrawal by such Limited Partner of any portion of his Interest, but only with respect to such withdrawn amount;

    (4)    the admission as a substitute Limited Partner of a Person to whom the entire Interest of such Limited Partner has been Transferred; or

    (5)    the final distribution to such Limited Partner following the dissolution of the Partnership.

"*Person*" means any individual, partnership, corporation, limited liability company, trust, or other entity.

"*Positive Basis*" means, with respect to any Partner and as of any time of calculation, the excess of the amount that such Partner is entitled to receive upon withdrawal from or liquidation of the Partnership over such Partner's "adjusted tax basis" in its Interest for federal income tax purposes at such time (determined without regard to any adjustments made to such adjusted tax basis by reason of any transfer or assignment of such Interest, including by reason of death).

"*Positive Basis Partner*" means any Partner who withdraws from the Partnership and who has Positive Basis as of the effective date of such withdrawal, but such Partner shall cease to be a Positive Basis Partner at such time as he has received allocations pursuant to Section 3.12(c) equal to such Partner's Positive Basis as of the effective date of the withdrawal and with regard to such partner's share of the liabilities of the Partnership under Section 752 of the Code.

"*Priority Return Amount*" means, with respect to each Limited Partner for each Performance Period, the sum of the daily amounts, determined for each day during such Performance Period, obtained by multiplying (1) the Base Amount with respect to such Limited Partner for such day by (2) the Applicable Rate for such day.

"*Recognition Event*" means any of the following:

    (1)    a sale of the Special Situation Investment for cash;

 (2) an exchange of the Special Situation Investment for Securities that are not Special Situation Investments;

 (3) an in-kind distribution of the Special Situation Investment to Partners; or

 (4) at the discretion of the General Partner, if market quotations have become readily available for Securities of the same class and series as the Special Situation Investment, the occurrence of all events necessary to permit the Partnership to make unrestricted public resales of such Special Situation Investment in the principal market for which such quotations are available.

 "*Regular Account*" means a memorandum account to be maintained in the accounting records of the Partnership to reflect the entitlements of all Partners to allocations and distributions attributable to transactions involving all of the Partnership's assets other than transactions involving Special Situation Investments.

 "*Regular Account Net Assets*" means the total value, as determined by the General Partner in accordance with Section 7.2, of all Securities and other assets of the Regular Account (including net unrealized appreciation or depreciation of Securities and accrued interest and dividends receivable net of any withholding taxes), less an amount equal to all accrued debts, liabilities and obligations of the Partnership (including any reserves for contingencies accrued pursuant to Section 3.8). Except as otherwise expressly provided herein, Regular Account Net Assets as of the first day of any Fiscal Period is determined on the basis of the valuation of assets conducted as of the close of the immediately preceding Fiscal Period but after giving effect to any capital contributions made by any Partner subsequent to the last day of such immediately preceding Fiscal Period, and Regular Account Net Assets as of the last day of any Fiscal Period is determined before giving effect to any of the following amounts payable by the Partnership that are effective as of the date on which such determination is made:

 (1) any withdrawals or distributions payable to any Partner that are effective as of the date on which such determination is made;

 (2) any Management Fees payable as of the date on which such determination is made; and

 (3) withholding taxes, expenses of processing withdrawals and other items payable, and any increases or decreases in any reserves or other amounts recorded pursuant to Section 3.8 and any increases or decreases in the value of any NASD-restricted Issues (as defined herein) or Designated Securities pursuant to Section 3.6, during the Fiscal Period ending as of the date on which such determination is made, to the extent the General Partner determines that, pursuant to any provisions of this Agreement, such items are not to be charged ratably to the Regular Sub-accounts of all Partners on the basis of their respective Partnership Percentages as of the commencement of the Fiscal Period.

"*Regular Sub-account*" means a memorandum account to be maintained in the accounting records of the Partnership to reflect the entitlements of each Partner, as adjusted for each Fiscal Period, to allocations and distributions attributable to the Regular Account.

"*Regulations*" means the regulations issued under the Code or any successor law.

"*Restricted Capital Accounts*" has the meaning assigned to such term in Section 3.6(a) hereof.

"*Securities*" means investments, on margin or otherwise, in securities and other financial instruments of the United States and foreign entities, including capital stock; shares of beneficial interest; partnership interests and similar financial instruments; bonds, notes, debentures (whether subordinated, convertible or otherwise); any currencies; commodities; interest rate, currency, commodity, equity and other derivative products, including (i) futures contracts (and options thereon) relating to stock indices, currencies, U.S. Government securities and debt securities of foreign governments, other financial instruments and all other commodities, (ii) swaps, options, warrants, caps, collars, floors and forward rate agreements, (iii) spot and forward currency transactions and (iv) agreements relating to or securing such transactions; equipment lease certificates; equipment trust certificates; loans; accounts and notes receivable and payable held by trade or other creditors; trade acceptances; contract and other claims; executory contracts; participations; open and closed-end investment companies and other mutual funds; money market funds; obligations of the United States or any state thereof, foreign governments and instrumentalities of any of them; commercial paper; repurchase agreements; certificates of deposit; banker's acceptances; trust receipts; and other obligations and instruments or evidences of indebtedness of whatever kind or nature; in each case, of any Person, government or other entity whatsoever, whether or not publicly traded or readily marketable, all without restriction of any kind.

"*Special Limited Partner*" means a Limited Partner with respect to which the General Partner has agreed to a variation or elimination of any of the terms of this Agreement, including without limitation (i) the Management Fee, (ii) the Performance Allocation, (iii) withdrawal rights, or (iv) any combination thereof. The General Partner has the absolute discretion to designate any Limited Partner as a Special Limited Partner, and, subject to any agreement between the General Partner and a Special Limited Partner, to rescind any of the terms that distinguish a Special Limited Partner from a Limited Partner.

"*Special Situation Investment*" means a Security held by the Partnership that is designated by the General Partner, at any time and in its sole discretion, as not readily marketable, until the occurrence of a Recognition Event with respect thereto.

"*Special Situation Investment Sub-accounts*" means memorandum accounts to be maintained in the accounting records of the Partnership on a Partner-by-Partner basis with respect to each particular Special Situation Investment to reflect the entitlement of each Partner (other than a Partner not having any credit balance in its Regular Sub-account at the time of the establishment of the Special Situation Investment Sub-account) to allocations and distributions attributable to Partnership transactions involving such Special Situation Investment.

A-159

"*TBOC*" means the Texas Business Organizations Code, as amended from time to time (or any corresponding provisions of succeeding law).

"*Transfer*" means any sale, exchange, transfer, assignment or other disposition by a Partner of his Interest to another party, whether voluntary or involuntary, including a transfer by operation of law, but not including a pledge of or granting of another form of security interest in any such Interest.

"*Treasury Bill Rate*" means, with respect to any calendar month, a rate of interest, determined and adjusted monthly by the General Partner as of the fifth Business Day of each month, equal to the annual coupon equivalent yield on 13-week U.S. Treasury bills resulting from the most recent auction of such instruments prior to the monthly determination date.

"*Withdrawal Gate*" has the meaning assigned to such term in Section 5.5(d) hereof.

---

**Article II**
Organization

---

2.1    Formation of Limited Partnership

    (a)    The parties hereto hereby agree to form a limited partnership under and pursuant to the TBOC.

    (b)    The General Partner must execute, acknowledge and file with the Secretary of State of the State of Texas a Certificate, any amendments thereto as may be required by the TBOC and any other instruments, documents and certificates which, in the opinion of the Partnership's legal counsel, may from time to time be required by the laws of the United States of America, the State of Texas or any other jurisdiction in which the Partnership determines to do business, or any political subdivision or agency thereof, or which such legal counsel may deem necessary or appropriate to effectuate, implement and continue the valid and subsisting existence and business of the Partnership. The General Partner must cause any required amendment to the Certificate to be filed promptly following the event requiring said amendment. All amendments may be signed by any one or more of the General Partners (as required by the TBOC) and may be signed either personally or by an attorney-in-fact.

    (c)    The parties hereto acknowledge that they intend that the Partnership be taxed as a partnership and not as an association taxable as a corporation for federal income tax purposes. No election may be made to treat the Partnership as other than a partnership for federal income tax purposes.

A-160

234
Case 4:17-cv-03567 Document 76 Filed on 05/25/18 in TXSD Page 163 of 203
Case 4:17-cv-03567 Document 76 Filed on 05/25/18 in TXSD Page 234 of 303

**2.2**     Name of Partnership

The name of the Partnership is Garrison Municipal Partners, LP or such other name as the General Partner may hereafter adopt upon (i) causing an amendment to the Certificate to be filed with the Secretary of State of the State of Texas and (ii) sending notice thereof to the Limited Partners. The Partnership has the exclusive ownership and right to use the Partnership name so long as the Partnership continues, despite the withdrawal, expulsion, resignation or removal of any Limited Partner, but upon the Partnership's termination or at such time as CMG Management, LP or its Affiliate ceases to be a General Partner, the Partnership must assign the name and the goodwill attached thereto to CMG Management, LP or its Affiliate without payment by the assignee(s) of any consideration therefore.

**2.3**     Registered Office and Agent

The street address of the registered office of the Partnership is 5847 San Felipe, Suite 2125 Houston, Texas, 77057-3009, and the name of its registered agent at such address is Charles Monroe Garrison. The General Partner may change the registered office or registered agent of the Partnership at any time in its sole discretion.

**2.4**     Term of Partnership

The term of the Partnership commences on the date on which the Certificate is filed with the Secretary of State of the State of Texas and continues until dissolved pursuant to Section 6.1 hereof (unless its term is extended pursuant to Section 6.1). The legal existence of the Partnership as a separate legal entity continues until the cancellation of the Certificate.

**2.5**     Objectives of Partnership

The Partnership is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Partnership is, engaging in any lawful act or activity for which limited partnerships may be formed under the TBOC and engaging in any and all activities necessary or incidental to the foregoing.

**2.6**     Actions by Partnership

The Partnership may execute, deliver and perform all contracts, agreements and other undertakings and engage in all activities and transactions as may in the opinion of the General Partner be necessary or advisable to carry out its objects.

**2.7**     Reliance by Third Parties

Persons dealing with the Partnership are entitled to rely conclusively upon the power and authority of the General Partner as herein set forth.

**2.8**     Liability of Partners

      (a)     Except as provided herein or by the TBOC, the General Partner has the liabilities of a partner in a partnership without limited partners to Persons other than the

A-161

Partnership and the Limited Partners. Except as provided herein or by the TBOC, the General Partner has the liabilities of a partner in a partnership without limited partners to the Partnership and the Limited Partners.

(b)     In no event will any Limited Partner (or former Limited Partner) be obligated to make any contribution to the Partnership in addition to its agreed capital commitment (or other payments provided for herein) or have any liability for the repayment or discharge of the debts and obligations of the Partnership except to the extent provided herein or as required by law.

**Article III**
Capital

3.1     Contributions to Capital

(a)     The required initial contribution of each Limited Partner (other than the Organizational Limited Partner) to the capital of the Partnership is $1,000,000, or such lesser amount as the General Partner, in its discretion, may permit. The General Partner, in its sole discretion, may increase the required initial minimum investment at any time.

(b)     The Partners may make additional contributions to the capital of the Partnership at such times and in such amounts as the General Partner, in its sole discretion, may permit, but no Limited Partner is obligated to make any additional contribution to the capital of the Partnership, subject to the provisions of Sections 3.7 and 3.8 and any contrary provision of the TBOC.

(c)     The General Partner has the right at any time to make additional contributions to the capital of the Partnership as a Limited Partner or General Partner and, subject to the exception set forth in the following sentence, is required to make additional capital contributions from time to time to the extent necessary to maintain the balance of its Capital Account at an amount that (i) results in the General Partner's Partnership Percentage being not less than one percent (1%) or (ii) is equal to $250,000, whichever is less. Except as provided above or in the TBOC, the General Partner is not required or obligated to make any additional contributions to the capital of the Partnership.

(d)     Except as otherwise permitted by the General Partner in its sole discretion, (i) initial or additional contributions to the capital of the Partnership by each Partner are payable in cash, and (ii) initial contributions are payable in one installment that is due as of the date of admission of such Person as a Limited Partner of the Partnership.

11

(e)    All subscriptions may be subject, at the General Partner's sole discretion, to a sales charge of up to two percent (2%) of the total amount subscribed. All or a portion of any such subscription charge may be paid to authorized dealers, placement agents or independent third parties, other than the General Partner, for services provided in connection with the solicitation of subscriptions. Any applicable subscription charge is deducted from the Limited Partner's capital contribution.

## 3.2    Rights of Partners in Capital

(a)    No Partner is entitled to interest on his contributions to the capital of the Partnership.

(b)    No Partner has the right to the return of any contribution to the capital of the Partnership except (i) upon withdrawal of such Partner pursuant to Section 5.5 or (ii) upon the dissolution of the Partnership pursuant to Section 6.1. The entitlement to any such return at such time is limited to the value of the Capital Account of the Partner. The General Partner is not liable for the return of any such amounts.

## 3.3    Capital Accounts

(a)    The Partnership maintains a separate Capital Account for each Partner. Each Partner's Capital Account reflects the aggregate sum of the balances in such Partner's Regular Sub-account and each Special Situation Investment Sub-account maintained for such Partner.

(b)    Each Partner's Capital Account has an initial balance equal to the amount of any cash and the net value, as determined in accordance with Section 7.2 hereof, of any assets constituting such Partner's initial contribution to the capital of the Partnership (net of any sales charges).

(c)    Each Partner's Capital Account is increased (net of any sales charges) by the amount of cash and the net value, as determined in accordance with Section 7.2 hereof, of any assets constituting additional contributions by such Partner to the capital of the Partnership and decreased by (i) the amount of cash and the net value of any assets withdrawn by and distributed to such Partner and (ii) such Partner's pro rata portion of the expenses payable by the Partnership pursuant to Section 4.3(b).

(d)    Each Partner's Capital Account is adjusted in the manner specified in this Article III to reflect changes in the value of such Partner's Regular Sub-account and in any Special Situation Investment Sub-accounts.

## 3.4    Operation of the Regular Account and Regular Sub-accounts

Except as otherwise expressly provided herein, all capital contributions by a Partner are credited to such Partner's Regular Sub-account, and all withdrawals by or distributions to such

A-163

Partner are debited from such Partner's Regular Sub-account to the extent thereof. In addition, except as otherwise provided in Sections 3.13 and 3.14, any credits or debits not specifically required to be reflected in Special Situation Investment Sub-accounts are reflected in the Regular Account and are allocated among the Regular Sub-accounts of the Partners on the basis of their respective Partnership Percentages at the relevant time.

**3.5**    Special Situation Investment Sub-accounts

(a)    Subject to Section 5.5(e), whenever the Partnership makes a Special Situation Investment, a Special Situation Investment Sub-account is established for each Partner who had a Regular Sub-account at such time to reflect such Partner's pro rata share of all allocations and distributions attributable to transactions involving such Special Situation Investment, based on such Partner's Partnership Percentage at such time. Thereafter, all credits and debits relating to such Special Situation Investment (including those specifically referred to below) are allocated among the Special Situation Investment Sub-accounts in accordance with the Partnership Percentages of the participating Partners existing upon inception of such Special Situation Investment Sub-accounts.

(b)    An amount equal to a Partner's share of the cost of the Special Situation Investment is debited from such Partner's Regular Sub-account balance and credited to each participating Partner's Special Situation Investment Sub-account. In addition, any costs and expenses directly related to the acquisition, ownership or disposition of a Special Situation Investment are allocated exclusively among the Partners who have an interest therein and are reflected by means of (i) a transfer from each of their respective Regular Sub-accounts to each of their respective Special Situation Investment Sub-accounts and (ii) a debit of such item from the Special Situation Investment Sub-accounts. Special Situation Investment Sub-accounts are not adjusted to reflect any change in the value of the Special Situation Investment prior to the occurrence of a Recognition Event with respect to such Special Situation Investment.

(c)    Upon the occurrence of a Recognition Event relating to a Special Situation Investment, the carrying value thereof or the proceeds thereof, as the case may be, are adjusted to reflect the fair value thereof, and the Special Situation Investment Sub-accounts relating to such Special Situation Investment are closed.

(d)    When a Partner's Special Situation Investment Sub-account relating to a particular Special Situation Investment is closed, the balance therein is combined with such Partner's Regular Sub-account, and each Partner's Partnership Percentage is adjusted accordingly. If a Recognition Event affects only a portion of the Security position constituting a single Special Situation Investment, the General Partner sub-divides each affected Special Situation Investment Sub-account and closes only the portion with respect to which the Recognition Event has occurred; provided, however, that the General Partner may postpone taking such action if it believes that one or more Recognition Events affecting the entire remaining Special Situation Investment are reasonably imminent.

(e) If, immediately after a Recognition Event, the Partnership continues to hold the Security that constituted the Special Situation Investment (or a marketable Security that was exchanged for it), then for purposes of determining and allocating future profit or loss associated with that investment, the Partnership will treat such investment as having been purchased in the Regular Account at such time at a purchase price equal to the current fair market value.

**3.6** Allocations Relating to Restricted Issues and Designated Securities

(a) Pursuant to the NASD rules, as governed by FINRA (*"NASD Rules"*), members of FINRA are permitted to sell to the Partnership certain publicly-offered securities ("*Restricted Issues*") only if the Capital Accounts of Partners connected with the securities industry ("*Restricted Capital Accounts*") are restricted from sharing a beneficial interest in such Restricted Issues in accordance with the provisions of such NASD Rules. Notwithstanding the provisions of Section 3.4 above, to enable the Partnership to invest in Restricted Issues, the Partnership shall not allocate any items of income, gain, loss, deduction and credit that relate to investments in Restricted Issues to Restricted Capital Accounts except to the extent permitted by the NASD Rules, and shall instead allocate such items among the other Capital Accounts on a pro rata basis. To the extent the NASD Rules permit certain persons with Restricted Capital Accounts to participate in Restricted Issues, the General Partner will allocate such Restricted Issues among such Restricted Capital Accounts on a pro rata basis. If the time of purchase of an Restricted Issue does not coincide with the commencement of a Fiscal Period, the General Partner may specially allocate a carrying charge to compensate Partners with Restricted Capital Accounts to the extent such Restricted Capital Accounts do not participate in investments in Restricted Issues for the use of Partnership capital to purchase or carry such positions. To the extent consistent with NASD Rules, as amended from time to time, the General Partner shall determine when all Capital Accounts may participate in the net profit and net loss from any Restricted Issue. The General Partner shall value any Restricted issue at such time at the then-current price of the security in the secondary market.

(b) The Partnership may at times purchase certain Securities in which participation by Excluded Partners may be restricted ("*Designated Securities*"). Notwithstanding the provisions of Section 3.4 above, to enable the Partnership to invest in such Designated Securities while limiting an Excluded Partner's participation in Securities that are Designated Securities with respect to such Excluded Partner, the General Partner shall not allocate any items of income, gain, loss, deduction and credit that relate to such Designated Securities to any Excluded Partner with respect to such Designated Securities to the extent required in connection with such Excluded Partner's designation as such, and shall instead allocate such items among the other Capital Accounts on a pro rata basis. If the time of purchase of a Designated Security does not coincide with the commencement of a Fiscal Period, the General Partner may allocate a carrying charge to compensate an Excluded Partner to the extent such Excluded Partner does not participate in such

239

Case 4:17-cv-03557 Document 76-1 Filed on 05/25/18 in TXSD Page 168 of 203
Case 4:17-cv-03557 Document 76-1 Filed in TXSD on 04/25/18 Page 239 of 373

Designated Security for the use of Partnership capital to purchase or carry such positions.

3.7    Allocation of Management Fees, Withholding Taxes and Certain Other Expenditures

(a)    Subject to any special arrangements with Special Limited Partners, as of the first day of each Fiscal Quarter, each Limited Partner's Management Fee for each Fiscal Quarter is debited against the Regular Sub-account of each such Limited Partner. In the case of a Limited Partner having no remaining balance in its Regular Sub-account, the allocable portion of the Management Fee is deferred and is payable upon the closing of any Special Situation Investment Sub-accounts of any such Limited Partner.

(b)    If the Partnership incurs a withholding tax or other tax obligation with respect to the share of Partnership income allocable to any Partner, then the General Partner, without limitation of any other rights of the Partnership or the General Partner, may cause the amount of such obligation to be debited against the Capital Account of such Partner as of the close of the Fiscal Period during which the Partnership pays such obligation. If the amount of such taxes is greater than such Capital Account balance, then such Partner and any successor to such Partner's Interest must pay to the Partnership as a contribution to the capital of the Partnership, upon demand of the General Partner, the amount of such excess. The General Partner is not obligated to apply for or obtain a reduction of or exemption from withholding tax on behalf of any Partner that may be eligible for such reduction or exemption.

(c)    Except as otherwise provided for in the Agreement, any expenditures payable by the Partnership, to the extent determined by the General Partner to have been paid or withheld on behalf of, or by reason of particular circumstances applicable to, one or more but fewer than all of the Partners, are to be charged to only those Partners on whose behalf such payments are made or whose particular circumstances gave rise to such payments. Such charges are debited from the Capital Accounts of such Partners as of the close of the Fiscal Period during which any such items were accrued by the Partnership.

3.8    Reserves; Adjustments for Certain Future Events

(a)    Appropriate reserves may be created, accrued and charged against the Regular Account Net Assets and proportionately against the Capital Accounts of the Partners for contingent liabilities, such reserves to be in the amounts that the General Partner, in its sole discretion, deems necessary or appropriate. The General Partner may increase or reduce any such reserve from time to time by such amounts as the General Partner in its discretion deems necessary or appropriate. At the sole discretion of the General Partner, the amount of any such reserve, or any increase or decrease therein, may be charged or credited, as appropriate, to the Capital Accounts of those parties who are Partners at the time when such reserve is created, increased, or decreased, as the case may be, or

15

alternatively may be charged or credited to those parties who were Partners at the time of the act or omission giving rise to the contingent liability for which the reserve was established.

(b)     If the General Partner in its sole discretion determines that it is equitable to treat an amount to be paid or received as being applicable to one or more prior periods, then such amount may be proportionately charged or credited, as appropriate, to those parties who were Partners during such prior period or periods.

(c)     If any amount is to be charged or credited to a party who is no longer a Partner, such amount must be paid by or to such party, as the case may be, in cash, with interest at the Treasury Bill Rate in effect at that time from the date on which the General Partner determines that such charge or credit is required. In the case of a charge, the former Partner is obligated to pay the amount of the charge, plus interest as provided above, to the Partnership on demand; provided that (i) in no event is a former Partner obligated to make a payment exceeding the amount of its Capital Account at the time to which the charge relates, and (ii) no such demand may be made if the applicable limitation period under the TBOC, if any, has expired. To the extent the Partnership fails to collect, in full, any amount required to be charged to such former Partner pursuant to paragraph (a) or (b) of this Section 3.8, whether due to the expiration of the applicable limitation period, if any, or for any other reason whatsoever, the deficiency may be charged proportionately to the Capital Accounts of the current Partners.

**3.9     Performance Allocation**

(a)     The Performance Allocation is debited against the Capital Account of each Limited Partner as of the last day of each Performance Period with respect to such Limited Partner, and the amount so debited is simultaneously credited to the Capital Account of the General Partner.

(b)     The General Partner, in its sole discretion, may waive or alter the Performance Allocation with respect to Limited Partners that are affiliated with the General Partner and any Special Limited Partners.

(c)     The General Partner is not entitled to receive a Performance Allocation on any assets of the Partnership that are held in a Special Situation Investment Sub-account until such account is liquidated.

**3.10    Special Allocations**

Notwithstanding Section 3.4, the following special allocations shall be made for such taxable period:

(a)     **Limitation on Losses.** Net losses allocated pursuant to Article III, shall not exceed the maximum amount of net losses that can be so allocated without causing any Partner to have an, or to increase an existing, Adjusted Capital Account Deficit at the end of any Fiscal Year. In the event some but not all of the

Limited Partners would have Adjusted Capital Account Deficits as a consequence of an allocation of net losses pursuant to Article III hereof, the limitation set forth in this paragraph shall be applied on a Partner-by-Partner basis so as to allocate the maximum permissible net losses to each Limited Partner under Section 1.704-1(b)(2)(ii)(d) of the Regulations. All net losses in excess of the limitation set forth in this paragraph shall be allocated to the General Partner.

(b)    Partnership Minimum Gain Chargeback. Notwithstanding any other provision of this Article III, if there is a net decrease in partnership minimum gain during any Fiscal Year, each Partner shall be specially allocated items of Partnership income and gain for such year (and, if necessary, subsequent years) in proportion to, and to the extent of, an amount equal to such Partner's share of the net decrease in partnership minimum gain, determined in accordance with Section 1.704-(2)(g)(2) of the Regulations. The items to be so allocated shall be determined in accordance with Section 1.704-2(f) of the Regulations. This Section 3.9(b) is intended to comply with the minimum gain chargeback requirement of the Regulations and shall be interpreted consistently therewith.

(c)    Partner Minimum Gain Chargeback. Notwithstanding any other provision of this Article III except Section 3.10(b), if there is a net decrease in partner minimum gain attributable to a partner nonrecourse debt during any Fiscal Year, each Partner with a share of the partner minimum gain attributable to such partner nonrecourse debt, determined in accordance with Section 1.704-2(i)(5) of the Regulations, shall be specially allocated items of Partnership income and gain for such year (and, if necessary, subsequent years) in proportion to, and to the extent of, an amount equal to such Partner's share of the net decrease in partner minimum gain attributable to such partner nonrecourse debt, determined in accordance with Section 1.704-2(i)(5) of the Regulations. The items to be so allocated shall be determined in accordance with Section 1.704-2(i)(5) of the Regulations. This Section 3.10(c) is intended to comply with the partner minimum gain chargeback requirement of the Regulations and shall be interpreted consistently therewith.

(d)    Qualified Income Offset. In the event any Partner unexpectedly receives any adjustments, allocations or distributions described in Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6) of the Regulations, items of Partnership income and gain shall be specially allocated to each such Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Adjusted Capital Account Deficit of such Partner as quickly as possible, provided that an allocation pursuant to this Section 3.10(d) shall be made only if and to the extent that such Partner would have an Adjusted Capital Account Deficit after all other allocations provided for in this Article III have been tentatively made as if this Section 3.10(d) were not in the Agreement.

(e)    Gross Income Allocation. In the event any Partner has a deficit Capital Account at the end of any Fiscal Year which is in excess of the sum of (i) the amount such Partner is obligated to restore pursuant to any provision of this Agreement, and

(ii) the amount such Partner is deemed to be obligated to restore pursuant to Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), each such Partner shall be specially allocated items of Partnership income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section 3.10(e) shall be made only if and to the extent that such Partner would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article III have been tentatively made as if this Section 3.10(e) and Section 3.10(d) hereof were not in the Agreement.

(f)     Nonrecourse Deductions.  Nonrecourse deductions for any Fiscal Year or other Period shall be specially allocated to the Partners in accordance with their respective Partnership Percentages.

(g)     Partner Nonrecourse Deductions.  Any partner nonrecourse deductions for any Fiscal Year or other period shall be allocated to the Partner who bears the economic risk of loss with respect to the partner nonrecourse debt to which such partner nonrecourse deductions are attributable in accordance with Regulations Section 1.704-2(i).

(h)     To the extent an adjustment to the adjusted tax basis of any Partnership asset, pursuant to Code Section 734(b) or Code Section 743(b) is required, pursuant to Section 1.704-l(b)(2)(iv)(m)(2) or 1.704-l(b)(2)(iv)(m)(4) of the Regulations, to be taken into account in determining Capital Accounts as the result of a distribution to a Partner in complete liquidation of such Partner's Partnership Interest, the amount of such adjustment to Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Partners in accordance with their interests in the Partnership in the event Section 1.704-l(b)(2)(iv)(m)(2) of the Regulations applies, or to the Partner to whom such distribution was made in the event Section 1.704-l(b)(2)(iv)(m)(4) of the Regulations applies.

(i)     Curative Allocations.  The "Regulatory Allocations" consist of the allocations to a Partner (or its predecessor) under Sections 3.10(a), 3.10(b), 3.10(c), 3.10(d), 3.10(e), 3.10(f) and 3.10(g).  Notwithstanding any other provision of this Article III (other than the Regulatory Allocations), the Regulatory Allocations shall be taken into account in allocating other items of income, gain, loss and deduction among the Partners so that, to the extent possible, the net amount of such allocations of other items and the Regulatory Allocations to each Partner shall be equal to the net amount that would have been allocated to each such Partner if the Regulatory Allocations had not occurred.  The General Partner shall have reasonable discretion, with respect to each Fiscal Year, to (i) apply the provisions of this Section 3.10(i) in whatever order is likely to minimize the economic distortions that might otherwise result from the Regulatory Allocations, and (ii) divide all allocations pursuant to this Section 3.10(i) among the Partners in a manner that is likely to minimize such economic distortions.

**3.11**    Allocation to Avoid Capital Account Deficits

To the extent that any debits pursuant to Sections 3.4 through 3.9 hereof would reduce the balance of the Capital Account of any Limited Partner below zero, that portion of any such debits is instead allocated to the Capital Account of the General Partner. Any credits in any subsequent Fiscal Period that would otherwise be allocable pursuant to Section 3.4 through 3.9 hereof to the Capital Account of any Limited Partner previously affected by the application of this Section 3.11 are instead allocated to the Capital Account of the General Partner in such amounts as are necessary to offset all previous debits attributable to such Limited Partner (but allocated to the General Partner) pursuant to this Section 3.11 not previously recovered.

**3.12**    Allocations for Income Tax Purposes

(a)    Except as otherwise required by Code Section 704(c), items of income, gain, deduction, loss, or credit that are recognized for income tax purposes in each Fiscal Year are allocated among the Partners, General and Limited, in such manner as to reflect equitably amounts credited to or debited against each Partner's Capital Account, whether in such Fiscal Year or in prior Fiscal Years. To this end, the Partnership establishes and maintains records that show the extent to which the Capital Account of each Partner, as of the last day of each Fiscal Year, consists of amounts that have not been reflected in the taxable income of such Partner. To the extent deemed by the General Partner, in its sole discretion, to be feasible and equitable, taxable income and gains in each Fiscal Year are allocated among the Partners who have enjoyed the related credits to their Capital Accounts, and items of deduction, loss and credit in each Fiscal Year are allocated among the Partners who have borne the burden of the related debits to their Capital Accounts.

(b)    To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Code Section 734(b) or Code Section 743(b) is required under Regulations Section 1.704-1(b)(2)(iv)(m) to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts is treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss is specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations; provided, in the event that an adjustment to the book value of Partnership property is made as a result of an adjustment pursuant to Section 734(b) of the Code, items of income, gain, loss, or deduction, as computed for book and tax purposes, are specially allocated among the Partners so that the effect of any such adjustment benefits (or is borne by) the Partner(s) receiving the distribution that caused such adjustment.

(c)    If the Partnership realizes net gains or items of gross income from the sale of Partnership assets for federal income tax purposes for any Fiscal Year in which one or more Positive Basis Partners withdraws from the Partnership pursuant to Section 5.5, the General Partner in its sole discretion may elect (i) to allocate such

net gains or items of gross income among such Positive Basis Partners, pro rata in proportion to the respective Positive Basis of each such Positive Basis Partner, until either the full amount of such net gains or items of gross income shall have been so allocated or the Positive Basis of each such Positive Basis Partner shall have been eliminated; and (ii) to allocate any net gains or items of gross income not so allocated to Positive Basis Partners to the other Partners in such manner as shall reflect equitably the amounts credited to such Partners' Capital Accounts pursuant to Section 3.3; provided, however, that if, following such Fiscal Year, the Partnership realizes net gains or items of gross income from a sale of an investment the proceeds of which are designated on the Partnership's books and records as being used to effect payment of all or part of the liquidating share of any Positive Basis Partner, there shall be allocated to such Positive Basis Partner an amount of such net gains or items of gross income equal to the amount, if any, by which his Positive Basis as of the effective date of his withdrawal exceeds the amount allocated to such Partner pursuant to clause (i) of this sentence.

(d)     If the Partnership realizes net losses or items of loss or deduction from the sale of Partnership assets for federal income tax purposes for any Fiscal Year in which one or more Negative Basis Partners withdraws from the Partnership pursuant to Section 5.5, the General Partner may elect: (i) to allocate such net losses or items of loss or deduction among such Negative Basis Partners, pro rata in proportion to the respective Negative Basis of each such Negative Basis Partners, until either the full amount of such losses or items of loss or deduction shall have been so allocated or the Negative Basis of each such Negative basis Partner shall have been eliminated; and (ii) to allocate any net losses or items of loss or deduction not so allocated to Negative Basis Partners to the other Partners in such manner as shall reflect equitably the amounts credited to such Partners' Capital Accounts pursuant to Section 3.3; provided, however, that if, following such Fiscal Year, the Partnership realizes net losses or items of loss and deduction from a sale of an investment the proceeds of which are designated on the Partnership's books and records as being used to effect payment of all or part of the liquidating share of any Negative Basis Partner, there may be allocated to such Negative Basis Partner an amount of such net losses or items of loss or deduction equal to the amount, if any, by which his or its Negative Basis as of the effective date of its withdrawal exceeds the amount allocated to such Partner pursuant to clause (i) of this sentence.

**3.13**     Qualified Income Offset

In the event any Limited Partner unexpectedly receives any adjustments, allocations, or distributions described in Section 1.704-1(b)(2)(ii)*(d)(4)*, 1.704-1(b)(2)(ii)*(d)(5)*, or 1.7041(b)(2)(ii)*(d)(6)* of the Regulations, items of Partnership income and gain will be specially allocated to each such Limited Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the deficit balance in the Capital Account of such Limited Partner as quickly as possible, provided that an allocation pursuant to this Section 3.13 may be made only if and to the extent that such Limited Partner would have a deficit balance in its Capital Account after all other allocations provided for in this Article III have been tentatively

made as if this Section 3.13 were not in the Agreement. This Section 3.13 is intended to constitute a "qualified income offset" within the meaning of Regulations Section 1.704-1(b)(2)(ii), and must be interpreted consistently therewith.

**3.14**     Gross Income Allocation

In the event any Limited Partner has a deficit Capital Account at the end of any Fiscal Year that is in excess of the sum of (i) the amount such Limited Partner is obligated to restore pursuant to any provision of this Agreement and (ii) the amount such Limited Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Regulations Section 1.704-2(g)(1) and 1.704-2(i)(5), each such Limited Partner will be specially allocated items of Partnership income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section 3.14 may be made only if and to the extent that such Limited Partner would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article III have been made as if Section 3.13 hereof and this Section 3.14 were not in the Agreement.

**3.15**     Individual Partners' Tax Treatment

Each Partner agrees not to treat, on any personal income tax return or in any claim for a refund, any item of income, gain, loss, deduction or credit in a manner inconsistent with the treatment of such item by the Partnership.

**3.16**     Distributions

(a)     The amount and timing of any distributions from the Partnership are determined by the General Partner in its sole discretion.

(b)     Notwithstanding any provision to the contrary contained in this Agreement, the Partnership, and the General Partner on behalf of the Partnership, may not make a distribution to any Partner on any account of its Interest if such distribution would violate Section 153.210 of the TBOC or other applicable law.

**Article IV**
Management

**4.1**     Duties and Powers of the General Partner

(a)     Subject to the terms and conditions of this Agreement, the General Partner has complete and exclusive power and responsibility, to the fullest extent permitted by the TBOC (i) for all investment and investment management decisions to be undertaken on behalf of the Partnership and (ii) for managing and administering the affairs of the Partnership, and has the power and authority to do all things that

A-172

246
Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 175 of 203
Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 246 of 373

the General Partner considers necessary or desirable to carry out its duties hereunder and to achieve the purposes of the Partnership.

(b)  Without limiting the generality of the General Partner's duties and obligations hereunder and notwithstanding anything to the contrary contained herein, the General Partner has full power and authority to execute, deliver and perform such contracts, agreements and other undertakings on behalf of the Partnership, without the consent or approval of any other Partner, and to engage in all activities and transactions, as it may deem necessary or advisable for, or as may be incidental to, the conduct of the business and affairs of the Partnership, including, without in any manner limiting the generality of the foregoing, (i) contracts, agreements, undertakings and transactions with any Partner or with any other Person having any business, financial or other relationship with any Partner or Partners, (ii) agreements with each Limited Partner in connection with its purchase of a Limited Partner Interest, including a subscription agreement wherein such Limited Partner agrees to be bound by the terms of this Agreement and (iii) any agreements to induce any Person to purchase a Limited Partner Interest, each without any further act, approval or vote of any Person.

(c)  The General Partner is the tax matters partner for purposes of Section 6231(a)(7) of the Code. The tax matters partner has the exclusive authority and discretion to make any elections required or permitted to be made by the Partnership under any provisions of the Code or any other applicable laws.

**4.2**   Management Fees

The General Partner is entitled to receive from the Partnership as compensation for its services to the Partnership hereunder the Management Fee payable as of the beginning of each Fiscal Quarter.

**4.3**   Expenses

(a)  Subject to Section 4.3 the General Partner pays all of its own operating and over-head costs.

(b)  The Partnership pays all other costs and expenses arising in connection with its operations. Such expenses payable by the Partnership include, without limitation, the following:

(i)  all costs and expenses directly related to portfolio investments or prospective investments of the Partnership, including brokerage commissions and other transaction costs, expenses related to proxies, underwriting and private placements, interest and commitment fees on debt balances or borrowings, borrowing charges on Securities sold short, custody fees and fees of professional advisors and consultants relating to investments or prospective investments;

(ii)    any withholding or transfer taxes imposed on the Partnership or any of its Partners;

(iii)    any governmental, regulatory, licensing, filing or registration fees incurred in compliance with the rules of any self-regulatory organization or any federal, state or local laws;

(iv)    any interest due to Partners in connection with capital withdrawals;

(v)    any legal fees and costs (including settlement costs) arising in connection with any litigation or regulatory investigation instituted against the Partnership or the General Partner in its capacity as such;

(vi)    the cost of the audit of the Partnership's financial statements and the preparation of its tax returns;

(vii)    the fees and expenses of the Partnership's accountants in connection with accounting advice relating to the Partnership's day-to-day affairs and all costs related to the keeping of the books and records of the Partnership;

(viii)    the fees and expenses of the Partnership's counsel in connection with advice directly relating to the Partnership's legal affairs;

(ix)    the costs of any outside appraisers, accountants, bookkeepers, attorneys or other experts engaged by the General Partner as well as other expenses directly related to the Partnership's investment program;

(x)    specific expenses incurred in obtaining systems, research and other information utilized for portfolio management purposes that facilitate valuations and accounting, including the costs of statistics and pricing services, service contracts for quotation equipment and related hardware and software;

(xi)    all costs and expenses associated with the organization of the Partnership and the offering of Interests, including legal and accounting fees, printing costs, travel and out-of-pocket expenses and compliance with any applicable federal and state laws;

(xii)    the costs and expenses of holding any meetings of partners which are required to be held under the terms of this Agreement or by law;

(xiii)    the expenses of the Investment Committee and the members thereof;

(xiv)    the costs of any liability insurance obtained on behalf of the Partnership or the General Partner; and

(xv)    all costs and expenses associated with reporting and providing information to existing and prospective Partners.

23

Any of the above-listed expenses may be specially allocated among the Partners as provided elsewhere in this Agreement. The General Partner is entitled to reimbursement from the Partnership for any of the above expenses paid by it on behalf of the Partnership; provided that, the General Partner may, in its sole discretion, absorb any or all of such expenses incurred on behalf of the Partnership or have an Affiliate of the General Partner absorb such expenses on behalf of the Partnership. If the General Partner or its Affiliate incurs any of the expenses mentioned in Section 4.3(b) above for the account of the Partnership and any other Managed Account, then the General Partner allocates such expense among the Partnership and each such Managed Account in proportion to the size of the investment made by each in the activity or entity to which the expense relates, or in such other manner as the General Partner considers fair and reasonable.

(c)     The General Partner is entitled to use "soft dollars" generated by the Partnership to pay for certain of its own operating and overhead costs, including payment of all or a portion of the General Partner's costs and expenses of operation such as supplies, salaries, employee benefits, telephone, postage, transportation, travel, meals and entertainment, office equipment, news wire and data processing charges, legal and accounting fees, office rent and electricity, quotation services, periodical subscription fees and all other trading related expenses. Use of "soft dollars" by the General Partner as described herein does not constitute a breach by the General Partner of any fiduciary or other duty which the General Partner may be deemed to owe to the Partnership or its Partners.

**4.4     Rights of Limited Partners**

The Limited Partners take no part in the management or control of the Partnership's business and have no right or authority to act for the Partnership or to vote on matters other than the matters set forth in this Agreement or as required by applicable law.

**4.5     Other Activities of Partners**

(a)     The General Partner is not required to devote its full time to the affairs of the Partnership, but must devote such of its time to the business and affairs of the Partnership as it, in its discretion exercised in good faith, determines to be necessary to conduct the affairs of the Partnership for the benefit of the Partnership and the Partners.

(b)     Each Partner agrees that any other Partner and any partner, manager, director, officer, shareholder, member, Affiliate or employee of any Partner, may engage in or possess an interest in other business ventures or commercial dealings of every kind and description, independently or with others, including management of other accounts, investment in, or financing, acquisition and disposition of, Securities, investment and management counseling, brokerage services, serving as directors, officers, advisers or agents of other companies, partners of any partnership, or trustee of any trust, or entering into any other commercial

24

4.5 to the General Partner or the Limited Partners, but may refer the same to any other party or keep such opportunities for their own benefit; and (ii) the Limited Partners and the General Partner and their respective partners, managers, directors, officers, shareholders, members, Affiliates and employees are hereby authorized to engage in activities contemplated by this paragraph (b) of Section 4.5 with, or to purchase, sell or otherwise deal or invest in Securities issued by, companies in which the General Partner might from time to time invest or be able to invest or otherwise have any interest on behalf of the Partnership, without the consent or approval of the Partnership or any other Partner.

(c)    The General Partner must act in a manner that it considers fair, reasonable and equitable in allocating investment opportunities to the Partnership but does not otherwise have any specific obligations or requirements concerning the allocation of time, effort or investment opportunities to the Partnership or any restrictions on the nature or timing of investments for the account of the Partnership, for the General Partner's own account, or for other accounts that the General Partner or its Affiliates may manage. When the General Partner in its sole discretion determines that it would be appropriate for the Partnership and any Managed Account to participate in an investment opportunity, the General Partner must seek to execute orders for the Partnership and any other Managed Accounts on an equitable basis. If the General Partner determines to invest in the same direction in the same Security at the same time for the Partnership and one or more Managed Accounts, the General Partner will generally place orders for all such accounts simultaneously. If all such orders are not filled at the same price, the General Partner will, to the greatest extent possible, allocate the trades such that the order for each account is filled at the same average price. If all such orders cannot be fully executed under prevailing market conditions, the General Partner may allocate the Securities or other assets traded among the Partnership and any Managed Account on a basis that it considers equitable. The principals of the General Partner and the employees and officers thereof and of the organizations Affiliated with the General Partner may buy and sell Securities for their own account or for the account of others, but may not buy Securities from or sell Securities to the Partnership.

(d)    The parties hereto hereby waive, and covenant not to sue on the basis of, any law (statutory, common law or otherwise) respecting the rights and obligations of the Partners inter se which is or may be inconsistent with this Section 4.5.

A-176

**4.6**    Duty of Care; Indemnification

(a)    To the fullest extent permitted under applicable law, no Covered Person is liable to the Partnership or to any of the Partners for any losses, claims, damages or liabilities arising (i) by reason of being or having been a Covered Person or (ii) from any act or omission performed or omitted by the Covered Person in connection with this Agreement or the Partnership's business or affairs (including any error in judgment in making any investment decisions), including losses due to the negligence of brokers or other agents of the Partnership, except for any losses, claims, damages or liabilities primarily attributable to such Covered Person's willful misconduct, recklessness, or gross negligence, as finally determined by a court of competent jurisdiction, or as otherwise required by law. The General Partner is not personally liable to any Limited Partner for the repayment of any positive balance in such Limited Partner's Capital Account or for contributions by such Limited Partner to the capital of the Partnership or by reason of any change in the federal or state income tax laws applicable to the Partnership or its investors.

(b)    The Partnership must, to the fullest extent permitted by applicable law, indemnify and hold harmless each Covered Person against any losses, claims, damages, liabilities, costs or expenses (including legal fees, judgments and amounts paid in settlement) to which such Covered Person may become subject (i) by reason of being or having been a Covered Person or (ii) in connection with any matter arising out of or in connection with this Agreement or the Partnership's business or affairs, unless (A) a court of competent jurisdiction, in a judgment that has become final and that is no longer subject to appeal or review, determines that any such loss, claim, damage, liability, cost or expense is primarily attributable to such Covered Person's willful misconduct, recklessness, or gross negligence or (B) it is determined in accordance with Section 8.101 of the TBOC that such Covered Person did not act in good faith and did not reasonably believe that the Covered Person's conduct was, in the case of the General Partner (in its capacity as a general partner of the Partnership), in the Partnership's best interests or, in all other cases, at least not opposed to the Partnership's best interests. The right to indemnification granted by this Section 4.6(b) is in addition to any rights to which the Covered Person may otherwise be entitled and inures to the benefit of the successors or assigns of such Covered Person. If any Covered Person becomes involved in any capacity in any action, proceeding or investigation in connection with any matter arising out of or in connection with this Agreement or the Partnership's business or affairs, the Partnership must pay (as they are incurred) the Covered Person's legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith after the Partnership receives (i) a written affirmation by the Covered Person of the Covered Person's good faith belief that it has met the standard of conduct necessary for indemnification under this Section 4.6(b) and (ii) a written undertaking by or on behalf of the Covered Person to repay to the Partnership the amount of any such expenses paid to the extent that it is ultimately determined that such Covered Person is not entitled to be indemnified by the Partnership in

251

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 180 of 203
Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 251 of 370

connection with such action, proceeding or investigation as provided in the exceptions contained in the first sentence of this Section 4.6(b) or under applicable law. Any indemnification of or advancement of expenses to a Covered Person will be reported in writing to the Limited Partners not later than six (6) months after the date that the indemnification or advancement of expenses occurs. If for any reason (other than the willful misconduct, recklessness, or gross negligence of such Covered Person) the foregoing indemnification is unavailable to such Covered Person, or insufficient to hold it harmless, then the Partnership must, to the fullest extent permitted by law, contribute to the amount paid or payable by such Covered Person as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect the relative benefits received by the Partnership, on the one hand, and the Covered Person on the other hand or, if such allocation is not permitted by applicable law, to reflect not only the relative benefits referred to above but also any other relevant equitable considerations. In any suit brought to enforce a right to indemnification or to recover an advancement of expenses, the burden of proving that the Covered Person or other Person claiming a right to indemnification is not entitled to be indemnified, or to an advancement of expenses, hereunder is on the Partnership (or any Limited Partner acting derivatively or otherwise on behalf of the Partnership or the Limited Partners). No Covered Person may satisfy any right of indemnity or advancement of expenses granted in this Section 4.6(b) or to which it may be otherwise entitled except out of the assets of the Partnership, and no Partner is personally liable with respect to any such claim for indemnity or advancement of expenses. The General Partner in its sole discretion may obtain appropriate insurance on behalf of the Partnership to secure the Partnership's obligations hereunder.

**4.7**     Fiduciary Duties; Discretion

(a)     To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Partnership or to any Partner, such Covered Person acting under this Agreement is not liable to the Partnership or to any Partner for its good faith reliance on the provisions of this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(b)     To the fullest extent permitted by law, unless otherwise expressly provided for herein, (i) whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or a Limited Partner on the other hand, or (ii) whenever this Agreement or any other agreement contemplated herein or therein provides that the General Partner must act in a manner which is, or provide terms which are, fair and reasonable to the Partnership, or any Limited Partner, the General Partner must resolve such conflict of interest, take such action or provide such terms, considering in each case the relative interest of each party, including its own interest, to such conflict,

A-178

agreement, transaction or situation and the benefits and burdens relating to such interests, any customary or accepted industry practices, and any applicable generally accepted accounting practices or principles. In the absence of bad faith by the General Partner, the resolution, action or terms so made, taken or provided by the General Partner do not constitute a breach of this Agreement or any other agreement contemplated herein or of any duty or obligation of the General Partner at law or in equity or otherwise.

(c)    To the fullest extent permitted by law, whenever in this Agreement a Person is permitted or required to make a decision (i) in its "sole discretion" or "discretion" or under a grant of similar authority or latitude, such Person is entitled to consider only such interests and factors as it desires, including its own interests, and has no duty or obligation to give any consideration to any interest of or factors affecting the Partnership or the Limited Partners, or (ii) in its "good faith" or under another express standard, then such Person acts under such express standard and is not subject to any other or different standards imposed by this Agreement or any other agreement contemplated herein or by relevant provisions of law or in equity or otherwise.

**4.8**    **Investment Committee**

(a)    The General Partner may in its sole discretion appoint a committee (the "Investment Committee") composed of one or more individuals selected from time to time by the General Partner in its sole discretion. No member of the Investment Committee may be an Affiliate of or associated with the General Partner (except as a Limited Partner or as an investor in an Affiliate of the Partnership).

(b)    If established, the Investment Committee will meet with the General Partner from time to time as deemed appropriate by the General Partner in its sole discretion to consult with and advise the General Partner on any matter deemed appropriate by the General Partner in its sole discretion, including any circumstances involving conflicts of interest between the General Partner on the one hand and the Limited Partners and the Partnership on the other.

(c)    The General Partner may in its discretion seek the approval of the Investment Committee in connection with (i) approvals that are or would be required under the Investment Advisers Act of 1940, as amended (including Section 206(3) thereunder) or (ii) any other matter deemed appropriate by the General Partner in its sole discretion. Each Limited Partner agrees that except as otherwise specifically provided herein and to the extent permitted by applicable law, the approval of a majority of the members of the Investment Committee at such time is binding upon the Partnership and each Partner with respect to any approval sought under this Section 4.8(c); provided that, for the avoidance of doubt, the Investment Committee is not entitled to approve any amendment to this Agreement otherwise than in accordance with the provisions of Section 8.1 below.

(d)     Subject to the foregoing, any recommendations of or actions taken by the Investment Committee are advisory only and the General Partner is not required or otherwise bound to act in accordance with any such recommendations or actions.

(e)     In the sole discretion of the General Partner, meetings of the Investment Committee may be held in person or by telephone. Approval of the Investment Committee is deemed to have been given if given by a majority of those members present at a meeting or by a majority of all members of the Investment Committee if given pursuant to a written consent without a meeting.

## Article V
Admissions, Transfers and Withdrawals

**5.1**     Admission of Limited Partners

The General Partner may, at the beginning of each Fiscal Quarter, or at such other times as the General Partner may determine, in its sole discretion, and without advance notice to or consent from the Limited Partners, admit any Person who executes this Agreement or any other writing evidencing the intent of such Person to become a Limited Partner, unless the investment by such Limited Partner in the Partnership would have any of the effects described in clauses (i) through (vi) of Section 5.3(c) herein. The General Partner has the absolute discretion to reject subscriptions for Limited Partner Interests.

**5.2**     Admission of Additional General Partners

(a)     Except as provided in Section 5.2(b), the General Partner may admit one or more Persons to the Partnership as additional general partners only if such action is approved by Limited Partners whose Partnership Percentages represent more than fifty percent (50%) of the aggregate Partnership Percentages of all Limited Partners. No additional general partner may be added unless such additional general partner agrees to be bound by all of the terms of this Agreement or if adding such additional general partner would have any of the effects described in clauses (i) through (vi) of Section 5.3(c) herein.

(b)     Notwithstanding Section 5.2(a), any Person to whom a General Partner has transferred its General Partner Interest in accordance with Section 5.4 will be admitted to the Partnership as a substitute General Partner without the consent of the Limited Partners.

**5.3**     Transfer of Interests of Limited Partners

(a)     Each Limited Partner agrees that he will not make or attempt to make any Transfer of his Interest which would violate this Section 5.3. In the event of any

A-180

254

Case 4:17-cv-03967 Document 61 Filed on 05/25/18 in TXSD Page 183 of 203
Case 4:17-cv-03967 Document 61 Filed on 04/25/18 Page 254 of 370

attempted Transfer of any Limited Partner's Interest in violation of the provisions of this Section 5.3, without limiting any other rights of the Partnership, the General Partner in its sole discretion has the right to require the withdrawal of such Limited Partner's Interest from the Partnership as provided by Section 5.5(h).

(b)     No Transfer of any Limited Partner's Interest, whether voluntary or involuntary, is valid or effective, and no transferee becomes a substituted Limited Partner, unless the prior written consent of the General Partner has been obtained, which consent may be withheld for any reason or for no reason in the sole discretion of the General Partner.  In the event of any Transfer, all of the conditions of the remainder of this Section 5.3 must also be satisfied.

(c)     No Transfer of any Limited Partner's Interest, whether voluntary or involuntary, is valid or effective unless the General Partner in its sole discretion determines, after consultation with legal counsel acting for the Partnership, that such Transfer will not:

(i)     require registration of any Interest under any securities laws of the United States of America, any state thereof or any other jurisdiction;

(ii)    subject the Partnership or the General Partner to a requirement to register, or to additional disclosure or other requirements, under any securities or commodities laws of the United States of America, any state thereof or any other jurisdiction;

(iii)   result in a termination of the Partnership for U.S. federal income tax purposes under Section 708(b)(1)(B) of the Code or cause the Partnership to be treated as a "publicly traded partnership" for U.S. federal income tax purposes under Section 7704(b) of the Code;

(iv)    result in the Partnership being considered an investment company under the Company Act;

(v)     violate or be inconsistent with any representation or warranty made by the transferring Limited Partner at the time the Limited Partner subscribed to purchase an Interest; or

(vi)    result in assets of the Partnership being considered "Plan Assets" for purposes of the Employee Retirement Income Security Act of 1974, as amended.

The transferring Limited Partner, or his legal representative, must give the General Partner written notice before making any voluntary Transfer and after any involuntary Transfer and must provide sufficient information to allow legal counsel acting for the Partnership to make the determination that the proposed Transfer will not result in any of the consequences referred to in clauses (i) through (vi) above.  If an assignment, transfer or disposition occurs by reason of

the death of a Limited Partner or assignee, the notice may be given by the duly authorized representative of the estate of the Limited Partner or assignee. The notice must be supported by proof of legal authority and valid assignment acceptable to the General Partner.

(d)     In the event any Transfer permitted by this Section 5.3 results in multiple ownership of any Limited Partner's Interest, the General Partner in its sole discretion may require one or more trustees or nominees to be designated to represent a portion of or the entire Interest transferred for the purpose of receiving all notices which may be given and all payments which may be made under this Agreement and for the purpose of exercising the rights which the transferor as a Limited Partner had pursuant to the provisions of this Agreement.

(e)     Subsequent to receipt of the consent of the General Partner (which consent may be withheld by the General Partner in its sole discretion), an authorized transferee is entitled to the allocations and distributions attributable to the Interest transferred to such transferee and to transfer such Interest in accordance with the terms of this Agreement; provided, however, that such transferee is not entitled to the other rights of a Limited Partner as a result of such transfer until he becomes a substituted Limited Partner. No transferee, except with the consent of the General Partner (which consent may be withheld in its sole discretion), may become a substituted Limited Partner. If the General Partner withholds consent, a transferee will not have any of the rights of a Limited Partner, except that the transferee will be entitled to receive that share of capital or profits and to have the right of withdrawal to which his transferor would have been entitled and will remain subject to the other terms of this Agreement. A transferring Limited Partner remains liable to the Partnership as provided under applicable law regardless of whether his transferee becomes a substituted Limited Partner. Notwithstanding the above, the Partnership and the General Partner will incur no liability for allocations and distributions made in good faith to the transferring Limited Partner until a written instrument of transfer has been received by the Partnership and recorded on its books and the effective date of the Transfer has passed.

(f)     Any other provision of this Agreement to the contrary notwithstanding, any successor to any Limited Partner's Interest is bound by the provisions hereof. Prior to recognizing any Transfer in accordance with this Section 5.3, the General Partner in its sole discretion may require the transferring Limited Partner to execute and acknowledge an instrument of transfer in form and substance satisfactory to the General Partner, and may require the transferee to make certain representations and warranties to the Partnership and Partners and to accept, adopt and approve in writing all of the terms and provisions of this Agreement. A transferee becomes a substituted Limited Partner and succeeds to the portion of the transferor's Capital Account relating to the Interest transferred effective upon the satisfaction of all of the conditions for such Transfer contained in this Section 5.3.

256

Case 4:17-cv-03565 Document 76-1 Filed on 05/25/18 in TXSD Page 185 of 203
Case 4:17-cv-03565 Document 76-1 Filed on 04/25/18 Page 256 of 370

(g)    In the event of a Transfer or in the event of a distribution of assets of the Partnership to any Partner, the Partnership, in the absolute discretion of the General Partner, may, but is not required to, file an election under Section 754 of the Code and in accordance with the applicable Regulations, to cause the basis of the Partnership's assets to be adjusted for federal income tax purposes as provided by Sections 734 or 743 of the Code.

**5.4**    Transfer of Interest of the General Partner

(a)    The General Partner may not transfer its General Partner Interest other than (i) pursuant to Section 5.4(b), (ii) pursuant to a transaction not deemed to involve an assignment of its investment management obligations within the meaning of the United States Investment Advisers Act of 1940, as amended, or (iii) with the approval of Limited Partners whose Partnership Percentages represent more than fifty percent (50%) of the aggregate Partnership Percentages of all Limited Partners. By executing this Agreement, each Limited Partner is deemed to have consented to any such transfer permitted by clause (ii) of the preceding sentence.

(b)    Notwithstanding Section 5.4(a), the General Partner may transfer its General Partner Interest to any entity managed and controlled by it or its general partner without the consent of the Limited Partners, and the transferee will be admitted to the Partnership as a substitute General Partner in accordance with Section 5.2(b). The General Partner must notify the Limited Partners of any transfer pursuant to this Section 5.4(b).

**5.5**    Withdrawal of Interests of Partners

(a)    The Interest of a Partner may not be withdrawn from the Partnership prior to its dissolution except as provided in this Section 5.5.

(b)    Except as provided in Section 5.5(m), Section 6.1(c) and this Section 5.5(b), and subject to any arrangements with Special Limited Partners, a Limited Partner may voluntarily withdraw all or part of his Limited Partner Interest in the Partnership as of the close of business on the last day of each Fiscal Quarter (or at such other times as the General Partner, in its sole discretion, may determine); provided that as of such withdrawal date, such Limited Partner has held a Limited Partner Interest for at least twelve (12) complete, consecutive calendar months; and provided, further, however, that if withdrawal requests are received as of the close of any Fiscal Quarter for more than 20% of the Regular Account Net Assets as of such Fiscal Quarter end, the General Partner may, in its discretion, reduce all withdrawal requests *pro rata* so that only 20% of the value of the Regular Account Net Assets as of such Fiscal Quarter end is withdrawn. A withdrawal request that is not satisfied as of the intended Fiscal Quarter end because of the foregoing restrictions will be satisfied as of the next Fiscal Quarter end; provided, that, such restrictions do not apply as of such time. Such withdrawal requests will be satisfied in preference to later withdrawal requests subject to the foregoing provisions. Capital not withdrawn from the Partnership by virtue of the foregoing

A-183

restrictions will remain at the risk of the Partnership until the effective withdrawal date. Such Limited Partner must give irrevocable written notice to the General Partner at the principal office of the Partnership at least forty-five (45) days prior to the proposed withdrawal date (or within such other time as the General Partner, in its sole discretion, determines) indicating the amount to be withdrawn from such Partner's Capital Account in such notice. The General Partner may, in its sole discretion, waive the foregoing notice requirement.

(c)     The General Partner may not make any withdrawal from the Partnership if, after giving effect thereto, the value of the General Partner's Capital Account, as a general partner of the Partnership, would be less than the minimum balance required to be maintained pursuant to Section 3.1(c). Subject to the foregoing, the General Partner may voluntarily withdraw part of its Interest (irrespective of whether it be as a general partner or a limited partner of the Partnership) at any time pursuant to this Section 5.5 without giving notice to the Limited Partners.

(d)     The General Partner may limit aggregate withdrawals as of any withdrawal date to a maximum of twenty percent (20)% of aggregate Partner capital (the "*Withdrawal Gate*"). If withdrawal requests exceed Withdrawal Gate for any withdrawal date, each Limited Partner who has submitted a timely request will receive a pro rata portion of the requested withdrawal (based on requested withdrawal amounts), and as to any balance, such balance will be considered a timely withdrawal request with respect to the next withdrawal date without any further action by that Limited Partner. However, no such balance resulting from the Withdrawal Gate will be entitled to priority over other redemption requests on subsequent withdrawal dates and will be further subject to the Withdrawal Gate as well as hold-back for reserves and any suspensions as described in this Section 5.5, if applicable at that time. Notwithstanding the foregoing, the General Partner will honor 100% of a timely withdrawal request prior to or at the end of the fourth quarter following the original withdrawal date, whether or not a Withdrawal Gate is imposed at such time.

(e)     The General Partner, in its sole discretion, may effect withdrawal payments (i) in cash, (ii) by transfer to the Limited Partner of certain portfolio Securities or other assets of the Partnership, whether or not readily marketable, the fair market value of which would satisfy the Limited Partner's request for withdrawal or (iii) in any combination of the foregoing. Except as provided in Sections 5.5(g) and 5.5(j), payment of at least ninety percent (90%) of the estimated amount due to a withdrawing Partner must be made as soon as practicable (but not more than ten (10) Business Days) after the effective date of withdrawal, provided that the General Partner may delay such payment if such delay is reasonably necessary to prevent such withdrawal from having a material adverse impact on the Partnership. Any remaining balance must be paid, without interest thereon, promptly following completion of the audit of the Partnership's financial statements for the Fiscal Year that includes the effective date of withdrawal. The capital to be withdrawn will not participate in new Special Situation Investments made after the relevant withdrawal date. A request for a partial withdrawal is

charged to a Limited Partner's Capital Account attributable to the Regular Account to the extent thereof, unless otherwise agreed with the General Partner.

(f)    The General Partner, in its sole discretion, may deduct from any withdrawal payments or otherwise charge to the withdrawing Limited Partner a withdrawal charge reflecting the actual or estimated cost to the Partnership of complying with and processing such withdrawal. The amount of any charges retained by the Partnership in connection with any withdrawal, net of any actual costs and expenses of processing the withdrawal, is allocated among and credited to the Capital Accounts of the remaining Partners on the commencement of the Fiscal Period immediately following the effective date of the withdrawal in accordance with their respective Partnership Percentages at such time.

(g)    Upon receipt by the General Partner of a Limited Partner's notice of intention to withdraw assets from the Partnership, the General Partner has the absolute discretion to manage the Partnership's assets in a manner which would provide for cash being available to satisfy such Limited Partner's request for withdrawal, but the General Partner is under no obligation to effect sales of Partnership assets if the General Partner, in its sole discretion, determines that such transactions might be detrimental to the interest of the other Partners or that such transactions are not reasonably practicable. In the case of a complete withdrawal, or a partial withdrawal that cannot be fully funded out of the Limited Partner's interest in the Regular Account, no settlements may occur with respect to any of such Limited Partner's Special Situation Investment Sub-accounts until the occurrence of a Recognition Event with respect to any such Special Situation Investment after the scheduled payment date for the withdrawal. If the Recognition Event is a sale for cash, the settlement is funded in cash within 90 days after the Recognition Event (without interest). If the Recognition Event is not a sale for cash, the General Partner may effect the settlement either by making a distribution in kind of the Limited Partner's ratable share of the relevant Security or by distributing the net proceeds derived from a sale of such Securities or other available cash. In connection with any such settlement, a calculation of the Limited Partner's Performance Change through the date of the Recognition Event is made to determine whether any Performance Allocation is to be credited to the General Partner. The General Partner is entitled to withdraw an amount equal to any such Performance Allocation, together with any Management Fees deferred pursuant to Section 3.7(a), at the same time and in the same form (in cash or in kind) as the distribution to the withdrawing Limited Partner.

(h)    The General Partner may, in its sole discretion, require a Limited Partner's Interest to be withdrawn in part or in its entirety from the Partnership and for the Limited Partner to cease to be a Limited Partner of the Partnership pursuant to this Section 5.5, effective as of the end of a Fiscal Period, on not less than 30 days' prior written notice (or not less than 5 days' prior written notice if the General Partner determines in its sole discretion that such Limited Partner's continued participation in the Partnership may cause the Partnership or the General Partner to violate any applicable law). The amount due to any such Partner required to

withdraw from the Partnership is equal to the value of such Partner's Capital Account as of the effective date of the withdrawal net of any charges imposed pursuant to Section 5.5(f) hereof. Settlement of any such withdrawal is effected in accordance with the remaining provisions of this Section 5.5.

(i)     The right of any Partner to withdraw or of any Partner to have distributed an amount from his Capital Account pursuant to the provisions of this Section 5.5 is subject to the provision by the General Partner for all Partnership liabilities and for reserves for contingencies provided for in Section 3.8 herein.

(j)     The General Partner may suspend or restrict the right of any Partner to withdraw capital from the Partnership or to receive a distribution from the Partnership pursuant to this Section 5.5 upon the occurrence of any event that may result in dissolution of the Partnership or at any other time in its sole discretion. The General Partner must promptly notify each Limited Partner who has submitted a withdrawal request and to whom payment in full of the amount being withdrawn has not yet been remitted of any suspension of withdrawal or distribution rights pursuant to this Section 5.5(j). The General Partner, in its sole discretion, may allow any such Partners to rescind their withdrawal request to the extent of any portion thereof for which withdrawal proceeds have not yet been remitted. The General Partner, in its sole discretion, may complete any withdrawals or distributions as of a date after the cause of any such suspension has ceased to exist to be specified by the General Partner as the effective date of withdrawal for all purposes of this Section 5.5 or at any other time.

(k)     A withdrawing Partner does not share in the income, gains and losses of the Partnership or have any other rights as a Partner after the effective date of its withdrawal except as provided in Section 3.8.

(l)     For any partial withdrawal of a Limited Partner Interest, such Limited Partner's Capital Account will be charged with the Performance Allocation at the time of withdrawal in accordance with Section 3.9 on the withdrawn amount on a pro rata basis. Any amounts of Positive Performance Change with respect to which the Performance Allocation was not applied due to the pro rata application of the Performance Allocation shall be included in the Positive Performance Change for the subsequent Performance Period when calculating the Performance Allocation for such subsequent Performance Period.

(m)     Limited Partner Interests held by investment funds managed by the General Partner or any of its Affiliates are not subject to the restrictions on withdrawal described in this Section 5.5.

A-186

Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 189 of 203
260
Case 4:17-cv-03567 Document 76 Filed on 04/25/18 Page 260 of 307

**5.6**     Withdrawal of Organizational Limited Partner

The Organizational Limited Partner withdraws from the Partnership and is entitled to the return of any capital contribution, without interest or deduction, upon the admission of any other Limited Partner.

---

**Article VI**
Dissolution and Liquidation

---

**6.1**     Dissolution of Partnership

(a)     Subject to the TBOC, the Partnership will dissolve and its affairs must be wound up upon the earliest of:

(i)     the written election of the General Partner, in its sole discretion, to dissolve the Partnership, unless within ninety (90) days after the date of such election all of the Limited Partners agree in writing to continue the business of the Partnership;

(ii)     the occurrence of any event that results in the General Partner ceasing to be the general partner of the Partnership under the TBOC, provided that the Partnership will not be dissolved and required to be wound up in connection with any such event if (A) at the time of the occurrence of such event there is at least one remaining general partner of the Partnership who is hereby authorized to and does carry on the business of the Partnership, or (B) within ninety (90) days after the occurrence of such event, all of the Limited Partners agree in writing to continue the business of the Partnership and to the appointment, effective as of the date of such event, if required, of one or more additional general partners of the Partnership;

(iii)     the entry of a decree of judicial dissolution under Section 11.051(5) of the TBOC; and

(iv)     Any other event specified in the TBOC requiring the winding up or termination of a limited partnership.

(b)     Except as provided in Section 6.1(a) or in the TBOC, the death, mental illness, dissolution, termination, liquidation, bankruptcy, reorganization, merger, sale of substantially all of the stock or assets of or other change in the ownership or nature of a Partner, the admission to the Partnership of a new General or Limited Partner, the withdrawal of a Partner from the Partnership, or the transfer by a Partner of his Interest to a third party does not cause the Partnership to dissolve.

A-187

(c) The General Partner must provide the Limited Partners with prompt written notice in the event of the death, incapacity or departure of Charles Monroe Garrison from the general partner of the General Partner. Upon the occurrence of such an event, the Limited Partners will vote either to continue or to dissolve the Partnership. The Partnership will be dissolved upon the vote of Limited Partners whose Partnership Percentages represent more than fifty percent (50%) of the aggregate Partnership Percentages of all Limited Partners.

(d) The parties agree that irreparable damage would be done to the goodwill and reputation of the Partners if any Limited Partner should bring an action in court to dissolve the Partnership. Care has been taken in this Agreement to provide for fair and just payment in liquidation of the Interests of all Partners. Accordingly, each Limited Partner hereby waives and renounces its right to such a court decree of dissolution or to seek the appointment by the court of a liquidator for the Partnership except as provided herein.

**6.2** Liquidation of Assets

(a) Upon dissolution of the Partnership pursuant to Section 6.1(a), the General Partner promptly liquidates the business and administrative affairs of the Partnership, except that if the General Partner is unable to perform this function, a liquidator elected by Limited Partners whose Partnership Percentages represent more than fifty percent (50%) of the aggregate Partnership Percentages of all Limited Partners liquidates the business and administrative affairs of the Partnership.

(b) Upon dissolution of the Partnership pursuant to Section 6.1(c), a trustee that has been pre-appointed by the General Partner liquidates the business and administrative affairs of the Partnership.

(c) Net profit and net loss attributable to the Regular Account during the Fiscal Periods that include the period of liquidation are allocated pursuant to Article III. The proceeds from liquidation are divided in the following manner, subject to the TBOC:

   (i) the debts, liabilities and obligations of the Partnership, other than debts to the Partners as Partners, and the expenses of liquidation (including legal and accounting expenses incurred in connection therewith), up to and including the date that distribution of the Partnership's assets to the Partners has been completed, are first satisfied (whether by payment or the making of reasonable provision for payment thereof);

   (ii) such debts as are owing to the Partners as Partners are next paid; and

   (iii) the Partners are next paid liquidating distributions (in cash, securities, or other assets, whether or not readily marketable) pro rata in accordance with, and up to the positive balances of their respective Capital Accounts,

as adjusted pursuant to Article III to reflect allocations for the Fiscal Period ending on the date of the distributions under this Section 6.2(c)(iii).

(d) Notwithstanding anything in this Section 6.2 to the contrary and subject to the priorities set forth in the TBOC, the General Partner, liquidator or trustee, as the case may be, may distribute ratably in-kind rather than in cash, upon dissolution, any assets of the Partnership; provided, however, that if any in-kind distribution is to be made, (i) the assets distributed in kind must be valued pursuant to Section 7.2 as of the actual date of their distribution, and charged as so valued and distributed against amounts to be paid under Section 6.2(c) above and (ii) any gain or loss (as computed for book purposes) attributable to property distributed in-kind must be included in the net profit or net loss attributable to the Regular Account for the Fiscal Period ending on the date of such distribution.

---

## Article VII
### Accounting and Valuations;
### Books and Records

---

**7.1** Accounting and Reports

(a) The Partnership may adopt for tax accounting purposes any accounting method that the General Partner decides in its sole discretion is in the best interests of the Partnership and that is permissible for federal income tax purposes.

(b) As soon as practicable after the end of each Fiscal Year, the General Partner causes an audit of the financial statements of the Partnership as of the end of each such Fiscal Year to be made by a firm of certified public accountants selected by the General Partner in its sole discretion; and as soon as is practicable thereafter but subject to Section 7.5, a copy of a set of financial statements prepared on a basis that uses generally accepted accounting principles as a guideline (with such adjustments thereto as the General Partner determines appropriate in its sole discretion), including the report of such certified public accountants, is furnished to each Partner.

(c) As soon as practicable following the end of each Fiscal Quarter but subject to Section 7.5, the General Partner arranges for the preparation and delivery to each Limited Partner of an interim report containing such information concerning the affairs of the Partnership (which need not include any financial statements) as the General Partner considers appropriate.

(d) As soon as practicable after the end of each taxable year, the General Partner furnishes to each Limited Partner such information as may be required to enable each Limited Partner properly to report for federal and state income tax purposes

A-189

his distributive share of each Partnership item of income, gain, loss, deduction or credit for such year.

**7.2**      Valuation of Partnership Assets and Interests

(a)      The General Partner must value or have valued the Securities and other assets of the Partnership as of the close of business on the last day of each Fiscal Period and on any other date selected by the General Partner in its sole discretion. In addition, the General Partner must value Securities that are being distributed in kind as of their date of distribution in accordance with Section 6.2(d). In determining the value of the assets of the Partnership, no value is placed on the goodwill or name of the Partnership, or the office records, files, statistical data or any similar intangible assets of the Partnership not normally reflected in the Partnership's accounting records, but there must be taken into consideration any related items of income earned but not received, expenses incurred but not yet paid, liabilities fixed or contingent, prepaid expenses to the extent not otherwise reflected in the books of account, and the value of options or commitments to purchase or sell Securities pursuant to agreements entered into on or prior to such valuation date. Valuation of Securities made pursuant to this Section 7.2 must be based on all relevant factors and is expected to comply generally with the following guidelines:

(i)      The market value of each Security listed or traded on any recognized U.S. securities exchange is the last reported sale price at the relevant valuation date on the composite tape or on the principal exchange on which such Security is traded. If no such sale of such Security was reported on that date, the market value is the last reported bid price (in the case of Securities held long), or last reported ask price (in the case of Securities sold short). The market value of any Security designated as a United States Nasdaq National Market Security is determined in like manner by reference to the last reported sale price or, if none is available, to the last reported bid price (in the case of Securities held long), or last reported ask price (in the case of Securities sold short).

(ii)      Dividends declared but not yet received, and rights in respect of Securities that are quoted ex-dividend or ex-rights, are recorded at the fair value thereof, as determined by the General Partner, which may (but need not) be the value so determined on the day such Securities are first quoted ex-dividend or ex-rights.

(iii)      Listed options, or over-the-counter options for which representative brokers' quotations are available, are valued in the same manner as listed or over-the-counter Securities as hereinabove provided. Premiums for the sale of such options written by the Partnership are included in the assets of the Partnership, and the market value of such options is included as a liability.

(iv)     Special Situation Investments are generally valued at historical cost, subject to the General Partner's discretion to estimate the fair value of any Special Situation Investment (except for purposes of calculating the Performance Change with respect to any Limited Partner other than a Limited Partner receiving a distribution in kind of such Special Situation Investment) in accordance with generally accepted accounting principles.

(b)     The fair value of any assets not referred to in paragraph (a) (or the valuation of any assets referred to therein in the event that the General Partner determines in its sole discretion that market prices or quotations do not fairly represent the value of particular assets) is determined by or pursuant to the direction of the General Partner. In these circumstances, the General Partner will attempt to use consistent and fair valuation criteria and may (but is not required to) obtain independent appraisals at the expense of the Partnership. In the absence of bad faith or manifest error, the General Partner's net asset valuations are conclusive and binding on all Partners.

(c)     Except as otherwise determined by or at the direction of the General Partner, investment and trading transactions are accounted for on the trade date. Accounts are maintained in U.S. dollars and except as otherwise determined by or at the direction of the General Partner: (i) assets and liabilities denominated in currencies other than U.S. dollars are translated at the rates of exchange in effect at the close of the Fiscal Period (and exchange adjustments are recorded in the results of operations); and (ii) investment and trading transactions and income and expenses are translated at the rates of exchange in effect at the time of each transaction.

(d)     The value of each Security and other asset of the Partnership and the net worth of the Partnership as a whole determined pursuant to this Section 7.2 are conclusive and binding on all of the Partners and all parties claiming through or under them.

**7.3     Determinations by the General Partner**

(a)     All matters concerning the determination and allocation among the Partners of the amounts to be determined and allocated pursuant to Sections 3.4 through 3.12 hereof, including any taxes thereon and accounting procedures applicable thereto, are determined by the General Partner unless specifically and expressly otherwise provided for by the provisions of this Agreement, and such determinations and allocations are final and binding on all the Partners.

(b)     The General Partner may make such adjustments to the computation of any of the memorandum accounts maintained pursuant to this Agreement, the Performance Change with respect to any Limited Partner, or any component items comprising any of the foregoing as it considers appropriate to reflect the financial results of the Partnership and the intended allocation thereof among the Partners in a reasonably accurate, fair and efficient manner.

A-191

265

Case 4:17-cv-03567 Document 761 Filed on 05/25/18 in TXSD Page 194 of 203
Case 4:17-cv-03567 Document 761 Filed in TXSD on 04/25/18 Page 269 of 370

**7.4**     **Books and Records**

    (a)     The General Partner must keep books and records pertaining to the Partnership's affairs showing all of its assets and liabilities, receipts and disbursements, realized income, gains and losses, Partners' Capital Accounts and all transactions entered into by the Partnership. Such books and records of the Partnership must be kept at the Partnership's office or at the office of an agent of the Partnership.

    (b)     Except to the extent provided in Section 7.1, each Limited Partner agrees that the General Partner is entitled to preserve the confidentiality of the information contained in the books and records of the Partnership to the maximum extent permitted by law, and each Limited Partner waives, and covenants not to assert, any claim or entitlement whatsoever to gain access to any such information, including any information relating to any other Limited Partner or the Partnership's trading activity.

**7.5**     **Confidentiality**

    (a)     Each Limited Partner agrees to keep confidential, and not to make any use of (other than for purposes reasonably related to its Interest or for purposes of filing such Limited Partner's tax returns) or disclose to any Person, any information or matter relating to the Partnership and its affairs and any information or matter related to any investment of the Partnership (other than disclosure to such Limited Partner's directors, employees, agents, advisors, or representatives responsible for matters relating to the Partnership or to any other Person approved in writing by the General Partner (each such Person being hereinafter referred to as an "*Authorized Representative*")); provided that (i) such Limited Partner and its Authorized Representatives may make such disclosure to the extent that (x) the information to be disclosed is publicly known at the time of proposed disclosure by such Limited Partner or Authorized Representative, (y) the information otherwise is or becomes legally known to such Limited Partner other than through disclosure by the Partnership or the General Partner, or (z) such disclosure is required by law or in response to any governmental agency request or in connection with an examination by any regulatory authorities (provided that such agency, regulatory authorities or association is aware of the confidential nature of the information disclosed), (ii) such Limited Partner and its Authorized Representatives may make such disclosure to such Limited Partner's beneficial owners to the extent required under the terms of its arrangements with such beneficial owners, and (iii) such Limited Partner (and each employee, representative, or other agent of the Limited Partner) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of an investment in the Partnership and all material of any kind (including opinions or other tax analyses that are provided to the Limited Partner relating to such tax treatment and tax structure). Prior to making any disclosure required by law, each Limited Partner must use its best efforts to notify the General Partner of such disclosure. Prior to any disclosure to any Authorized Representative or beneficial

41

owner, each Limited Partner must advise such Authorized Representative or beneficial owner of the obligations set forth in this Section 7.5(a).

(b)     The General Partner has the right to keep confidential from the Limited Partners, for such period of time as the General Partner in its sole discretion deems reasonable, any information which the General Partner in its sole discretion reasonably believes to be in the nature of trade secrets or other information the disclosure of which the General Partner in its sole discretion believes is not in the best interests of the Partnership or could damage the Partnership or its business or which the Partnership is required by law or agreement with a third party to keep confidential.

(c)     The General Partner may, in its sole discretion, disclose to any of the Partnership's prospective investors such information relating to the Partnership or the Partnership's investments as the General Partner believes in good faith will benefit the Partnership and facilitate an investment in the Partnership by such prospective investors.

**Article VIII**
General Provisions

**8.1**     Amendment of Partnership Agreement

(a)     Except as otherwise provided in this Section 8.1, this Agreement may be amended, in whole or in part, with the written consent of (i) the General Partner and (ii) Limited Partners whose Partnership Percentages represent more than fifty percent (50%) of the aggregate Partnership Percentages of all Limited Partners.

(b)     Any amendment that would:

(i)      increase the obligation of such Partner to make any contribution to the capital of the Partnership,

(ii)     reduce the Capital Account of such Partner other than in accordance with Article III, or

(iii)    change the provisions of Sections 3.4 through 3.12, 5.5 or 6.2 to alter any such Partner's rights with respect to allocations of profit or loss or with respect to distributions and withdrawals,

may only be made if the prior written consent of each Partner adversely affected thereby is obtained.

A-193

(c)    Notwithstanding paragraphs (a) and (b) of this Section 8.1, this Agreement may be amended by the General Partner, in its sole discretion, without the consent of the Limited Partners, at any time and without limitation, if any Limited Partner objecting to such amendment has an opportunity to withdraw from the Partnership as of a date determined by the General Partner that is not less than forty-five (45) days after the General Partner has delivered written notice of such amendment to each Limited Partner and that is prior to the effective date of the amendment.

(d)    The General Partner in its sole discretion may at any time without the consent of the other Partners:

(i)    add to the representations, duties or obligations of the General Partner or surrender any right or power granted to the General Partner under this Agreement, for the benefit of the Limited Partners;

(ii)    cure any ambiguity or correct or supplement any conflicting provisions of this Agreement;

(iii)    make any changes to this Agreement so long as such changes do not adversely affect the rights or obligations of any Limited Partner;

(iv)    make any changes required by any governmental body or agency that is deemed to be for the benefit or protection of the Limited Partners; provided, that no such amendment referred to in this paragraph (iv) may be made unless it is for the benefit of, or not adverse to, the interests of the Limited Partners, such change does not affect the right of the General Partner to manage and control the Partnership's business, does not affect the allocation of profits and losses among the Partners, and does not affect the limited liability of the Limited Partners;

(v)    amend this Agreement to reflect a change in the identity of the General Partner following a transfer of a General Partner's Interest in accordance with the terms of this Agreement;

(vi)    amend this Agreement (other than with respect to the matters set forth in Section 8.1(b)) to effect compliance with any applicable law or regulation (including the Investment Advisers Act of 1940, as amended, and ERISA); and

(vii)    restate this Agreement together with any amendments hereto that have been duly adopted in accordance herewith to incorporate such amendments in a single, integrated document.

(e)    The General Partner must give written notice of any proposed amendment to this Agreement (other than any amendment of the type contemplated by clauses (d)(ii), (d)(iii), (d)(v) or (d)(vii) of Section 8.1) to all of the Limited Partners, which notice must set forth (i) the text of the proposed amendment or (ii) a

summary thereof and a statement that the text thereof will be furnished to any Limited Partner upon request.

(f)    The General Partner has the absolute discretion to agree with a Limited Partner to waive or modify the application of any provision of this Agreement with respect to such Limited Partner without obtaining the consent of any other Limited Partner (other than a Limited Partner who is materially and adversely affected by such waiver or modification).

**8.2**    Special Power of Attorney

(a)    Each Partner hereby irrevocably makes, constitutes and appoints the General Partner (and each of its successors and permitted assigns), with full power of substitution, the true and lawful representative and attorney-in-fact of, and in the name, place and stead of, such Partner with the power from time to time to make, execute, sign, acknowledge, swear to, verify, deliver, record, file or publish:

(i)    an amendment to this Agreement that complies with the provisions of this Agreement (including the provisions of Section 8.1);

(ii)    the Certificate and any amendment thereof required because this Agreement is amended, including an amendment to effectuate any change in the membership of the Partnership or in the capital contributions of the Partners; and

(iii)    all such other instruments, documents and certificates which, in the opinion of legal counsel to the Partnership, may from time to time be required by the laws of the United States of America, the State of Texas, or any other jurisdiction in which the Partnership determines to do business, or any political subdivision or agency thereof, or which such legal counsel may deem necessary or appropriate to effectuate, implement and continue the valid and subsisting existence and business of the Partnership as a limited partnership or to effect the dissolution or termination of the Partnership.

(b)    Each Limited Partner is aware that the terms of this Agreement permit certain amendments to this Agreement to be effected and certain other actions to be taken or omitted by or with respect to the Partnership without his consent. If an amendment of the Certificate or this Agreement or any action by or with respect to the Partnership is taken by the General Partner in the manner contemplated by this Agreement, each Limited Partner agrees that, notwithstanding any objection which such Limited Partner may assert with respect to such action, the General Partner in its sole discretion is authorized and empowered, with full power of substitution, to exercise the authority granted above in any manner which may be necessary or appropriate to permit such amendment to be made or action lawfully taken or omitted. Each Partner is fully aware that each other Partner relies on the effectiveness of this special power-of-attorney with a view to the orderly

A-195

administration of the affairs of the Partnership. This power-of-attorney is a special power-of-attorney and is coupled with an interest in favor of the General Partner and as such:

(i)     is irrevocable and continues in full force and effect notwithstanding the subsequent death or incapacity of any party granting this power-of-attorney, regardless of whether the Partnership or the General Partner has had notice thereof; and

(ii)    survives the delivery of an assignment by a Limited Partner of the whole or any portion of his Interest, except that where the assignee thereof has been approved by the General Partner for admission to the Partnership as a substituted Limited Partner, this power-of-attorney given by the assignor survives the delivery of such assignment for the sole purpose of enabling the General Partner to execute, acknowledge and file any instrument necessary to effect such substitution.

**8.3**    Notices

Notices which may or are required to be given under this Agreement by any party to another are given by hand delivery, transmitted by telecopier facsimile or by registered or certified mail, return receipt requested, and are addressed to the respective parties hereto at their addresses as set forth on the register of Partners maintained by the General Partner or to such other addresses or facsimile numbers as may be designated by any party hereto by notice addressed to (i) the General Partner, in the case of notice given by any Limited Partner, and (ii) each of the Limited Partners, in the case of notice given by the General Partner. Notices are deemed to have been given when delivered by hand or transmitted by telecopier facsimile or on the date indicated as the date of receipt on the return receipt.

**8.4**    Agreement Binding Upon Successors and Assigns

This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors, but the rights and obligations of the Partners hereunder are not assignable, transferable or delegable except as provided herein, and any attempted assignment, transfer or delegation thereof which is not made pursuant to the terms hereof is void.

**8.5**    Governing Law

This Agreement and the rights of the Partners hereunder are governed by and construed in accordance with the laws of the State of Texas, without regard to the conflict of laws rules thereof. The parties hereby consent to exclusive jurisdiction and venue for any action arising out of this Agreement in Harris County, Texas. Each Partner consents to service of process in any action or proceeding involving the Partnership by the mailing thereof by registered or certified mail, postage prepaid, to such Partner's mailing address set forth in the register of Partners maintained by the General Partner.

A-196

**8.6**     Not for Benefit of Creditors

      The provisions of this Agreement are intended only for the regulation of relations among Partners and between Partners and former or prospective Partners and the Partnership. This Agreement is not intended for the benefit of non-Partner creditors and no rights are granted to non-Partner creditors under this Agreement.

**8.7**     Consents

      Any and all consents, agreements or approvals provided for or permitted by this Agreement must be in writing and a signed copy thereof must be filed and kept with the books of the Partnership.

**8.8**     Merger and Consolidation; Division

      (a)     The Partnership may merge or consolidate with or into one or more limited partnerships formed under the TBOC or other business entities pursuant to an agreement of merger or consolidation that has been approved by the General Partner and Limited Partners whose Partnership Percentages represent more than fifty percent (50%) of the aggregate Partnership Percentages of all Limited Partners.

      (b)     Notwithstanding anything to the contrary contained elsewhere in this Agreement, an agreement of merger or consolidation approved in accordance with Section 8.8(a) hereof may (i) effect any amendment to this Agreement, (ii) effect the adoption of a new partnership agreement for the Partnership if it is the surviving or resulting limited partnership in the merger or consolidation, or (iii) provide that the partnership agreement of any other constituent partnership to the merger or consolidation (including a limited partnership formed for the purpose of consummating the merger or consolidation) is the partnership agreement of the surviving or resulting limited partnership.

      (c)     The General Partner has the authority to effect a transaction, without the consent of any Limited Partner, having the effect of splitting the Partnership into two separate entities, one of which is excluded from the definition of "investment company" pursuant to Section 3(c)(1) of the Company Act and the other of which is so excluded pursuant to Section 3(c)(7) of the Company Act, provided that (i) such transaction does not result in any material change in the rights, privileges and obligations of any Limited Partner, (ii) each Limited Partner's indirect beneficial interest in the net assets of the surviving entity of which such Limited Partner is a beneficial owner is substantially identical to such indirect beneficial interest in the net assets of the Partnership immediately prior to such transaction and (iii) there is no material difference between the Partnership and each surviving entity other than investor eligibility requirements relating to the Company Act exclusion on which the surviving entity relies.

A-197

**8.9** Interpretation of Partnership Accounting Systems and Terminology

In the event that the Partnership employs an accounting system which is different from the accounting system of the General Partner or whose terminology does not conform precisely to the terminology in this Agreement, the General Partner shall have the authority to interpret such accounting system and/or terminology in a manner which it, in its sole discretion, determines to be consistent with the objectives of this Agreement.

**8.10** Miscellaneous

    (a)    The captions and titles preceding the text of each Section hereof are disregarded in the construction of this Agreement.

    (b)    This Agreement may be executed in counterparts, each of which is deemed to be an original hereof.

    (c)    In the event an ambiguity or question of intent or interpretation arises, the Partners intend that this Agreement be construed as if drafted jointly by the Partners and that no presumption or burden of proof arise favoring or disfavoring any Partner by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law is deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" means including without limitation. The word "or" is not exclusive. All words used in this Agreement are construed to be of such gender or number as the circumstances require.

    (d)    The Partners intend that each representation, warranty, and covenant contained herein has independent significance. If any Partner has breached any representation, warranty, or covenant contained herein in any respect, the fact that there exists another representation, warranty, or covenant relating to the same subject matter (regardless of the relative levels of specificity) that such Partner has not breached does not detract from or mitigate the fact that such Partner is in breach of the first representation, warranty, or covenant.

    (e)    If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

**8.11** Entire Agreement

This Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto. It being acknowledged and agreed that the General Partner on its own behalf or on behalf of the Partnership without the consent or approval of any other Partner may enter into written agreements (each, an "*Other Agreement*") with Limited Partners, executed contemporaneously with the admission of such Limited Partners to the Partnership, affecting the

A-198

terms hereof in order to meet certain requirements of such Limited Partners. The parties hereto agree that any terms contained in an Other Agreement with a Limited Partner govern with respect to such Limited Partner notwithstanding the provisions of this Agreement.

[SIGNATURE PAGE FOLLOWS]

273
Case 4:17-cv-03567 Document 76-1 Filed on 05/25/18 in TXSD Page 202 of 203
Case 4:17-cv-03567 Document 76-1 Filed in TXSD on 04/25/18 Page 272 of 373

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first-above written.

GENERAL PARTNER:

CMG Management, LP

By:    Garrison Capital Management, LLC, its
       General Partner

       By:
       Name:  Charles Monroe Garrison
       Title:   Manager

LIMITED PARTNERS:

By:    CMG Management, LP , Attorney-in-fact
       for the Limited Partners

       By:    Garrison Capital Management, LLC,
           its General Partner

           By:
           Name: Charles Monroe Garrison
           Title:  Manager

ORGANIZATIONAL LIMITED PARTNER:

Charles Monroe Garrison

# 11 U.S.C. § 510(b)

---

11 U.S.C. § 510. Subordination.

\*\*\*

(b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.