Case No. 4:17-cv-03567

In the United States District Court for the Southern
District of Texas, Houston Division

---

In re Garrison Municipal Partners, L.P., *Debtor.*

Don & Kay Green, *Appellants.*

---

On appeal from the United States Bankruptcy Court for
the Southern District of Texas, Houston Division

Case No. 14-32867

---

**Reply Brief of Appellants Don & Kay Green**

---

Reese Baker
Baker & Associates
Texas State Bar No. 01587700
950 Echo Lane, Suite 200
Houston, Texas 77024
(713) 979-2279
Fax: (713) 869-9100
Email: courtdocs@bakerassociates.net

COUNSEL FOR APPELLANTS DON & KAY GREEN

# Table of Contents

Summary of the Argument.....................................................................................4

Argument...............................................................................................................6

    A.    The Trustee's Statements of Law Do Not Apply
            So as to Subject Redemption Claims to Mandatory Subordination..............6

    B.    There Is No Appropriate Basis on Which to Distinguish the Greens'
            Claim from the Redemption Claims in *SeaQuest* ......................................11

    C.    *SeaQuest*'s Treatment of Redemption Claims Is Entitled to Substantial
            Deference ...................................................................................................19

Conclusion ..........................................................................................................23

Certificate of Service ..........................................................................................24

Certificate of Compliance with Rule 8015(a)(7)(B)...........................................24

# Table of Authorities

## Cases

*Burtch v. Gannon (In re Cybersight LLC)*,
   2004 WL 2713098, 2004 U.S. Dist. LEXIS 24426
   (D. Del. Nov. 17, 2004) ........................................................................... 8, 9, 14

*Gochicoa v. Johnson*,
   238 F.3d 278 (5th Cir. 2000) ........................................................................... 20

*Montgomery Ward Holding Corp. v. Schoeberl*
   *(In re Montgomery Ward Holding Corp.)*,
   272 B.R. 836 (Bankr. D. Del. 2001) ................................................................. 8

*Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*,
   361 B.R. 369 (Bankr. S.D.N.Y. 2007) ............................................................ 8

*Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs.*
   *(In re Mobile Tool Int'l, Inc.)*,
   306 B.R. 778 (Bankr. D. Del. 2004) ................................................................. 8

*Pensco Trust Co. v. Tristar Esperanza Props., LLC*
   *(In re Tristar Esperanza Props., LLC)*,
   782 F.3d 492 (9th Cir. 2015) ....................................................................... 5, 21

*SeaQuest Diving, LP v. S&J Diving, Inc. (In re SeaQuest)*,
   579 F.3d 411 (5th Cir. 2009) .............................................................. passim

## Statutes

11 U.S.C. § 510(b) ....................................................................... passim

## Summary of the Argument

Although many of the Trustee's general statements of the law regarding Section 510(b) are true, they do not apply so as to require the subordination of redemption claims. Even at the time that the Fifth Circuit decided *SeaQuest*, it had already accepted, for example, that claims subject to subordination may arise from post-issuance conduct and may include breaches of contract.[1] It nevertheless accepted and relied on the line of cases excluding redemption claims from subordination. It explained that this exclusion was appropriate under the Slain/Kripke rationales because redemption claims involve a claimant who has ceased to participate in the risks and benefits associated with equity and whose capital contributions remain part of the debtor's equity cushion since the claim is for the value of the equity rather than the capital contributions themselves.

On both of these accounts, the Greens' claim is no different from the redemption claims discussed in *SeaQuest*. Their participation as partners in Garrison ceased on December 31, 2013 according to the terms of the Partnership Agreement and without requiring any further action by either Garrison or its general partner. Furthermore, since their claim is for the value of their equity

---

[1]   *SeaQuest Diving, LP v. S&J Diving, Inc. (In re SeaQuest)*, 579 F.3d 411, 421 (5th Cir. 2009)("For purposes of the damages category, the circuit courts agree that a claim arising from the purchase or sale of a security can include a claim predicated on post-issuance conduct, such as breach of contract.").

investment, not their capital contributions, those contributions continue to form a part of the Garrison's equity cushion. The fact that the Greens have no promissory note is immaterial to either of these concerns.

Because the Greens' claim is no different from the redemption claims discussed in *SeaQuest*, the Court should not subordinate their claim under Section 510(b)—even if *Tristar* indicates that the Ninth Circuit would.[2] To do so would be to disregard or ignore the Fifth Circuit's discussion of the treatment of redemption claims, which was a well-reasoned explication of the law, carefully considered after the argument of counsel, and integral to the ultimate decision in the case.

---

[2]   *Pensco Trust Co. v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC)*, 782 F.3d 492 (9th Cir. 2015).

## Argument

The Greens' claim is like the redemption claims that the Fifth Circuit considered in *SeaQuest* not to be subject to subordination under Section 510(b). The Trustee has failed, even in his response, to distinguish the Greens' claim in any meaningful way from those claims. In effect, the Trustee would have the Court disregard the Fifth Circuit's detailed discussion of redemption claims in *SeaQuest* even though it was a discussion that was deliberately considered after argument by counsel, well-reasoned, and grounded in the Slain/Kripke rationales that underlie Section 510(b).

## A.     The Trustee's Statements of Law Do Not Apply So as to Subject Redemption Claims to Mandatory Subordination

The Greens have no disagreement with many of the general statements of law in the Trustee's appellee brief. They do not disagree with the general concept that Section 510(b) serves to prevent equity holders from improving their positions to that of creditors by asserting claims that arise from the purchase or sale of their security interests. They agree that claims for breach of contract may be considered damages arising from the purchase or sale of a security interest and that claims subject to Section 510(b) may arise from post-issuance conduct of the parties. They also agree that, in determining whether a claim arises from the purchase or sale of a security interest, the most important factor to consider is whether the claimant is

attempting to recoup a portion of its equity investment. But these premises do not lead to the conclusion that claims for the redemption of a security interest are subject to Section 510(b). The Fifth Circuit thoroughly discussed the reasons for this in *SeaQuest* and the Greens' claim is similar to these redemption claims in all aspects that implicate these reasons.

## 1.   *A Redemption Claim Does Not Involve Equity Holders*

A redemption claim does not involve equity holders seeking to improve their positions in a bankruptcy case because any person with a redemption claim is no longer an equity holder. The Fifth Circuit stated: "By redeeming equity for debt before the bankruptcy filing, the claimant can convert from the 'risk/return position of an equity investor' to a 'fixed, pre-petition debt due and owing' the claimant as a creditor."[3] By converting to creditor status before the bankruptcy case, the claimant is no longer an "equity holder" seeking to improve its position, but a creditor seeking the position to which it is properly entitled.

## 2.   *A Redemption Claim Does Not Arise from the Purchase or Sale of the Equity Interest*

A redemption claim also does not arise from the purchase or sale of the equity interest, but from the conversion of the equity interest to debt. The Trustee

---

[3]   *SeaQuest*, 579 F.3d at 422-23.

apparently suggests a "but for" test to determine whether or not a claim arises from the purchase or sale of a security interest, stating: "The Greens' claim could not have arose but for their previous purchase of equity securities in the Debtor."[4] But this test is far too inclusive. If it were correct, there could never be a redemption claim not subject to Section 510(b) because no claim for redemption can exist but for the claimant's initial purchase of an equity interest. It is clear that the Fifth Circuit did not use this test to determine whether or not a claim arises from the purchase or sale of a security interest; otherwise, it could not have discussed the *Montgomery Ward*, *Mobile Tool*, *MarketXT*, or *Cybersight* cases with approval.[5] In each of these cases, the claimant's claim would not—indeed could not—have arisen but for the claimant's having previously purchased an equity interest in the debtor.

### 3. Not All Claims for Breach of the Entity Agreement and Not All Claims Arising from Post-Issuance Conduct Are Damages Arising from the Purchase or Sale of a Security Interest

Similarly, although claims for breaches of contract may be considered damages arising from the purchase or sale of a security interest and claims subject

---

[4]   Doc. No. 8, Appellee's Brief ¶ 43.

[5]   *SeaQuest*, 579 F.3d at 423 (discussing *Montgomery Ward Holding Corp. v. Schoeberl (In re Montgomery Ward Holding Corp.)*, 272 B.R. 836 (Bankr. D. Del. 2001); *Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs. (In re Mobile Tool Int'l, Inc.)*, 306 B.R. 778 (Bankr. D. Del. 2004); *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369 (Bankr. S.D.N.Y. 2007); and *Burtch v. Gannon (In re Cybersight LLC)*, 2004 WL 2713098, 2004 U.S. Dist. LEXIS 24426 (D. Del. Nov. 17, 2004)).

to Section 510(b) may arise from post-issuance conduct, not every breach of contract claim arises from the purchase or sale of a security interest and not every claim that arises from post-issuance conduct is subject to Section 510(b). As with the over-inclusive "but for" test, if every claim arising from post-issuance conduct of the parties were subject to Section 510(b), there could never be a redemption claim not subject to Section 510(b) because every claim for redemption arises from the parties' post-issuance conduct in redeeming the equity interest. And if every claim for breach of the debtor's governing document arises from the purchase or sale of a security interest, the Fifth Circuit could not have discussed the *Cybersight* case with approval because the claim at issue was based on the debtor's breach of its obligation in its governing document to repurchase the claimant's membership interests.[6]

### 4.    *A Redemption Claim Does Not Seek to Recoup the Equity Investment*

Finally, though it is important in making a Section 510(b) determination to consider whether a claimant is attempting to recoup its equity investment, redemption claims do not seek to recoup the equity investment because the amount of a redemption claim is for the value of the equity interest, subject to all losses that occurred during the period of ownership, and not for the amount of the

---

[6]   *Cybersight*, 2004 U.S. Dist. LEXIS 24426 at *2.

claimant's investment. Again, we know this because if "recouping one's equity investment" included asserting redemption claims, the Fifth Circuit could not have discussed the redemption cases with approval.

We also know this because of the Fifth Circuit's analysis regarding whether the S&J claim in *SeaQuest* was substantively a redemption or a rescission. S&J was the claimant in *SeaQuest*. The Fifth Circuit held that the S&J claim was a rescission rather than a redemption because the debtor paid for S&J's equity stake "with the same assets that S&J used to purchase it" and because S&J sought the "return of its capital contributions."[7] In contrast, "[i]f the transaction had been structured as a redemption similar to the one in *Montgomery Ward* or *Mobile Tool*, SeaQuest would have retained all of [S&J's] capital contributions and issued a promissory note to S&J *for the total value of its equity stake*."[8] The Fifth Circuit further explained that, by structuring the transaction in this way, "the claims of all unsecured creditors (including S&J) would be satisfied from the 'equity cushion' provided by S&J's capital contributions."[9]

---

[7]   *SeaQuest*, 579 F.3d at 424.

[8]   *Id.*

[9]   *Id.*

**B.    There Is No Appropriate Basis on Which to Distinguish the Greens'
Claim from the Redemption Claims in *SeaQuest***

The Greens' claim is not different in any meaningful way from the

redemption claims discussed in *SeaQuest*. The Fifth Circuit justified the exclusion

of redemption claims from subordination under Section 510(b) on the basis of

certain qualities that they had related to the Slain/Kripke rationales. The Greens'

claim shares those qualities with the *SeaQuest* redemption claims. Furthermore, the

distinctions that the Trustee has made between the Greens' claim and the *SeaQuest*

redemption claims are either not relevant to the rationale underlying Section 510(b)

and the *SeaQuest* decision or not factually true.

**1.    *The Greens' Claim Is Like The Redemption Claims Discussed in
SeaQuest***

The Trustee asserts that "[a] redemption occurs when a company gives cash,

a promissory note or some other asset in exchange for the equity being

redeemed."[10] Without committing to this definition, the Greens did receive an asset

from Garrison: the legal right to enforce payment of the withdrawal amount. This

legal claim is no less an asset than a promissory note, which also grants a

contractual legal right to the promissee to enforce payment of the note amount. The

Greens acquired their legal right to enforce payment of the withdrawal amount

---

[10]    Doc. No. 8, Appellee Brief ¶ 20.

when they triggered the withdrawal provision by submitting their withdrawal notice. They received this right in exchange for all of their other partnership rights, including their right to share in the partnership's income, gains, and losses.[11] The exchange was completed on the effective date of the Greens' withdrawal.

But more importantly, the Fifth Circuit did not focus on the particular asset that the claimant received in exchange for its equity interest; rather, both the Fifth Circuit and the Slain/Kripke rationales focus on (1) whether the claimant has the risk/return position of an equity owner and (2) whether the claimant's capital contribution is available as an equity cushion to all unsecured creditors. The Fifth Circuit explained that prior circuit court cases subordinating claims had upheld the policy rationales underlying Section 510(b) because the claimants in those cases "bargained for an equity position in the debtors and never converted that debt into equity pre-petition."[12] Conversely, the redemption cases, including the one which did not involve a promissory note, had appropriately not subordinated the claims at issue because "the claimants, pre-petition, were no longer able to participate in the benefits and risks associated with being equity holders of the debtors."[13] Both of these observations relate to the first of the Slain/Kripke rationales. The Fifth

---

[11]    ROA(I).259 (Partnership Agreement ¶ 5.5(k)).

[12]    *SeaQuest*, 579 F.3d at 422.

[13]    *SeaQuest*, 579 F.3d at 423.

Circuit also explained that when a claimant receives the "total value of its equity stake" rather than "return of its capital contributions," then "the claims of all unsecured creditors (including [the claimant] would be satisfied from the 'equity cushion' provided by [the claimant's] capital contributions."[14] This observation relates to the second of the Slain/Kripke rationales.

In regards to both of these two rationales, the Greens' claim is like the redemption claims discussed in *SeaQuest*. By exercising their withdrawal rights under the Partnership Agreement, the Greens, as of the pre-petition effective date of their withdrawal, ceased to participate in Garrison's income, gains, and losses and retained only a fixed, pre-petition debt that was due them without any further action by Garrison or the General Partner. Furthermore, by having a claim for the value of their equity interest, rather than for the return of their capital contribution, the full amount of the Greens' capital contribution is included in the equity cushion that will be used to pay the claims of all unsecured creditors, including the Greens.

## 2.   *The Trustee Has Not Meaningfully Distinguished the Greens' Claim from the Redemption Claims in* SeaQuest

The only distinctions that the Trustee makes between the Greens' claim and the redemption claims in *SeaQuest* are (1) that Garrison did not issue a promissory

---

[14]   *SeaQuest*, 579 F.3d at 424.

note to the Greens for the withdrawal amount and (2) that the withdrawal

provisions of the Partnership Agreement are not "self-executing." But these

distinctions do not justify a determination that the Greens' claim is anything other

than a redemption claim like those in *Montgomery Ward*, *Mobile Tool*, *MarketXT*,

and *Cybersight*.

a.     *The Lack of a Promissory Note Is Irrelevant to the Policy Rationales of*
       *Section 510(b)*

The Greens' lack of a promissory note is not meaningful in the context of

determining whether to subordinate their claim under Section 510(b). First, not all

of the redemption cases in *SeaQuest* involved promissory notes. Specifically,

*Cybersight* involved no promissory note, but a judgment for the debtor's breach of

an obligation to repurchase the claimant's equity interests. Therefore, the

significance of a promissory note to the Section 510(b) analysis is not the existence

of the note per se, but qualities held in common by both a promissory note and a

judgment. The Fifth Circuit selected the language from *Cybersight* identifying this

essential commonality: in both *Cybersight* and the earlier cases involving

promissory notes, "the claimants, pre-petition, were no longer able to participate in

the benefits and risks associated with being equity holders of the debtors."[15] While

---

[15]     *SeaQuest*, 579 F.3d at 423 (quoting *Cybersight*, 2004 U.S. Dist. LEXIS 24426 at *10-11).

the issuance of a promissory note might conceivably be necessary in some cases to demonstrate that the claimant ceased to participate as an equity holder of the debtor where it is not otherwise apparent, it is not necessary in the Greens' case because the Partnership Agreement explicitly states that their participation in the benefits and risks of their limited partnership interest ended as of the withdrawal's effective date.[16]

Second, even if the claimant's judgment in *Cybersight* is considered the equivalent of a promissory note, the Fifth Circuit indicated that the application of Section 510(b) should not depend on whether the claimant has reduced its claim to judgment pre-petition. It chose to look behind S&J's claim in *SeaQuest*, which had been reduced to judgment, because otherwise "the subordination of a rescission or tort claim based on securities fraud…would depend upon whether the claimant obtained a pre-petition judgment on the clam."[17] The Fifth Circuit's determination to look behind the documentation of a claim indicates that it is the substance of the claimant's legal rights against the debtor that determines whether or not a claim is subject to Section 510(b), not how far along the claimant is in the process of actually collecting on the claim. Obtaining judgment on a claim or receiving a

---

[16]   ROA(I).259 (Partnership Agreement ¶ 5.5(k)).

[17]   *SeaQuest*, 579 F.3d at 424.

separate document acknowledging the claim does not create a claim where the claim already exists by contract; nor does either of these things otherwise change the underlying nature of the claim. Obtaining a judgment and obtaining separate documentation of the claim merely provide additional confirmation of the claim's existence.

The Greens have a fully enforceable contractual claim against Garrison for the withdrawal amount under the terms of the Partnership Agreement, which they could sue for in state court (except for the automatic stay) regardless of whether Garrison issues a promissory note. Since a promissory note from Garrison would neither create the Greens' claim nor otherwise change the substantive nature of their legal rights against Garrison, the lack of a promissory note does not meaningfully distinguish the Greens' claim from those that the claimants had against their respective debtors in *Montgomery Ward*, *Mobile Tool*, *MarketXT*, and *Cybersight*.

b.    *The Withdrawal Provision in the Promissory Note Does Not Require Any Additional Action to Become Effective and Enforceable*

In asserting that they have a fully enforceable contractual claim against Garrison for the withdrawal amount, the Greens dispute that the withdrawal provision of the Partnership Agreement requires actual payment of the withdrawal amount to become effective and that the withdrawal provision is otherwise "not

self-executing." It is absurd to require that a debtor have actually paid a claimant's claim before it can be considered a claim for redemption. Once a claim has been paid, it no longer exists. In addition, though there has been talk that the Partnership Agreement required "action on the part of the general partner"[18] to either repay the Greens or to effectuate the withdrawal, neither the Bankruptcy Court nor the Trustee has ever identified what that action is.

In fact, the Partnership Agreement does not specify any particular action that Garrison or its general partner must take in order for the withdrawal provision to take effect once a limited partner has issued a timely withdrawal notice. Section 5.5(k) of the Partnership Agreement states that "[a] withdrawing Partner does not share in the income, gains and losses of the Partnership or have any other rights as a Partner after the effective date of its withdrawal except as provided in Section 3.8 [regarding reserves for contingent liabilities]."[19] The effective date of the withdrawal in turn occurs as of the close of business on the last day of the Fiscal Quarter for which the partner has given its timely and irrevocable notice of withdrawal.[20] For the Greens, this date was December 31, 2013. Therefore, the Greens' ceased to have the risks and benefits of equity ownership, pre-petition on

---

[18]   Doc. 8, Appellee Brief ¶ 40; ROA(I).306.

[19]   ROA(I).259 (Partnership Agreement ¶ 5.5(k)).

[20]   ROA(I).256-57 (Partnership Agreement ¶ 5.5(b)).

December 31, 2013 by the terms of the Partnership Agreement and without any action by Garrison or its general partner.

In addition, although the Partnership Agreement allowed the General Partner to delay effecting the withdrawal payments to a certain extent, it nevertheless required that "[a]ny remaining balance must be paid, without interest thereon, promptly following completion of the audit of the Partnership's financial statements for the Fiscal Year that includes the effective date of withdrawal."[21] Therefore, the Greens had a contractual legal right enforce payment of the withdrawal amount that, by the terms of the Partnership Agreement, would mature with the mere passage of time and without any action by Garrison or its general partner.

For these reasons, neither the Greens' lack of a promissory note nor the assertion that the withdrawal provision required further action appropriately distinguish the Greens' claim from the redemption claims discussed in *SeaQuest*. The lack of a promissory note is not meaningful and the assertion that the withdrawal provision required further action is not true. In every sense that matters for purposes of subordination under Section 510(b), the Greens' claim is like the redemption claims discussed in *SeaQuest*.

---

[21]   ROA(I).257 (Partnership Agreement ¶ 5.5(e)).

**C.**  ***SeaQuest*'s Treatment of Redemption Claims Is Entitled to Substantial Deference**

Because the Greens' claim is not materially different from the redemption claims in *SeaQuest*, to hold that it is subject to mandatory subordination under Section 510(b) would be to disregard the *SeaQuest*'s exclusion of redemption claims from this treatment. This would not be appropriate because *SeaQuest*'s treatment of redemption claims is entitled to substantial deference.

**1.**  ***The Fifth Circuit's Discussion of Redemption Claims Was Integral to the Decision, Well-Reasoned, and Carefully Considered***

When the Fifth Circuit held that the claim in *SeaQuest* was subject to mandatory subordination under Section 510(b), it did so specifically by distinguishing the claim from a redemption claim, after explaining why redemption claims do not implicate the policy rationales behind Section 510(b).[22] It did not decline to decide whether Section 510(b) applies to redemption claims and declined only to decide was whether a particular pre-bankruptcy code case was relevant to Section 510(b) or compatible with the redemption line of cases.[23] The exclusion of redemption claims from Section 510(b) subordination was thus integral to the reasoning that led to the ultimate holding in *SeaQuest*.

---

[22]   *SeaQuest*, 579 F.3d at 422-25.

[23]   *Id.* at 423.

---

Moreover, it is not only a case's strict holding that is entitled to deference, but also its explications of the governing rules of law.[24] The Fifth Circuit devoted an entire section in *SeaQuest* to explaining the treatment of redemption claims and distinguishing them from claims that would be subject to subordination under Section 510(b).[25] It then spent much of the next section applying those principles to the claim at issue.[26] Its discussion was made after argument by counsel and it reconciled the exclusion of redemption claims from Section 510(b) with the Slain/Kripke rationales that underlie Section 510(b).[27] Because *SeaQuest*'s discussion of redemption claims and their treatment under Section 510(b) is a well-reasoned and deliberately considered explication of the governing law, it should not be brushed aside or ignored.[28]

---

[24]  *See Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000)("[A]s a general rule, the principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law.").

[25]  *SeaQuest*, 579 F.3d at 422-24.

[26]  *Id.* at 424-25.

[27]  *Id.* at 422-24.

[28]  *See Kappos v. Hyatt*, 566 U.S. 431, 443 (2012)(under the similar principle of *stare decisis*, explaining that even though the discussion in a prior case was "not strictly necessary" to the holding, "it was also not the kind of ill-considered dicta that we are inclined to ignore").

---

**2.      *The Result and Rationale of* Tristar *Directly Conflict with* SeaQuest; *Fifth Circuit Law Should Prevail***

But by urging the Court to follow the Ninth Circuit's decision in *Tristar*, that is exactly what the Trustee would have the Court do. The Ninth Circuit took the *MarketXT*, *Cybersight*, and *Mobile Tool* cases—all of which the Fifth Circuit discussed favorably in *SeaQuest*—and expressly rejected them.[29] In particular, the Ninth Circuit rejected the principle "that to be subject to subordination, the claimant must, at the very least, enjoy the rights and privileges of equity ownership on the date of the bankruptcy petition."[30] In contrast, the Fifth Circuit specifically identified the fact that claimants who had bargained for an equity position had "never converted [their] equity into debt pre-petition" as the reason why certain prior circuit court cases were consistent with the policy rationales underlying Section 510(b).[31]

However similar the Greens' claim may be to the claim in *Tristar*, that case should not be used as a basis on which to subordinate the Greens' claim because the Ninth Circuit's reasoning in that case directly conflicts with that of the Fifth Circuit. In the Fifth Circuit, it matters whether a claimant has converted its equity

---

[29]   *Tristar*, 782 F.3d at 496.

[30]   *Id.*

[31]   *SeaQuest*, 579 F.3d at 422-23.

into debt pre-petition. The Greens did. In the Fifth Circuit, Fifth Circuit case law should prevail and the Greens' claim should not be subordinated under Section 510(b).

## Conclusion

The Fifth Circuit's discussion of redemption claims in *SeaQuest* was well-reasoned and deliberately considered. Using the Slain/Kripke rationales as its basis, the Fifth Circuit distinguished redemption claims from other claims that should be subject to subordination under Section 510(b). For the reasons stated above, the Greens' claim is similar to the redemption claims discussed in *SeaQuest* and the Trustee has not distinguished the Greens' claim from those redemption claims on any material basis. This Court should therefore follow the Fifth Circuit's reasoning in *SeaQuest* by reversing the Bankruptcy Court's decision and holding that the Greens' claim is not subject to mandatory subordination under Section 510(b).


Dated: July 9, 2018

                              Respectfully submitted,

                              */s/ Reese Baker*
                              Reese Baker
                              Baker & Associates
                              950 Echo Lane, Ste. 200
                              Houston, Texas 77024
                              Telephone: (713) 979-2279
                              Fax: (713) 869-9100
                              Email: courtdocs@bakerassociates.net
                              ATTORNEYS FOR APPELLANTS

**Certificate of Service**

I certify that on July 9, 2018, this document was served on the following

through the ECF noticing system:

Robert J. Shannon
Charles M. Rubio
Diamond McCarthy, LLP
909 Fannin Street, 37th Floor
Two Houston Center
Houston, Texas 77010
robert.shannon@diamondmccarthy.com


*/s/ Reese Baker*
Reese Baker


**Certificate of Compliance with Rule 8015(a)(7)(B)**

This brief complies with the type-volume limitation of Federal Rule of

Bankruptcy Procedure 8015(a)(7)(B) because it contains 4498 words.

*/s/ Reese Baker*
Reese Baker